IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHAMILIA, LLC,<br>of New York, New York, | )<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | ) | Civil Action Docket No. 04-cv-0617 (HB) |
| | ) | ECF CASE |
| PANDORA JEWELRY, LLC,<br>of Columbia, Maryland, | )<br>)<br>) | |
| Defendant. | ) | |

**COMPLAINT AND JURY DEMAND**
**INJUNCTIVE RELIEF REQUESTED**

The Plaintiff Chamilia, LLC ("Plaintiff") complains against Defendant Pandora Jewelry,

LLC ("Defendant") as follows:

**NATURE OF THE ACTION**

1.  This action is brought by Chamilia, a New York corporation which imports, distributes

and sells modifiable or interlocking jewelry against Pandora, a Maryland corporation

which competes with Chamilia in the same channels of trade and also imports, distributes

and sells modifiable or interlocking jewelry.  The Plaintiff alleges that the Defendant has

maliciously engaged (and continues to engage) in a smear campaign to destroy the

Plaintiff's ability to compete in the market with the ultimate aim of putting the Plaintiff

out of business.  Defendant has publicly accused Plaintiff's products of infringing

Defendant's patent rights, despite the fact that the United States Patent Office has not yet

issued any patent to Defendant that would cover any of Plaintiff's products, and has

publicly disparaged the quality of Plaintiff's products to Plaintiff's customers.  These

false allegations have harmed Plaintiff and Plaintiff hereby seeks compensatory,

statutory, presumed and punitive damages and injunctive relief to remedy such harm and prevent further harm.

## PARTIES

2. Plaintiff Chamilia, LLC ("Chamilia") is a New York corporation with a place of business in New York, New York.

3. Defendant Pandora Jewelry, LLC ("Pandora") is a Maryland corporation with a place of business in Columbia, Maryland.


## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, as a civil action arising under the laws of the United States. See also 15 U.S.C. § 1121(a).

5. This court has subject matter jurisdiction over this action pursuant to Title 28 U.S.C. § 2201 and 2202, the Federal Declaratory Judgment Act, and under 28 U.S.C. § 1331 and 28 U.S.C. § 1338 in that this case arises under Acts of Congress relating to the Lanham Act, 15 U.S.C. § 1125, and relating to patents, 35 U.S.C. § 1, et seq.; under 28 U.S.C. § 1338(b) for the claims of unfair competition; and under 28 U.S.C. § 1367(a) for state law claims. Additionally, this court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that this action is between citizens of different states and the matter in controversy exceeds, exclusive of interest and cost, the sum of $75,000.

6. Venue is proper in this Court because a substantial part of the events giving rise to Plaintiffs' claims occurred in the District of New York. 28 U.S.C. § 1391(b)(2)-(3).

## GENERAL ALLEGATIONS

7.  Based in New York, New York, Plaintiff is the United States distributor and importer of modifiable or interlocking jewelry manufactured abroad. Plaintiff has agreements to sell the jewelry to its customers, including dealers, distributors and consumers in the United States.

8.  Plaintiff had a reasonable expectation of expanded business and additional sales agreements with those customers.

9.  Defendant is a competitor of Plaintiff with respect to modifiable or interlocking jewelry.

10. Defendant deliberately and without cause interfered with the formation of additional sales agreements through acts set forth below.

11. Defendant claims to be the holder of certain patent applications and/or patents that cover modifiable or interlocking jewelry, including those imported and distributed by Plaintiff. Defendant knew of the agreements with Plaintiff's customers and intentionally interfered with them with intent to harm Plaintiff.

12. Defendant intentionally or negligently published oral and written statements through trade shows and through individual contacts with Plaintiff's customers that were false or misleading in accusing Plaintiff of "willful patent infringement" that implies to the customers that Plaintiff has engaged in unethical business practices and business impropriety.

13. Defendant intentionally or negligently published oral and written statements through trade shows and individual contacts with Plaintiff's customers that were false or misleading in accusing Plaintiff of selling "inferior or shoddy quality merchandise" that

implies to the customers that Plaintiff's reputation for selling high quality products is undeserved and that disparages Plaintiff's goods.

