**LATHROP & GAGE L.C.**
**William R. Hansen (WH-9446)**
**Gianfranco G. Mitrione (GM-8168)**
**Bernadette McGlynn Reilly (BM-4117)**
**230 Park Avenue, Suite 1847**
**New York, New York 10169**
**(212) 850-6220 (tel)**
**(212) 850-6221 (fax)**

**Attorneys for Defendant**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------X
CHAMILIA, LLC,                          :      Civil Action No.:
                                        :      04 CV 06017 (KMK)
                        Plaintiff,      :
                                        :
        -against-                       :      ECF CASE
                                        :
PANDORA JEWELRY, LLC,                   :
                                        :
                                        :
                        Defendant.      :
------------------------------------------------------X
```

### DECLARATION OF GIANFRANCO G. MITRIONE IN SUPPORT OF
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GIANFRANCO G. MITRIONE, does hereby declare:

1.      I am an associate with the firm of Lathrop & Gage L.C., attorneys for Defendant,

Pandora Jewelry, LLC. I am admitted to practice law in the State of New York. I am familiar

with all the facts and circumstances in this proceeding.

2.      I submit this declaration pursuant to Rule 56 of the Federal Rules of Civil

Procedure in support of defendant's motion for summary judgment.

3.      On August 2, 2004, plaintiff filed a complaint with the Court commencing this

action. A copy of the complaint is attached hereto as Exhibit A.

4.    Defendant answered the complaint on September 22, 2004. A copy of defendant's Answer to plaintiff's complaint is attached hereto as Exhibit B.

5.    Attached hereto as Exhibit C is an excerpt from the <u>Merriam-Webster's Collegiate Dictionary</u>, Tenth Edition, which defines the term "knockoff" as "a copy that sells for less than the original; a copy or imitation of someone or something popular." Furthermore, the verb "knock off" is defined as "to make a knock off of: copy, imitate; [e.g.] knocks off popular dress designs." <u>See</u> <u>id.</u>


I DECLARE under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
      January 14, 2005

                                        Gianfranco G. Mitrione

**EXHIBIT**
**A**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

CHAMILIA, LLC,                          )
of New York, New York,                  )
                                        )
              Plaintiff,                )
                                        )       Civil Action Docket No. 04-cv-0617 (HB)
v.                                      )
                                        )       ECF CASE
PANDORA JEWELRY, LLC,                   )
of Columbia, Maryland,                  )
                                        )
              Defendant.                )

## COMPLAINT AND JURY DEMAND
### INJUNCTIVE RELIEF REQUESTED

The Plaintiff Chamilia, LLC ("Plaintiff") complains against Defendant Pandora Jewelry,

LLC ("Defendant") as follows:

## NATURE OF THE ACTION

1. This action is brought by Chamilia, a New York corporation which imports, distributes

and sells modifiable or interlocking jewelry against Pandora, a Maryland corporation

which competes with Chamilia in the same channels of trade and also imports, distributes

and sells modifiable or interlocking jewelry. The Plaintiff alleges that the Defendant has

maliciously engaged (and continues to engage) in a smear campaign to destroy the

Plaintiff's ability to compete in the market with the ultimate aim of putting the Plaintiff

out of business. Defendant has publicly accused Plaintiff's products of infringing

Defendant's patent rights, despite the fact that the United States Patent Office has not yet

issued any patent to Defendant that would cover any of Plaintiff's products, and has

publicly disparaged the quality of Plaintiff's products to Plaintiff's customers. These

false allegations have harmed Plaintiff and Plaintiff hereby seeks compensatory,

statutory, presumed and punitive damages and injunctive relief to remedy such harm and prevent further harm.

## PARTIES

2. Plaintiff Chamilia, LLC ("Chamilia") is a New York corporation with a place of business in New York, New York.

3. Defendant Pandora Jewelry, LLC ("Pandora") is a Maryland corporation with a place of business in Columbia, Maryland.

## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, as a civil action arising under the laws of the United States. See also 15 U.S.C. § 1121(a).

5. This court has subject matter jurisdiction over this action pursuant to Title 28 U.S.C. § 2201 and 2202, the Federal Declaratory Judgment Act, and under 28 U.S.C. § 1331 and 28 U.S.C. § 1338 in that this case arises under Acts of Congress relating to the Lanham Act, 15 U.S.C. § 1125, and relating to patents, 35 U.S.C. § 1, et seq.; under 28 U.S.C. § 1338(b) for the claims of unfair competition; and under 28 U.S.C. § 1367(a) for state law claims. Additionally, this court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that this action is between citizens of different states and the matter in controversy exceeds, exclusive of interest and cost, the sum of $75,000.

6. Venue is proper in this Court because a substantial part of the events giving rise to Plaintiffs' claims occurred in the District of New York. 28 U.S.C. § 1391(b)(2)-(3).

2

## GENERAL ALLEGATIONS

7. Based in New York, New York, Plaintiff is the United States distributor and importer of modifiable or interlocking jewelry manufactured abroad. Plaintiff has agreements to sell the jewelry to its customers, including dealers, distributors and consumers in the United States.

8. Plaintiff had a reasonable expectation of expanded business and additional sales agreements with those customers.

9. Defendant is a competitor of Plaintiff with respect to modifiable or interlocking jewelry.

10. Defendant deliberately and without cause interfered with the formation of additional sales agreements through acts set forth below.

11. Defendant claims to be the holder of certain patent applications and/or patents that cover modifiable or interlocking jewelry, including those imported and distributed by Plaintiff. Defendant knew of the agreements with Plaintiff's customers and intentionally interfered with them with intent to harm Plaintiff.

12. Defendant intentionally or negligently published oral and written statements through trade shows and through individual contacts with Plaintiff's customers that were false or misleading in accusing Plaintiff of "willful patent infringement" that implies to the customers that Plaintiff has engaged in unethical business practices and business impropriety.

13. Defendant intentionally or negligently published oral and written statements through trade shows and individual contacts with Plaintiff's customers that were false or misleading in accusing Plaintiff of selling "inferior or shoddy quality merchandise" that

implies to the customers that Plaintiff's reputation for selling high quality products is undeserved and that disparages Plaintiff's goods.

14. Defendant's use in commercial advertising of false or misleading allegations that Chamilia's goods are infringing misrepresents the qualities and characteristics of Plaintiff's goods and tends to make them less marketable.

15. Defendant made numerous statements to Plaintiff directly and to Plaintiff's customers that Plaintiff's goods were infringing and threatening Plaintiff and its customers with suits for willful patent infringement and millions of dollars in damages and attorneys' fees awards. Such statements are untrue and misleading, were made without any privilege or justification and were made deliberately without reasonable cause to influence or tend to influence the public not to buy goods. These vexatious statements evidence an abundance of bad faith on Defendant's part.

16. For example, given the non-existence of a patent, Defendant has been making false public representations regarding its alleged patent rights in a manner that interferes with Plaintiff's business and its customers and potential customers.

17. Specifically, on at least three separate occasions, Plaintiff's representatives heard assertions made by three different representatives of Defendant regarding alleged patent rights of Defendant that would have a direct effect on Plaintiff's ability to sell its own modifiable bracelets.