14. Defendant's use in commercial advertising of false or misleading allegations that Chamilia's goods are infringing misrepresents the qualities and characteristics of Plaintiff's goods and tends to make them less marketable.

15. Defendant made numerous statements to Plaintiff directly and to Plaintiff's customers that Plaintiff's goods were infringing and threatening Plaintiff and its customers with suits for willful patent infringement and millions of dollars in damages and attorneys' fees awards. Such statements are untrue and misleading, were made without any privilege or justification and were made deliberately without reasonable cause to influence or tend to influence the public not to buy goods. These vexatious statements evidence an abundance of bad faith on Defendant's part.

16. For example, given the non-existence of a patent, Defendant has been making false public representations regarding its alleged patent rights in a manner that interferes with Plaintiff's business and its customers and potential customers.

17. Specifically, on at least three separate occasions, Plaintiff's representatives heard assertions made by three different representatives of Defendant regarding alleged patent rights of Defendant that would have a direct effect on Plaintiff's ability to sell its own modifiable bracelets.

18. First, on August 27, 2003, at the San Francisco International Gift Fair, Plaintiff's representative, Ms. Lisa Whirlow, was confronted by Defendant's president, Mr. Lund, and was informed by Mr. Lund that Defendant intended to use its patent to "shut down" Plaintiff and any future competitor.

4

19. Second, on February 8, 2004, at the Winter International Gift Show, Ms. Whirlow was confronted by Mr. Steve Glueck, a sales representative of Defendant, and was informed by Mr. Glueck that Defendant had patent rights violated by Plaintiff's modifiable bracelet.

20. Third, on March 14, 2004, Ms. Kathy Riley, a sales representative of Plaintiff, while visiting a display booth at the Chicago Gift Show, was told by Mr. Jody Henderson, a sales representative of Defendant, that Defendant was suing Plaintiff because it had a patent. Mr. Henderson's statements were made in front of other jewelry distributors, and Plaintiff's customers and potential customers.

21. In addition to the three direct threats of patent violation made by Defendant against Plaintiff described above, Defendant has made statements to Plaintiff's customers and potential customers advising them not to purchase products from Plaintiff because of Defendant's asserted patent rights.

22. Specifically, during the Winter International Gift Show, Ms. Whirlow met and spoke with three of Plaintiff's customers or potential customers, Anne's Hallmark, Now & Then, and The Gift Gallery. Each informed Ms. Whirlow that Mr. Glueck had told them that they should not purchase products from Plaintiff because Defendant would close down Plaintiff based on Defendant's patent rights. Those customers informed Ms. Whirlow that they would not purchase products from Plaintiff because of the patent rights assertion made by Mr. Glueck. Ms. Whirlow observed other potential customers who, upon information and belief, declined to purchase products from Plaintiff because of Defendant's patent assertion threat. Additionally, Ms. Riley has had to allay the fears of other customers and potential customers who have indicated a reluctance to purchase

products from Plaintiff as a result of Defendant's patent assertion. Moreover, Ms. Riley
has had to respond to statements made by customers that Defendant has advised them that
Plaintiff was having financial problems and would be unable to sell its modifiable
bracelets in the United States as a result of Defendant's patent rights.

23. As a result of Defendant's unlawful activities, Plaintiff has suffered special damages,
including injuries to its goodwill and reputation, reductions in sales, and losses of profits
from its inability to distribute and sell its products. .

24. During the Summer of 2004, during the Atlanta Tradeshow, Plaintiff's sales
representatives visited Defendant's booth to view their product lines. After arriving at
the booth, Plaintiff's representative spoke to Defendant's sales manager, Mr. Knud
Hostrup, who immediately indicated that Pandora was the "original" and that all other
lines with interlocking jewelry were "knockoffs". Mr. Hostrup then referred to Chamilia
by name and indicated that its product was far inferior to Defendant's. Mr. Hostrup
further stated that any merchant who bought and stocked Plaintiff's product should
expect to have their inventories confiscated whenever Defendant deemed appropriate as
Plaintiff would be in violation of existing patent laws, and that any Chamilia sales person
would be in violation of existing patent laws and would have any commissions earned
confiscated at Defendant's request.