18. First, on August 27, 2003, at the San Francisco International Gift Fair, Plaintiff's representative, Ms. Lisa Whirlow, was confronted by Defendant's president, Mr. Lund, and was informed by Mr. Lund that Defendant intended to use its patent to "shut down" Plaintiff and any future competitor.

4

19. Second, on February 8, 2004, at the Winter International Gift Show, Ms. Whirlow was confronted by Mr. Steve Glueck, a sales representative of Defendant, and was informed by Mr. Glueck that Defendant had patent rights violated by Plaintiff's modifiable bracelet.

20. Third, on March 14, 2004, Ms. Kathy Riley, a sales representative of Plaintiff, while visiting a display booth at the Chicago Gift Show, was told by Mr. Jody Henderson, a sales representative of Defendant, that Defendant was suing Plaintiff because it had a patent. Mr. Henderson's statements were made in front of other jewelry distributors, and Plaintiff's customers and potential customers.

21. In addition to the three direct threats of patent violation made by Defendant against Plaintiff described above, Defendant has made statements to Plaintiff's customers and potential customers advising them not to purchase products from Plaintiff because of Defendant's asserted patent rights.

22. Specifically, during the Winter International Gift Show, Ms. Whirlow met and spoke with three of Plaintiff's customers or potential customers, Anne's Hallmark, Now & Then, and The Gift Gallery. Each informed Ms. Whirlow that Mr. Glueck had told them that they should not purchase products from Plaintiff because Defendant would close down Plaintiff based on Defendant's patent rights. Those customers informed Ms. Whirlow that they would not purchase products from Plaintiff because of the patent rights assertion made by Mr. Glueck. Ms. Whirlow observed other potential customers who, upon information and belief, declined to purchase products from Plaintiff because of Defendant's patent assertion threat. Additionally, Ms. Riley has had to allay the fears of other customers and potential customers who have indicated a reluctance to purchase

products from Plaintiff as a result of Defendant's patent assertion.  Moreover, Ms. Riley has had to respond to statements made by customers that Defendant has advised them that Plaintiff was having financial problems and would be unable to sell its modifiable bracelets in the United States as a result of Defendant's patent rights.

23. As a result of Defendant's unlawful activities, Plaintiff has suffered special damages, including injuries to its goodwill and reputation, reductions in sales, and losses of profits from its inability to distribute and sell its products. .

24. During the Summer of 2004, during the Atlanta Tradeshow, Plaintiff's sales representatives visited Defendant's booth to view their product lines.  After arriving at the booth, Plaintiff's representative spoke to Defendant's sales manager, Mr. Knud Hostrup, who immediately indicated that Pandora was the "original" and that all other lines with interlocking jewelry were "knockoffs".  Mr. Hostrup then referred to Chamilia by name and indicated that its product was far inferior to Defendant's.  Mr. Hostrup further stated that any merchant who bought and stocked Plaintiff's product should expect to have their inventories confiscated whenever Defendant deemed appropriate as Plaintiff would be in violation of existing patent laws, and that any Chamilia sales person would be in violation of existing patent laws and would have any commissions earned confiscated at Defendant's request.

## COUNT I: LANHAM ACT, 15 U.S.C. § 1125(a)(1)(B)

25. Plaintiff hereby repeats and realleges the preceding paragraphs of this Complaint  as if fully set forth herein.

26. Defendant made the above-described statements in connection with goods or services.

6

27. The above-described statements constitute the use in commerce of words, terms, names, false or misleading descriptions of fact, and/or false or misleading representations of fact.

28. Defendant made the above-described statements in commercial advertising or promotion.

29. The above-described statements constitute a misrepresentation of the nature, characteristics, and/or qualities of both Plaintiff's and Defendant's goods, services and/or commercial activities.

30. Defendant's above-described misrepresentations of the nature, characteristics, and/or qualities of both Plaintiff's goods, services and/or commercial activities were made with knowledge of the falsity of such representations or with reckless disregard for whether they were true or false, and with the intent to harm Plaintiff.

31. Plaintiff has been, and is likely to continue to be, damaged by the conduct of Defendant.

WHEREFORE, Plaintiff respectfully requests that this Court grant judgment in favor of Plaintiff and against Defendant, award Plaintiff damages in an amount to be determined by the Court, along with Plaintiff's costs and attorneys' fees, enjoin Defendant from further violations of 15 U.S.C. § 1125(a)(1)(B), and award Plaintiff such other relief as the Court deems appropriate.

## COUNT II : FALSE PATENT MARKING, 35 U.S.C. Section 292

32. Plaintiff hereby repeats and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

33. Defendant has no validly issued patent covering its modifiable or interlocking jewelry products.

34. Defendant has, with intent to deceive the public, falsely used in advertising in connection with the sale of its unpatented modifiable or interlocking jewelry products, the term "patent," in violation of 35 U.S.C. Section 292.

WHEREFORE, Plaintiff respectfully requests that this Court grant judgment in favor of Plaintiff and against Defendant, award Plaintiff damages including one half of the maximum $500.00 penalty for each offense pursuant to Section 292(b), along with Plaintiff's costs and attorneys' fees, enjoin Defendant from continuing to make false patent marking claims, and award Plaintiff such other relief as the Court deems appropriate.

## COUNT III: SLANDER OF TITLE

35. Plaintiff hereby repeats and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

36. Defendant acted with bad faith when it made false or misleading statements in commercial advertising to the trade and to Plaintiff's customers that Plaintiff's goods infringed or would infringe Defendant's patents, which statements made the goods less merchantable and slandered the title to the goods as being in compliance with laws and regulations and as being free of the rightful claims of infringement of third parties. Such statements are untrue or misleading and were made to influence or tend to influence the public not to buy Plaintiff's goods. Defendant's acts were the proximate

8

cause of economic damages to Plaintiff and constitute slander of title for which Defendant is liable under the common laws of the State of New York.

WHEREFORE, Plaintiffs respectfully request that this Court grant judgment in favor of Plaintiffs and against Defendant, award Plaintiff damages including punitive damages in an amount to be determined by the Court, award along with Plaintiff's costs and attorneys' fees, enjoin Defendant from continuing to make slanderous statements regarding title to Plaintiff's goods, and award Plaintiff such other relief as the Court deems appropriate.

## COUNT IV: DEFAMATION

37. Plaintiff hereby repeats and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

38. Defendant acted with bad faith and intentionally or negligently published oral and written statements through face to face conversations and telephone calls to Plaintiff's customers that were false and defamatory in (a) accusing Plaintiff of "willful infringement" that implies to the customers that Plaintiff has engaged in illegal and unethical practices and business impropriety, and (b) selling knockoff, shoddy and inferior goods and services. These statements impugn the basic integrity, creditworthiness and competence of Plaintiff's business. Such false and defamatory statements are the proximate cause of economic injury to Plaintiff and its business and constitute defamation under the common laws of the State of New York.

39. The above-described statements of Defendant regarding Plaintiff were false and defamatory.

40. Defendant published to third-parties, including without limitation third parties in the State of New York, the above-described false and defamatory statements regarding Plaintiff in the manner and to the extent described above.

41. Defendant's above-described false and defamatory statements regarding Plaintiff were not privileged.

42. The above-described false and defamatory statements of Defendant regarding Plaintiff constituted, in whole or in part, commercial speech.