## COUNT I: LANHAM ACT, 15 U.S.C. § 1125(a)(1)(B)

25. Plaintiff hereby repeats and realleges the preceding paragraphs of this Complaint as if
fully set forth herein.

26. Defendant made the above-described statements in connection with goods or services.

27.  The above-described statements constitute the use in commerce of words, terms, names, false or misleading descriptions of fact, and/or false or misleading representations of fact.

28.  Defendant made the above-described statements in commercial advertising or promotion.

29.  The above-described statements constitute a misrepresentation of the nature, characteristics, and/or qualities of both Plaintiff's and Defendant's goods, services and/or commercial activities.

30.  Defendant's above-described misrepresentations of the nature, characteristics, and/or qualities of both Plaintiff's goods, services and/or commercial activities were made with knowledge of the falsity of such representations or with reckless disregard for whether they were true or false, and with the intent to harm Plaintiff.

31.  Plaintiff has been, and is likely to continue to be, damaged by the conduct of Defendant.

WHEREFORE, Plaintiff respectfully requests that this Court grant judgment in favor of Plaintiff and against Defendant, award Plaintiff damages in an amount to be determined by the Court, along with Plaintiff's costs and attorneys' fees, enjoin Defendant from further violations of 15 U.S.C. § 1125(a)(1)(B), and award Plaintiff such other relief as the Court deems appropriate.

## COUNT II : FALSE PATENT MARKING, 35 U.S.C. Section 292

32.   Plaintiff hereby repeats and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

33.   Defendant has no validly issued patent covering its modifiable or interlocking jewelry products.

34.   Defendant has, with intent to deceive the public, falsely used in advertising in connection with the sale of its unpatented modifiable or interlocking jewelry products, the term "patent," in violation of 35 U.S.C. Section 292.

WHEREFORE, Plaintiff respectfully requests that this Court grant judgment in favor of Plaintiff and against Defendant, award Plaintiff damages including one half of the maximum $500.00 penalty for each offense pursuant to Section 292(b), along with Plaintiff's costs and attorneys' fees, enjoin Defendant from continuing to make false patent marking claims, and award Plaintiff such other relief as the Court deems appropriate.

## COUNT III:  SLANDER OF TITLE

35.   Plaintiff hereby repeats and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

36.   Defendant acted with bad faith when it made false or misleading statements in commercial advertising to the trade and to Plaintiff's customers that Plaintiff's goods infringed or would infringe Defendant's patents, which statements made the goods less merchantable and slandered the title to the goods as being in compliance with laws and regulations and as being free of the rightful claims of infringement of third parties. Such statements are untrue or misleading and were made to influence or tend to influence the public not to buy Plaintiff's goods.  Defendant's acts were the proximate

cause of economic damages to Plaintiff and constitute slander of title for which
Defendant is liable under the common laws of the State of New York.

WHEREFORE, Plaintiffs respectfully request that this Court grant judgment in favor of
Plaintiffs and against Defendant, award Plaintiff damages including punitive damages in an
amount to be determined by the Court, award along with Plaintiff's costs and attorneys' fees,
enjoin Defendant from continuing to make slanderous statements regarding title to Plaintiff's
goods, and award Plaintiff such other relief as the Court deems appropriate.

## COUNT IV: DEFAMATION

37.   Plaintiff hereby repeats and realleges the preceding paragraphs of this Complaint as if
fully set forth herein.

38.   Defendant acted with bad faith and intentionally or negligently published oral and
written statements through face to face conversations and telephone calls to Plaintiff's
customers that were false and defamatory in (a) accusing Plaintiff of "willful
infringement" that implies to the customers that Plaintiff has engaged in illegal and
unethical practices and business impropriety, and (b) selling knockoff, shoddy and
inferior goods and services.  These statements impugn the basic integrity,
creditworthiness and competence of Plaintiff's business.  Such false and defamatory
statements are the proximate cause of economic injury to Plaintiff and its business and
constitute defamation under the common laws of the State of New York.