43. Defendant's publication of the above-described false and defamatory statements was done with fault amounting at least to negligence.

44. Defendant's publication of the above-described false and defamatory statements was done with knowledge of the falsity of such statements or with reckless disregard for whether they were true or false.

45. Defendant's publication of the above-described false and defamatory statements was done with the intent to harm Plaintiff, including without limitation the intent to cause injury to Plaintiff in the State of New York.

46. Plaintiff has been damaged by the conduct of Defendant, including without limitation harm to its reputation in the State of New York.

47. Defendant was motivated by ill will toward Plaintiff, and/or its conduct was so outrageous that malice may be implied.

WHEREFORE, Plaintiff respectfully requests that this Court grant judgment in favor of Plaintiff and against Defendant, award Plaintiff damages including presumed and punitive damages in an amount to be determined by the Court, award along with Plaintiff's costs and attorneys' fees, enjoin Defendant from continuing to make false and defamatory statements

regarding Plaintiff and from making further false and defamatory statements regarding Plaintiff, and award Plaintiff such other relief as the Court deems appropriate.

## COUNT V: BUSINESS/PRODUCT DISPARAGEMENT

48.  Plaintiff hereby repeats and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

49.  Defendant acted with bad faith and published written statements in commercial advertising to the trade and oral and written statements through face to face conversations with Plaintiff's customers that were false in that they alleged that Plaintiff's goods infringed Defendant's patents, and that Plaintiff's goods and services were knockoffs, shoddy and of inferior quality.  Such statements are untrue, were made without any privilege or justification and were made deliberately without reasonable cause to influence or tend to influence the public not to buy Plaintiff's goods.  Defendant's acts were the proximate cause of economic damages through lost profits, from lost sales to Plaintiff and constitute business disparagement for which Defendant is liable under the common law of the State of New York.

WHEREFORE, Plaintiff respectfully requests that this Court grant judgment in favor of Plaintiff and against Defendant, award Plaintiff damages including punitive damages in an amount to be determined by the Court, award along with Plaintiff's costs and attorneys' fees, enjoin Defendant from continuing to make disparaging statements regarding Plaintiff and Plaintiff's products and award Plaintiff such other relief as the Court deems appropriate.

## COUNT VI: TORTIOUS INTERFERENCE WITH ADVANTAGEOUS RELATIONSHIPS

50.  Plaintiff hereby repeats and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

51.  Plaintiff had a prospective economic advantage in its relationships with actual and prospective purchasers of its products. Defendant has interfered with the above-described prospective economic advantage.

52.  Defendant's interference was accomplished through the above-described misrepresentations by Defendant regarding Plaintiff.

53.  Defendant's misrepresentations were made for the purpose of inducing third parties, including but not limited to actual and/or prospective customers of Plaintiff, to rely upon such misrepresentations and act and/or refrain from acting by, e.g., declining to make additional purchases of Plaintiff's product; and ceasing the positive description to others of Plaintiff's products and Plaintiff generally.

54.  Defendant's interference was done solely with the intent to cause harm to Plaintiff by unlawful and/or wrongful means and with the intent to interfere with its prospective economic advantages.

55.  Defendant was motivated by malice toward Plaintiff, and/or its conduct was so outrageous that malice may be implied.

56.  Defendant's interference has proximately caused damage to Plaintiff. Some customers have already breached their contracts by canceling purchase orders after hearing Defendant's fraudulent misrepresentations. Other customers have communicated their intention not to purchase products in the future after hearing Defendant's fraudulent

misrepresentations. Plaintiff's revenues have dropped substantially since Defendant began making its fraudulent misrepresentations.

WHEREFORE, Plaintiff respectfully requests that this Court grant judgment in favor of Plaintiff and against Defendant, award Plaintiff damages including punitive damages in an amount to be determined by the Court, award along with Plaintiff's costs and attorneys' fees, enjoin Defendant from continuing to interfere with Plaintiff's advantageous business relationships, and award Plaintiff such other relief as the Court deems appropriate.

## COUNT VII: STATE UNFAIR COMPETITION

57.  Plaintiff hereby repeats and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

58.  The unlawful and bad faith conduct of Defendant constitutes unfair competition for which Defendant is liable under the common law of the State of New York.

WHEREFORE, Plaintiff respectfully request that this Court grant judgment in favor of Plaintiff and against Defendant, award Plaintiff damages including punitive damages in an amount to be determined by the Court, award along with Plaintiff's costs and attorneys' fees, enjoin Defendant from continuing unfairly compete with Plaintiff, and award Plaintiff such other relief as the Court deems appropriate.

## COUNT VIII: DECLARATORY JUDGMENT

59.  Plaintiff hereby repeats and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

60.  Defendant claims to be the owner of patent rights to modifiable or interlocking jewelry.

61.  Plaintiff has imported, offered for sale and sold modifiable or interlocking jewelry since April of 2003.

13

62. Defendant has charged Plaintiff with patent infringement by letter dated April 26, 2003, a copy of which is attached as Exhibit A, and most recently in the above-described statements to third-parties.

63. There is a substantial and continuing justiciable controversy between Plaintiff and Defendant as to Defendant's right to threaten and maintain suit for patent infringement and as to whether Plaintiff's products infringe the valid scope of any claim of any of Defendant's patents .

64. Plaintiff has not done any act or thing and is not proposing to do any act or thing in violation of any of the rights validly belonging to Defendant. Plaintiff, its manufacturer and its customers have not infringed any of Defendant's patents and are not liable for infringement of any of Defendant's patents.

WHEREFORE, Plaintiff respectfully requests that this Court grant a Declaratory judgment in favor of Plaintiff that Defendant is without right or authority to threaten or to maintain suit against Plaintiff or its customers for infringement of Defendant's patents; that none of Defendant's patents is infringed by Plaintiff, its manufacturer its customers by the manufacture, importation, offer for sale, sale or use of Plaintiff's modifiable or interlocking jewelry; and that Plaintiff, its manufacturer and its customers are not liable for infringement of any of Defendant's patents; grant a preliminary injunction enjoining defendants, their officers, agents, servants, employees and attorneys, and those in active concert or participation with them, from initiating infringement litigation and from threatening Plaintiff , or its manufacturer, customers, dealers, agents, servants, employees, or any prospective or present sellers, dealers or users of Plaintiff's products, with infringement litigation or charging any of them verbally or in writing with infringement of any of Defendant's

patents; grant a permanent injunction making permanent the preliminary injunction after trial;

and an award of attorneys' fees through trial and an additional amount if an appeal is taken

since this is an exceptional case under 35 U.S.C. § 285: grant an award of costs of suits; and such

other relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff requests trial by jury on all counts so triable.