39.   The above-described statements of Defendant regarding Plaintiff were false and
defamatory.

40. Defendant published to third-parties, including without limitation third parties in the State of New York, the above-described false and defamatory statements regarding Plaintiff in the manner and to the extent described above.

41. Defendant's above-described false and defamatory statements regarding Plaintiff were not privileged.

42. The above-described false and defamatory statements of Defendant regarding Plaintiff constituted, in whole or in part, commercial speech.

43. Defendant's publication of the above-described false and defamatory statements was done with fault amounting at least to negligence.

44. Defendant's publication of the above-described false and defamatory statements was done with knowledge of the falsity of such statements or with reckless disregard for whether they were true or false.

45. Defendant's publication of the above-described false and defamatory statements was done with the intent to harm Plaintiff, including without limitation the intent to cause injury to Plaintiff in the State of New York.

46. Plaintiff has been damaged by the conduct of Defendant, including without limitation harm to its reputation in the State of New York.

47. Defendant was motivated by ill will toward Plaintiff, and/or its conduct was so outrageous that malice may be implied.

WHEREFORE, Plaintiff respectfully requests that this Court grant judgment in favor of Plaintiff and against Defendant, award Plaintiff damages including presumed and punitive damages in an amount to be determined by the Court, award along with Plaintiff's costs and attorneys' fees, enjoin Defendant from continuing to make false and defamatory statements

regarding Plaintiff and from making further false and defamatory statements regarding Plaintiff, and award Plaintiff such other relief as the Court deems appropriate.

## COUNT V: BUSINESS/PRODUCT DISPARAGEMENT

48.  Plaintiff hereby repeats and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

49.  Defendant acted with bad faith and published written statements in commercial advertising to the trade and oral and written statements through face to face conversations with Plaintiff's customers that were false in that they alleged that Plaintiff's goods infringed Defendant's patents, and that Plaintiff's goods and services were knockoffs, shoddy and of inferior quality. Such statements are untrue, were made without any privilege or justification and were made deliberately without reasonable cause to influence or tend to influence the public not to buy Plaintiff's goods. Defendant's acts were the proximate cause of economic damages through lost profits, from lost sales to Plaintiff and constitute business disparagement for which Defendant is liable under the common law of the State of New York.

WHEREFORE, Plaintiff respectfully requests that this Court grant judgment in favor of Plaintiff and against Defendant, award Plaintiff damages including punitive damages in an amount to be determined by the Court, award along with Plaintiff's costs and attorneys' fees, enjoin Defendant from continuing to make disparaging statements regarding Plaintiff and Plaintiff's products and award Plaintiff such other relief as the Court deems appropriate.

## COUNT VI: TORTIOUS INTERFERENCE WITH
## ADVANTAGEOUS RELATIONSHIPS

50. Plaintiff hereby repeats and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

51. Plaintiff had a prospective economic advantage in its relationships with actual and prospective purchasers of its products. Defendant has interfered with the above-described prospective economic advantage.

52. Defendant's interference was accomplished through the above-described misrepresentations by Defendant regarding Plaintiff.

53. Defendant's misrepresentations were made for the purpose of inducing third parties, including but not limited to actual and/or prospective customers of Plaintiff, to rely upon such misrepresentations and act and/or refrain from acting by, e.g., declining to make additional purchases of Plaintiff's product; and ceasing the positive description to others of Plaintiff's products and Plaintiff generally.

54. Defendant's interference was done solely with the intent to cause harm to Plaintiff by unlawful and/or wrongful means and with the intent to interfere with its prospective economic advantages.

55. Defendant was motivated by malice toward Plaintiff, and/or its conduct was so outrageous that malice may be implied.

56. Defendant's interference has proximately caused damage to Plaintiff. Some customers have already breached their contracts by canceling purchase orders after hearing Defendant's fraudulent misrepresentations. Other customers have communicated their intention not to purchase products in the future after hearing Defendant's fraudulent

misrepresentations. Plaintiff's revenues have dropped substantially since Defendant began making its fraudulent misrepresentations.