Dated: August 2, 2004

Dylan D. Smith (DS 6740)

VERRILL & DANA, LLP
One Portland Square
P.O. Box 586
Portland, ME 04112-0586
(207) 774-4000
(207) 774-7499 (fax)

Attorneys for Plaintiff

P:\jgoggin\chamilia\cleancomplaint.doc

15

EXHIBIT
A

Aug 28 03 05:41p        Dov Schwartz                7188966891                P.1

# William S. Ramsey, P.C.
### INTELLECTUAL PROPERTY LEGAL COUNSEL

5253 Even Star Place
Columbia, MD 21044

Phone 410-740-2225
Fax 410-730-9467

www.williamramseylaw.com

August 26, 2003

Chamilia LLC
64-09 Booth Street
Second Floor
Rego Park, NY 11374

By Certified Mail

Re:     **CEASE AND DESIST DEMAND**
        **Our Client's Property: PANDORA Necklaces and Bracelets**

Dear Sir or Madam:

William S. Ramsey, P.C., represents Pandora Jewelry LLC, 10015 Old Columbia Road, Suite B-215, Columbia, MD 21046 (PANDORA). As you may know, PANDORA is a manufacturer and purveyor of jewelry, in particular, necklaces and bracelets which incorporate, among other elements, keepers which interact with bands fixed to the strands, and which prevent the bunching of beads strung on the necklace or bracelet. PANDORA has filed a nonprovisional U.S. Patent Application which protects the functional aspects of the necklaces and bracelets. In addition, PANDORA owns trademark and copyright rights in their necklaces and bracelets.

PANDORA is now aware that Chamilia LLC, a business operating out of 64-09 Booth Street, Second Floor, Rego Park, NY 11374 (CHAMILIA) is making, using, offering to sell, or selling necklaces and bracelets in the United States which appear to utilize substantially the same construction and perform substantially the same functions as PANDORA'S patent applied for necklaces and bracelets.

In addition, CAMILIA'S necklaces and bracelets appear to so closely resemble PANDORA'S products as to cause the likelihood of confusion concerning the origin of CAMILIA'S products and thereby raises the possibility of infringement of PANDORA'S trademarks.

In addition, CHAMILIA'S necklaces and bracelets appear to be substantially similar to copyright protected aspects of PANDORA'S products. Since access to

PANDORA'S products has been established by widespread public sale, the possibility of infringement of PANDORA'S copyrights is also raised.

In addition, CHAMILIA actions may be actionable under the following causes of action: unfair competition under federal and state law, false designation of origin, and false advertising, which can result in statutory and punitive damages, lost profits, and costs thereof.

You should be aware that PANDORA has invested significant effort and expense in the research, development and patenting and the creation of distinctive and creative elements of these necklaces and bracelets, and considers the patent application and other intellectual property covering such products to be an important and highly valuable asset. PANDORA accordingly has significant business interests in protecting the proprietary technology covered by this U.S. Patent application and other intellectual property rights. As a matter of principle and policy, therefore, PANDORA vigorously defends and protects its intellectual property rights and is quite willing and committed to pursuing any and all infringements of these rights to the fullest extent possible.

Accordingly, PANDORA demands that:

(1)    CHAMILIA immediately cease and desist all commercial activity which would infringe any of PANDORA'S intellectual property rights;

(2)    CHAMILIA provide complete information as to the design and operation of the CHAMILIA necklaces and bracelets, including any drawings and system descriptions;

(3)    CHAMILIA provide a complete accounting of all necklaces and bracelets manufactured, imported, and sold, which accounting must include an identification of the customers, prices charged, and profits generated from such sales for all necklaces and bracelets made, imported, offered for sale, or sold by or on behalf of CHAMILIA, and your franchisee or affiliated entities.

Because many of the improper uses of our client's intellectual property are being used on the internet, it is our position that we are being greatly damaged every minute these uses are permitted to continue. Further, we realize that such electronic uses may be immediately removed from your website with little effort. Therefore, we demand a written response hereto that CHAMILIA confirms the above demands and has taken steps to remove the objectionable uses of our client's trademark from its website within fifteen (15) days.

Please respond to this letter within fifteen (15) days by providing your assurances that CHAMILIA: (1) discontinued the making, use, offering for sale, sale or importation of all necklaces and bracelets and components that would fall within the scope of

2

PANDORA'S intellectual property.  As a further part of this response, I request that
CHAMILIA provide the complete product, sales and other related information requested
above.  You should be aware that if I do not have a response from you within the
requested time, PANDORA will be forced to take all actions necessary and as permitted
by law to enforce its rights.

        Please contact me or have your legal counsel contact me if you have any
questions.

                                Sincerely,
                                WILLIAM S. RAMSEY, P.C.

                                William S. Ramsey
                                Attorney at Law

cc:
Michael Lund

CEASE AND DESIST

                                        3

**EXHIBIT
B**

**LATHROP & GAGE L.C.**
**William R. Hansen (WH-9446)**
**Gianfranco G. Mitrione (GM-8168)**
**Bernadette McGlynn Reilly (BM-4117)**
**230 Park Avenue, Suite 1847**
**New York, New York 10169**
**(212) 850-6220**
**Attorneys for Defendant**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------X

CHAMILIA, LLC,                         :        Civil Action No.:  04 CV 06017
                                       :             (Judge Karas)
                       Plaintiff,      :             ECF CASE
                                       :
            -against-                  :        ANSWER TO COMPLAINT
                                       :
PANDORA JEWELRY, LLC,                  :
                                       :
                      Defendant.       :
-------------------------------------------X

The Defendant Pandora Jewelry, LLC ("Pandora") for its Answer to the

Complaint of Plaintiff Chamilia, LLC ("Chamilia") states as follows:

### AS TO "NATURE OF THE ACTION"

1.        As for Paragraph 1 of the Complaint, Pandora admits that this action was

brought by Chamilia and that the Complaint sets forth all allegations of fact and makes

claims of injuries against the action of Pandora; except as so stating, Pandora denies each

and every allegation and claim made in Paragraph 1.

### AS TO "PARTIES"

2.        Pandora is without knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 2; and, therefore denies the same.

CC 1331162v1

3.       With regard to the allegation made in paragraph 3 of the Complaint, Pandora states that it is a limited liability company organized under the laws of the State of Maryland and admits it has a place of business in Columbia, Maryland.

## AS TO "JURISDICTION AND VENUE"

4.       Pandora denies that any claim has arisen so that this Court has no jurisdiction; except as so denying, Pandora states that Paragraph 4 cites to sections of the United States Code which gives rise to the subject matter jurisdiction for this Court.

5.       Pandora denies that an actual case or controversy has arisen between the parties thereby providing Chamilia with grounds to assert a claim under 28 U.S.C. §§ 2201 and 2202; Pandora further denies that any claims have arisen between the parties under the U.S. Patent Law, the Lanham Act, or those recognized under diversity jurisdiction of this Court under 28 U.S.C. § 1332.

6.       Pandora denies that proper venue is found in this judicial district.

## AS TO "GENERAL ALLEGATIONS"

7.       Pandora is without knowledge or information sufficient to form a belief as to the truth of the allegations made in Paragraph 7; and, therefore, denies the same.

8.       Pandora is without knowledge or information sufficient to form a belief as to the truth of the allegations made in Paragraph 8; and, therefore denies the same.

9.       Pandora admits that Chamilia competes with Pandora in the sale of jewelry; and, except as so admitting, Pandora is without knowledge or information sufficient to form a belief as to the truth of the allegations made in Paragraph 9; and, therefore, denies the same.