WHEREFORE, Plaintiff respectfully requests that this Court grant judgment in favor of Plaintiff and against Defendant, award Plaintiff damages including punitive damages in an amount to be determined by the Court, award along with Plaintiff's costs and attorneys' fees, enjoin Defendant from continuing to interfere with Plaintiff's advantageous business relationships, and award Plaintiff such other relief as the Court deems appropriate.

## COUNT VII:  STATE UNFAIR COMPETITION

57.    Plaintiff hereby repeats and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

58.    The unlawful and bad faith conduct of Defendant constitutes unfair competition for which Defendant is liable under the common law of the State of New York.

WHEREFORE, Plaintiff respectfully request that this Court grant judgment in favor of Plaintiff and against Defendant, award Plaintiff damages including punitive damages in an amount to be determined by the Court, award along with Plaintiff's costs and attorneys' fees, enjoin Defendant from continuing unfairly compete with Plaintiff, and award Plaintiff such other relief as the Court deems appropriate.

## COUNT VIII:  DECLARATORY JUDGMENT

59.    Plaintiff hereby repeats and realleges the preceding paragraphs of this Complaint  as if fully set forth herein.

60.    Defendant claims to be the owner of patent rights to modifiable or interlocking jewelry.

61.    Plaintiff has imported, offered for sale and sold modifiable or interlocking jewelry since April of 2003.

62.  Defendant has charged Plaintiff with patent infringement by letter dated April 26, 2003, a copy of which is attached as Exhibit A, and most recently in the above-described statements to third-parties.

63.  There is a substantial and continuing justiciable controversy between Plaintiff and Defendant as to Defendant's right to threaten and maintain suit for patent infringement and as to whether Plaintiff's products infringe the valid scope of any claim of any of Defendant's patents .

64.  Plaintiff has not done any act or thing and is not proposing to do any act or thing in violation of any of the rights validly belonging to Defendant.  Plaintiff, its manufacturer and its customers have not infringed any of Defendant's patents and are not liable for infringement of any of Defendant's patents.

WHEREFORE, Plaintiff respectfully requests that this Court grant a Declaratory judgment in favor of Plaintiff that Defendant is without right or authority to threaten or to maintain suit against Plaintiff or its customers for infringement of Defendant's patents; that none of Defendant's patents is infringed by Plaintiff, its manufacturer its customers by the manufacture, importation, offer for sale, sale or use of Plaintiff's modifiable or interlocking jewelry; and that Plaintiff, its manufacturer and its customers are not liable for infringement of any of Defendant's patents; grant a preliminary injunction enjoining defendants, their officers, agents, servants, employees and attorneys, and those in active concert or participation with them, from initiating infringement litigation and from threatening Plaintiff , or its manufacturer, customers, dealers, agents, servants, employees, or any prospective or present sellers, dealers or users of Plaintiff's products, with infringement litigation or charging any of them verbally or in writing with infringement of any of Defendant's

patents; grant a permanent injunction making permanent the preliminary injunction after trial; and an award of attorneys' fees through trial and an additional amount if an appeal is taken since this is an exceptional case under 35 U.S.C. § 285: grant an award of costs of suits; and such other relief as the Court deems appropriate.

JURY DEMAND

Plaintiff requests trial by jury on all counts so triable.

Dated: August 2, 2004

Dylan D. Smith (DS 6740)

VERRILL & DANA, LLP
One Portland Square
P.O. Box 586
Portland, ME 04112-0586
(207) 774-4000
(207) 774-7499 (fax)

Attorneys for Plaintiff

P:\jgoggin\chamilia\cleancomplaint.doc



# William S. Ramsey, P.C.
## INTELLECTUAL PROPERTY LEGAL COUNSEL

5253 Even Star Place
Columbia, MD 21044

www.williamramseylaw.com

Phone  410-740-2225
Fax 410-730-9467

August 26, 2003

Chamilia LLC
64-09 Booth Street
Second Floor
Rego Park, NY 11374

By Certified Mail

Re:    **CEASE AND DESIST DEMAND**
       **Our Client's Property: PANDORA Necklaces and Bracelets**