10.      Pandora denies the allegations made in Paragraph 10 of the Complaint.

2

11.     In response to Paragraph 11 of the Complaint, Pandora admits it is the owner of a patent pending in the United States Patent and Trademark Office Publication No. US 20004/0144131-A1 (hereinafter "Patent Pending"), and except as so admitting, Pandora denies each and every other allegation made in Paragraph 11.

12.     Pandora denies the allegations made in Paragraph 12 of the Complaint.

13.     Pandora denies the allegations made in Paragraph 13 of the Complaint.

14.     Pandora denies the allegations made in Paragraph 14 of the Complaint.

15.     Pandora admits informing some of its customers that in a Final Judgment on Consent filed in this Court on November 24, 2003 in <u>Pandora Smykker and Pandora Jewelry v. Chamilia</u>, 03 Civ. 7587 (Judge Sprizzo) that Chamilia accepted a judgment compensating Pandora for the infringement of Pandora's registered copyrights and *inter alia*, Chamilia was enjoined from further sales of such infringing jewelry products and paid monetary damages to Pandora; and except as so admitting Pandora denies each and every other allegation made in Paragraph 15 of the Complaint.

16.     Pandora denies the allegations made in Paragraph 16 of the Complaint.

17.     Pandora is without knowledge or information sufficient to form a belief as to the truth of the allegations made in Paragraph 17; and therefore denies the same.

18.     Pandora denies the allegations made in Paragraph 18 of the Complaint.

19.     Pandora denies the allegations made in Paragraph 19 of the Complaint.

20.     Pandora denies the allegations made in Paragraph 20 of the Complaint.

21.     Pandora denies the allegations made in Paragraph 21 of the Complaint.

CC 1331162v1

22.        Pandora is without knowledge or information sufficient to form a belief as to the substance of what Ms. Whirlow was informed and, therefore, denies the allegations in Paragraph 22 of the Complaint.

23.        Pandora denies the allegations made in Paragraph 23 of the Complaint.

24.        Pandora admits that it is the 'original' and that Chamilia "knocked-off" the designs of Pandora jewelry; Pandora admits that Chamilia produced "knock-off" jewelry designs for which a judgment was entered against Chamilia's continued infringement of Pandora's U.S. Copyright Registration No. VA 1-208-549; Pandora admits that in the summer of 2003 it owned the Patent Pending which was published in the Official Gazette of the U.S.P.T.O. on July 29, 2004; and except as so admitting, Pandora denies the other allegations set forth in Paragraph 24 of the Complaint.

### AS TO "COUNT 1: LANHAM ACT, 15 U.S.C. § 1125 (a)(1)(B)"

25.        Pandora repeats and realleges each of the foregoing responses that it has made in Paragraph 1-24, inclusive of the Complaint as if fully set forth herein.

26.        Pandora denies the allegations made in Paragraph 26 of the Complaint.

27.        Pandora denies the allegations made in Paragraph 27 of the Complaint.

28.        Pandora denies the allegations made in Paragraph 28 of the Complaint.

29.        Pandora denies the allegations made in Paragraph 29 of the Complaint.

30.        Pandora denies the allegations made in Paragraph 30 of the Complaint.

31.        Pandora denies the allegations made in Paragraph 31 of the Complaint.

WHEREFORE, Pandora requests judgment against Chamilia dismissing *with prejudice* any claim made by Chamilia in Count I of its Complaint; awarding

Pandora its attorneys' fees and costs as provided in 15 U.S.C. § 1117, and such other further relief as the Court may deem appropriate.

## AS TO "COUNT II: FALSE PATENT MARKING 35 U.S.C. § 292"

32.    Pandora repeats and realleges each of the foregoing responses that it has made in Paragraphs 1-31, inclusive, of the Complaint as if fully set forth herein.

33.    Pandora admits that its Patent Pending has been published but has not yet been issued by the U.S.P.T.O. to protect Pandora's jewelry product from infringement by third parties.

34.    Pandora denies the allegations in Paragraph 34 of the Complaint.

WHEREFORE, Pandora requests judgment be entered dismissing *with prejudice* any claim made by Chamilia in Count II of its Complaint; awarding Pandora its attorneys' fees and costs and such other further relief as the Court should deem appropriate.

## AS TO "COUNT III: SLANDER OF TITLE"

35.    Pandora repeats and realleges each of the foregoing responses that it has made to Paragraphs 1-34, inclusive, of the Complaint as if fully set forth herein.

36.    Pandora denies the allegations made in Paragraph 36 of the Complaint.

WHEREFORE, Pandora requests judgment be entered dismissing *with prejudice* all claims set out in Count III of the Complaint, awarding Pandora its attorneys' fees and costs; and such other further relief the Court shall deem appropriate.

## AS TO "COUNT IV: DEFAMATION"

37.    Pandora repeats and realleges each of the foregoing responses that it has made in Paragraphs 1-36, inclusive, of the Complaint as if fully set forth herein.

38.    Pandora denies the allegations made in Paragraph 38 of the Complaint.

CC 1331162v1

39.     Pandora denies the allegations made in Paragraph 39 of the Complaint.

40.     Pandora denies the allegations made in Paragraph 40 of the Complaint.

41.     Pandora denies the allegations made in Paragraph 41 of the Complaint.

42.     Pandora denies the allegations made in Paragraph 42 of the Complaint.

43.     Pandora denies the allegations made in Paragraph 43 of the Complaint.

44.     Pandora denies the allegations made in Paragraph 44 of the Complaint.

45.     Pandora denies the allegations made in Paragraph 45 of the Complaint.

46.     Pandora denies the allegations made in Paragraph 46 of the Complaint.

47.     Pandora denies the allegations made in Paragraph 47 of the Complaint.

WHEREFORE, Pandora requests judgment dismissing *with prejudice* all claims set out in Count IV of the Complaint; awarding Pandora its attorneys' fees and costs; and such other further relief as the Court shall deem appropriate.

## AS TO "COUNT V: BUSINESS/PRODUCT DISPARAGEMENT"

48.     Pandora repeats and realleges each of the foregoing responses that it has made in Paragraphs 1-47, inclusive, of the Complaint as if fully set forth herein.

49.     Pandora denies the allegations in Paragraph 49 of the Complaint.

WHEREFORE, Pandora requests judgment dismissing *with prejudice* all claims set out in Count V of the Complaint; awarding Pandora its attorneys' fees and costs; and such other further relief as the Court shall deem appropriate.

## AS TO "COUNT VI: TORTIOUS INTERFERENCE WITH ADVANTAGEOUS RELATIONSHIPS"

50.     Pandora repeats and realleges each of the foregoing responses that it has made in Paragraphs 1-49, inclusive, of the Complaint as if fully set forth herein.

CC 1331162v1

51.    Pandora is without knowledge or information sufficient to form a belief as to the truth of the allegations made in the first sentence of Paragraph 51 of the Complaint; and therefore, denies that and the other allegations made in Paragraph 51.

52.    Pandora denies the allegations in Paragraph 52 of the Complaint.

53.    Pandora denies the allegations in Paragraph 53 of the Complaint.

54.    Pandora denies the allegations in Paragraph 54 of the Complaint.

55.    Pandora denies the allegations in Paragraph 55 of the Complaint.

56.    Pandora denies the allegations in Paragraph 56 of the Complaint.

WHEREFORE Pandora requests judgment dismissing *with prejudice* all claims made in Count VI of the Complaint; awarding Pandora its attorneys' fees and costs; and such other further relief as the Court shall deem appropriate.