Dear Sir or Madam:

William S. Ramsey, P.C., represents Pandora Jewelry LLC, 10015 Old Columbia Road, Suite B-215, Columbia, MD 21046 (PANDORA).  As you may know, PANDORA is a manufacturer and purveyor of jewelry, in particular, necklaces and bracelets which incorporate, among other elements, keepers which interact with bands fixed to the strands, and which prevent the bunching of beads strung on the necklace or bracelet. PANDORA has filed a nonprovisional U.S. Patent Application which protects the functional aspects of the necklaces and bracelets.  In addition, PANDORA owns trademark and copyright rights in their necklaces and bracelets.

PANDORA is now aware that Chamilia LLC, a business operating out of 64-09 Booth Street, Second Floor, Rego Park, NY 11374 (CHAMILIA) is making, using, offering to sell, or selling necklaces and bracelets in the United States which appear to utilize substantially the same construction and perform substantially the same functions as PANDORA'S patent applied for necklaces and bracelets.

In addition, CAMILIA'S necklaces and bracelets appear to so closely resemble PANDORA'S products as to cause the likelihood of confusion concerning the origin of CAMILIA'S products and thereby raises the possibility of infringement of PANDORA'S trademarks.

In addition, CHAMILIA'S necklaces and bracelets appear to be substantially similar to copyright protected aspects of PANDORA'S products.  Since access to

PANDORA'S products has been established by widespread public sale, the possibility of infringement of PANDORA'S copyrights is also raised.

In addition, CHAMILIA actions may be actionable under the following causes of action: unfair competition under federal and state law, false designation of origin, and false advertising, which can result in statutory and punitive damages, lost profits, and costs thereof.

You should be aware that PANDORA has invested significant effort and expense in the research, development and patenting and the creation of distinctive and creative elements of these necklaces and bracelets, and considers the patent application and other intellectual property covering such products to be an important and highly valuable asset. PANDORA accordingly has significant business interests in protecting the proprietary technology covered by this U.S. Patent application and other intellectual property rights. As a matter of principle and policy, therefore, PANDORA vigorously defends and protects its intellectual property rights and is quite willing and committed to pursuing any and all infringements of these rights to the fullest extent possible.

Accordingly, PANDORA demands that:

(1)     CHAMILIA immediately cease and desist all commercial activity which would infringe any of PANDORA'S intellectual property rights;

(2)     CHAMILIA provide complete information as to the design and operation of the CHAMILIA necklaces and bracelets, including any drawings and system descriptions;

(3)     CHAMILIA provide a complete accounting of all necklaces and bracelets manufactured, imported, and sold, which accounting must include an identification of the customers, prices charged, and profits generated from such sales for all necklaces and bracelets made, imported, offered for sale, or sold by or on behalf of CHAMILIA, and your franchisee or affiliated entities.

Because many of the improper uses of our client's intellectual property are being used on the internet, it is our position that we are being greatly damaged every minute these uses are permitted to continue. Further, we realize that such electronic uses may be immediately removed from your website with little effort. Therefore, we demand a written response hereto that CHAMILIA confirms the above demands and has taken steps to remove the objectionable uses of our client's trademark from its website within fifteen (15) days.

Please respond to this letter within fifteen (15) days by providing your assurances that CHAMILIA: (1) discontinued the making, use, offering for sale, sale or importation of all necklaces and bracelets and components that would fall within the scope of

2

PANDORA'S intellectual property. As a further part of this response, I request that CHAMILIA provide the complete product, sales and other related information requested above. You should be aware that if I do not have a response from you within the requested time, PANDORA will be forced to take all actions necessary and as permitted by law to enforce its rights.

Please contact me or have your legal counsel contact me if you have any questions.

Sincerely,
WILLIAM S. RAMSEY, P.C.

William S. Ramsey
Attorney at Law


cc:
Michael Lund

CEASE AND DESIST

3