## AS TO "COUNT VII: STATE UNFAIR COMPETITION"

57.    Pandora repeats and realleges each of the foregoing responses that it has made in Paragraphs 1-56, inclusive, of the Complaint as if fully set forth herein.

58.    Pandora denies the allegations in Paragraph 58 of the Complaint.

WHEREFORE, Pandora requests judgment dismissing *with prejudice* all claims made in Count VII of the Complaint; awarding Pandora its attorneys' fees and costs; and such other further relief as this Court shall deem appropriate.

## AS TO "COUNT VIII: DECLARATORY JUDGMENT"

59.    Pandora repeats and realleges each of the foregoing responses that it has made in Paragraphs 1-58, inclusive, of the Complaint as if fully set forth herein.

60.    Pandora denies the allegations in Paragraph 60 of the Complaint.

61.     Pandora is without knowledge or information sufficient to form a belief as to the truth of the allegations made as to the date Chamilia first began selling jewelry.

62.     Pandora denies the allegations made in Paragraph 62 of the Complaint.

63.     Pandora denies the allegations made in Paragraph 63 of the Complaint.

64.     In response to the allegations made in Paragraph 64 of the Complaint, Pandora has notified Chamilia of the publication of the Patent Pending and has advised Chamilia of the effect of 35 U.S.C. § 154(d) providing for a provisional right to compensation; Chamilia has admitted infringing the copyrights owned by Pandora in a Judgment entered in this Court when it violated the rights of Pandora; except as so stating, Pandora is without knowledge or information sufficient to form a belief concerning the acts or proposed acts of Chamilia with respect to the subject matter of the Patent Pending.

WHEREFORE, Pandora requests judgment dismissing *with prejudice* the request for a Declaratory Judgment and request for injunctive relief as set forth on pages 14 and 15 of Chamilia's Complaint; awarding Pandora its attorneys' fees and costs; and such other further relief as this Court shall deem appropriate.

## AFFIRMATIVE DEFENSES TO ALL COUNTS

65.     Chamilia's complaint fails to state a claim for which relief can be granted.

66.     Chamilia's complaint fails to establish the proper venue.

## AFFIRMATIVE DEFENSES TO COUNT 1 AND COUNT VII

67.     Chamilia's prior action as an admitted infringer of Pandora's U.S. Copyright is a matter of public knowledge with the public filing of the Final Judgment on Consent dated November 24, 2003 in the Southern District of New York.

8

68.     Pandora has a U.S. patent pending which has been published thereby putting the public on notice of the potential for damages from the date of publication pursuant to 35 U.S.C. § 154(d)(1)(A)(B).

69.     Chamilia copied the system used by Pandora to string jewelry beads, spacers and clips while in turn forming the same kind of bracelets and necklaces used by Pandora. Such products are known in the industry and to the public as "knock-offs."

70.     Any dissemination of information regarding Chamilia's prior copyright infringement and present "knock-off" of Pandora's necklaces and bracelets are accurate statements of facts and, as such, are not actionable under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), or under the principles of common law.

## AFFIRMATIVE DEFENSE TO COUNT II

71.     Pandora has a patent pending filed on July 21, 2003 and published by the U.S. Patent and Trademark Office on July 29, 2004, as Publication No. US 2004/0144131-A1 for a unique method of constructing jewelry products.

72.     Pandora has the right to identify its product as "patent pending" and has done so pursuant to 35 U.S.C. § 292.

## AFFIRMATIVE DEFENSE TO COUNT III

73.     Chamilia has not identified any "title to property" which is recognizable under the law as meriting protection.

74.     Even if Chamilia has a claim to a "title," Pandora's statement regarding the "knock-off" character of Chamilia's products are made in good faith and accurately and fairly describe the status of Chamilia's products.

CC 1331162v1

## AFFIRMATIVE DEFENSE TO COUNT IV

75.     Pandora has accurately, fairly, and in good faith identified Chamilia's past blatant copyright infringement and the "knock-off" character of Chamilia's products to Pandora's customers.

76.     Pandora has a "qualified privilege" to communicate with its customers regarding the past business practices of Chamilia and the status of Chamilia's "knock-off" imitation of Pandora's products.

## AFFIRMATIVE DEFENSE TO COUNT V

77.     Chamilia has failed to establish any business relationship with a third party which Pandora intentionally interfered with to injure Chamilia.

78.     Pandora accurately, fairly and in good faith identified Chamilia's prior blatant copyright infringement and the present "knock-off" character of Chamilia's products.

## AFFIRMATIVE DEFENSE TO COUNT VI

79.     Pandora accurately, fairly and in good faith identified Chamilia's past blatant copyright infringement and the present "knock-off" character of Chamilia's products.

80.     Pandora fails to identify any "special damages" including the failure to identify any third parties which ceased to be customers of Chamilia's due to defamatory statements made by Pandora.

10

CC 1331162v1

WHEREFORE, Pandora requests judgment, dismissing Chamilia's

complaint *with prejudice*, and awarding Pandora its attorneys' fees and costs and such

other relief as the Court should deem appropriate.

Dated:  New York, New York
         September 22, 2004

                                    Respectfully submitted,

                                    LATHROP & GAGE L.C.


                          By:  ___/Gianfranco G. Mitrione/_____
                                    William R. Hansen (WH 9446)
                                    Gianfranco G. Mitrione (GM 8618)
                                    Bernadette McGlynn Reilly (BR 4117)
                                    230 Park Avenue, Suite 1847
                                    New York, New York  10169

                                    Attorneys for Defendants
                                    Pandora Jewelry, LLC


## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of September, 2004, I electronically filed the foregoing **ANSWER TO COMPLAINT** with the clerk of the court by using the CM/ECF system.

I further certify that on the 22nd day of September, 2004, I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

                    Dylan D. Smith (DS-6740)
                    VERRILL & DANA, LLP
                    One Portland Square, P.O. Box 586
                    Portland, Maine 04112
                         Attorneys for Plaintiff


                              ___/Gianfranco G. Mitrione/_____
                              An Attorney for Defendant


CC 1331162v1                          11

**EXHIBIT
C**



# Merriam-Webster's Collegiate® Dictionary

## TENTH EDITION

Merriam-Webster, Incorporated
Springfield, Massachusetts, U.S.A.



### A GENUINE MERRIAM-WEBSTER

The name *Webster* alone is no guarantee of excellence. It is used by a number of publishers and may serve mainly to mislead an unwary buyer.

*Merriam-Webster™* is the name you should look for when you consider the purchase of dictionaries or other fine reference books. It carries the reputation of a company that has been publishing since 1831 and is your assurance of quality and authority.

Copyright © 1997 by Merriam-Webster, Incorporated

Philippines Copyright 1997 by Merriam-Webster, Incorporated


Library of Congress Cataloging in Publication Data
Main entry under title:

Merriam-Webster's collegiate dictionary. — 10th ed.
      p.    cm.
   Includes index.
   ISBN 0-87779-708-0 (unindexed : alk. paper). — ISBN 0-87779-709-9 (indexed :
alk. paper). — ISBN 0-87779-710-2 (deluxe : alk. paper). — ISBN 0-87779-707-2
(laminated cover).
   1. English language—Dictionaries.   I. Merriam-Webster, Inc.
PE1628.M36     1997
423—dc20                               96-42529
                                                    CIP


Merriam-Webster's Collegiate® Dictionary, Tenth Edition principal copyright 1993

COLLEGIATE is a registered trademark of Merriam-Webster, Incorporated

All rights reserved. No part of this book covered by the copyrights hereon may be reproduced or copied in any form or by any means—graphic, electronic, or mechanical, including photocopying, taping, or information storage and retrieval systems—without written permission of the publisher.

Made in the United States of America

  181920RMcN97

Case 7:04-cv-06017-KMK    Document 15-2    Filed 01/14/2005    Page 37 of 37

make an unusual move of two squares in one row and one square in a
perpendicular row over squares that may be occupied

¹knight vi (13c) : to make a knight of

knight—er-rant \'nit-'er-ənt\ n, pl knights—errant (14c) : a knight
traveling in search of adventures in which to exhibit military skill,
prowess, and generosity

knight-er-rant-ry \-'er-ən-trē\ n, pl knight—errantries (1654) 1
: the practice or actions of a knight-errant 2 : quixotic conduct

knight-hood \'nit-,hůd\ n (13c) 1 : the rank, dignity, or profession of
a knight 2 : the qualities befitting a knight : CHIVALRY 3 : knights as
a class or body

knight-ly \'nit-lē\ adj (14c) 1 : of, relating to, or characteristic of a
knight 2 : made up of knights : knightli-ness n — knightly adv

Knight of Co-lum-bus \-kə-'ləm-bəs\ n, pl Knights of Columbus
[Christopher Columbus] (1882) : a member of a benevolent and frater-
nal society of Roman Catholic men

Knight of Pyth-i-as \-'pi-thē-əs\ n, pl Knights of Pythias (1869) : a
member of a secret benevolent and fraternal order

Knight of the Mac-ca-bees \'ma-kə-,bēz\ n, pl Knights of the
Maccabees (1922) : a member of a secret benevolent society

Knight Templar n, pl Knights Templars or Knights Templar
(1610) 1 : TEMPLAR 1 2 : a member of an order of Freemasonry
conferring three orders in the York rite

knish \kə-'nish\ n [Yiddish, fr. Pol knysz] (1916) : a small round or
square of dough stuffed with a filling (as potato) and baked or fried

¹knit \'nit\ vb knit or knit-ted; knit-ting [ME knitten, fr. OE cnyttan;
akin to OE cnotta knot] vt (bef. 12c) 1 chiefly dial : to tie together 2
a : to link firmly or closely ⟨knitted my hands⟩ b : to cause to grow
together (time and rest will ~ a fractured bone) c : to contract into
wrinkles ⟨knitted her brow⟩ 3 : to form by interlacing yarn or thread
in a series of connected loops with needles ~ vi 1 : to make knitted
fabrics or objects 2 a : to become compact b : to grow together c
: to become drawn together — knit-ter n

²knit n (1596) : KNITSTITCH; also : a knit fabric

knit stitch n (ca. 1885) : a basic knitting stitch usu. made with the
yarn at the back of the work by inserting the right needle into the front
part of a loop on the left needle from the left side, catching the yarn
with the point of the right needle, and bringing it through the first loop
to form a new loop — compare PURLSTITCH

knit-ting n (15c) 1 : the action or method of one that knits 2 : work
done or being done by one that knits

knit-wear \'nit-,war, -,wer\ n (1926) : knitted clothing

knob n \'näb\ n [ME knobbe; akin to MLG knubbe knob] (bef. 12c) 1
a : a rounded protuberance : LUMP b : a small rounded ornament or
handle 2 : a rounded usu. isolated hill or mountain — knobbed
\'näbd\ adj — knob-by \'nä-bē\ adj

knob-bly \'nä-b(ə-)lē\ adj (1859) : having very small knobs ⟨a ~ mat-
tress⟩

knob-ker-rie \'näb-,ker-ē\ n [Afrik knopkierie, fr. knop knob + kierie
club] (1844) : a short wooden club with a knob at one end used as a
missile or in close attack esp. by Zulus of southern Africa

¹knock \'näk\ vb [ME knoken, fr. OE cnocian; akin to MHG knochen
to press] vi (bef. 12c) 1 : to strike something with a sharp blow 2
: to collide with something 3 a : BUSTLE ⟨knock ~ing around⟩
in the kitchen⟩ b : WANDER ⟨~ed about Europe all summer⟩ 4 a
: to make a pounding noise b : to have engine knock 5 : to find
fault ~ vt 1 a (1) : to strike sharply (2) : to drive, force, or make
by or as if by so striking b : to set forcibly in motion with a blow 2
: to cause to collide 3 : to find fault with ⟨always ~ing those in au-
thority⟩ — knock cold : KNOCK OUT 2a(1) — knock dead : to move
strongly esp. to admiration or applause ⟨a comedian who really knocks
them dead⟩ — knock for a loop 1 a : OVERCOME ⟨knocked my oppo-
nent for a loop⟩ b : DEMOLISH ⟨knocked our idea for a loop⟩ 2 : DUMB-
FOUND, AMAZE ⟨the news knocked them for a loop⟩ — knock one's
socks off 1 : to overwhelm or amaze one ⟨a performance that will
knock your socks off⟩ — knock together 1 : to make or assemble esp.
hurriedly or in a makeshift way ⟨knocked together my own bookcase⟩

²knock n (14c) 1 a : a sharp blow : RAP, RAP (a loud ~ on the door)
b (1) : a severe misfortune or hardship (2) : SETBACK, REVERSAL 2
: a pounding noise b : a sharp repetitive metallic noise caused by
abnormal ignition in an automobile engine 3 : a harsh and often petty
criticism ⟨likes praise but can't stand the ~s⟩

knock-about \'nä-kə-,baůt\ adj (1880) 1 : suitable for rough use ⟨~
clothing⟩ 2 a : being noisy and rough : BOISTEROUS ⟨~ games⟩ b
: characterized by boisterous antics and often extravagant burlesque
⟨~ comedy⟩ 3 of a sailing vessel : having a simplified rig marked by
absence of bowsprit and topmast ⟨a ~ sloop⟩ — knockabout n

knock back vt (ca. 1931) : DRINK, SWALLOW; specif : to toss down (an
alcoholic beverage)

¹knock-down \'näk-,daůn\ adj (1690) 1 : having such force as to
strike down or overwhelm ⟨a bewildering assortment of ~ arguments
—J. W. Krutch⟩ 2 : that can easily be assembled or disassembled ⟨a
~ table⟩ 3 chiefly Brit : extremely low : REDUCED ⟨~ prices⟩

²knockdown n (1809) 1 : the action of knocking down 2 : some-
thing (as a blow) that strikes down or overwhelms 3 : something (as a
piece of furniture) that can be easily assembled or disassembled

knock-down \'daůn\ vt (15c) 1 : to strike to the ground with or as if
with a sharp blow : FELL 2 : to dispose of (an item) to a bidder at an
auction sale 3 : to take apart : DISASSEMBLE 4 : to receive as income
or salary : EARN ⟨positions where they were asked to knock down good
money —Infantry Jour.⟩ 5 : REDUCE

knock-down—drag-out or knock-down-and-drag-out adj (1834)
: marked by extreme violence or bitterness and by the showing of no
mercy ⟨~ political debates⟩ — knock-down-drag—out n

knock-er \'nä-kər\ n (14c) 1 : one that knocks; as a : a metal ring,
bar, or hammer hinged to a door for use in knocking b : a persistently
pessimistic critic 2 : BREAST — usu. used in pl., often considered vul-
gar

knock-knee \'näk-'nē, -,nē\ n (1879) : a condition in which the legs
curve inward at the knees — knock-kneed \-'nēd\ adj

knock-off \'näk-,of\ n (1966) : a copy that sells for less than the origi-
nal; broadly : a copy or imitation of someone or something popular

knock off vi (1649) : to stop doing something ~ vt 1 : to do hur-
riedly or routinely ⟨knocked off one painting after another⟩ 2 : DIS-

CONTINUE, STOP ⟨knocked off work at five⟩ 3 : DEDUCT ⟨knocked off a
little to make the price more attractive⟩ 4 a : KILL ⟨knocked off two
men ... on mercenary grounds —Lewis Baker⟩ b : OVERCOME, DEFEAT
⟨knocked off each center of rebellion⟩ 5 : ROB ⟨knocked off a couple of
banks⟩ 6 : to make a knockoff of : COPY, IMITATE ⟨knocks off popular
dress designs⟩

knock-out \'näk-,aůt\ n (1887) 1 a : the act of knocking out : the
condition of being knocked out b (1) : the termination of a boxing
match when one boxer is knocked down and is unable to rise
and resume boxing within a specified time (2) : TECHNICAL KNOCKOUT
c : a blow that knocks out an opponent (2) : something sensationally
striking, appealing, or attractive — knockout adj

knock out vt (1856) 1 : to produce roughly or hastily 2 a (1) : to
defeat (a boxing opponent) by a knockout (2) : to make unconscious
⟨the drug knocked him out⟩ b : to make inoperative or useless ⟨elec-
tricity was knocked out by the storm⟩ c : to get rid of : ELIMINATE
⟨knocked out illegal gambling⟩ 3 : to tire out : EXHAUST ⟨knocked
themselves out with work⟩ 4 : to cause (an opposing pitcher) to be
removed from a baseball game by a batting rally

knockout drops n pl (1895) : drops of a solution of a drug (as chloral
hydrate) put into a drink to produce unconsciousness or stupefaction

knock over vt (1834) 1 a (1) : to strike to the ground : FELL
(2) : OVERWHELM ⟨was knocked over by the news⟩ b : ELIMINATE
⟨knocked over every difficulty⟩ 2 a : STEAL esp : HIJACK ⟨knocks over
a truckload of merchandise —J. B. Martin⟩ b : ROB ⟨knocking over a
bank⟩

knock up vt (1663) 1 Brit : ROUSE, SUMMON 2 : to make pregnant —
sometimes considered vulgar

knock-wurst \'näk-(,)wərst also -,vůr(r)st, sometimes -,vůsht\ n [G
Knackwurst, fr. knacken to crackle (of imit. origin) + Wurst wurst] (ca.
1929) : a short thick heavily seasoned sausage

knoll \'nōl\ n [ME knol, fr. OE cnoll; akin to ON knollr mountaintop]
(bef. 12c) : a small round hill : MOUND

²knoll vb [ME, prob. alter. of knellen to knell] (15c) archaic : KNELL

knop \'näp\ n [ME, fr. OE cnoppa knob] (12c) 1 a : a usu. ornamental
knob — knopped \'näpt\ adj

¹knot \'nät\ n [ME, fr. OE cnotta;
akin to OHG knoto knot] (bef.
12c) 1 a : an interlacement of
the parts of one or more flexible
bodies forming a lump or knob
b : the lump or knob so formed
c : a tight constriction or the
sense of constriction ⟨my stomach
was all in ~s⟩ 2 : something
hard to solve : PROBLEM ⟨a matter
full of legal ~s⟩ 3 : bond of
union; esp : the marriage bond 4
a : a protuberant lump or swell-
ing in tissue ⟨a ~ in a gland⟩ b
: the base of a woody branch
enclosed in the stem from which
it arises; also : its section in lum-
ber 5 : a cluster of persons or
things : GROUP 6 : an ornamen-
tal bow of ribbon : COCKADE 7
a : a division of the log's line
serving to measure a ship's speed
b (1) : one nautical mile per
hour (2) : one nautical mile —
not used technically

²knot vb knot-ted; knot-ting vt
(1547) 1 : to tie in or with a
knot : form knots in 2 : to unite
closely or intricately : ENTANGLE
3 : TIE 4b ⟨knotted the score⟩ ~
vi : to form knots — knot-ter n

³knot n, pl knots or knot [ME
knot] (15c) : either of two sand-
pipers (Calidris canutus and C.
tenuirostris) that breed in the
Arctic and winter in temperate or
warm parts of the New and Old
World

knot garden n (1519) : an elabo-
rately designed garden esp. of
flowers or herbs



knot 1b: 1 Blackwall hitch, 2 carrick
bend, 3 clove hitch, 4 cat's-paw, 5
figure eight, 6 granny knot, 7 bow-
line, 8 overhand knot, 9 fisherman's
bend, 10 half hitch, 11 square knot,
12 slip knot, 13 stevedore knot, 14
true lover's knot, 15 surgeon's knot,
16 Turk's head, 17 sheet bend, 18
timber hitch, 19 seizing, 20 rolling
hitch, 21 sheepshank

knot-grass \'nät-,gras\ n (1538)
1 : a cosmopolitan weed ⟨Polygo-
num aviculare⟩ of the knotweed
family with jointed stems, promi-
nent sheathing stipules, and mi-
nute flowers; broadly : any of
several congeneric plants 2
: any of several grasses with
markedly jointed stems; esp
: JOINT GRASS

knot-hole \-,hōl\ n (1726) : a hole in a board or tree trunk where a
knot or branch has come out

knotted \'nä-təd\ adj (12c) 1 : tied in or with a knot 2 : full of
knots : GNARLED 3 : KNOTTY 4 : ornamented with knots or knobs

knot-ty \'nä-tē\ adj knot-ti-er; -est (13c) : marked by or full of knots;
esp : so full of difficulties and complications as to be hard to defy
solution ⟨a ~ problem⟩ syn see COMPLEX — knot-ti-ness n

knotty pine n (ca. 1898) : pine wood that has a decorative distribution
of knots and is used esp. for interior finish

knot-weed \'nät-,wēd\ n (1884) : any of several herbs (genus Polygo-
num) of the buckwheat family with leaves and bracts, jointed and hav-
ing a very short petiole; broadly : POLYGONUM

knout \'naůt, sometimes 'nüt\ n [Russ knut, of Scand origin; akin to
ON knútr knot; akin to OE cnotta] (1716) : a whip used for flogging —
knout vt

¹know \'nō\ vb knew \'nü also 'nyü\; known \'nōn\; know-ing [ME,
fr. OE cnāwan; akin to OHG bichnaan to recognize, L gnoscere, noscere