**LATHROP & GAGE L.C.**
**William R. Hansen (WH-9446)**
**Gianfranco G. Mitrione (GM-8168)**
**Bernadette McGlynn Reilly (BM-4117)**
**230 Park Avenue, Suite 1847**
**New York, New York 10169**
**(212) 850-6220 (tel)**
**(212) 850-6221 (fax)**

**Attorneys for Defendant**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X

| | | |
|---|---|---|
| CHAMILIA, LLC, | : | Civil Action No.: |
| | : | 04 CV 06017 (KMK) |
| Plaintiff, | : | |
| | : | |
| -against- | : | ECF CASE |
| | : | |
| PANDORA JEWELRY, LLC, | : | |
| | : | |
| | : | |
| Defendant. | : | |

------------------------------------------------------------X

**DECLARATION OF MICHAEL LUND PETERSEN IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

MICHAEL LUND PETERSEN does hereby declare:

1.    I submit this declaration in support of defendant's motion for summary judgment.

2.    I am a principal and Sales Director of Pandora Jewelry, LLC ("Pandora Jewelry") and an officer of Pandora Smykker USA Aps, ("Pandora Smykker") (collectively, "Pandora"). Pandora Jewelry is a wholly owned subsidiary of Pandora Smykker, which has its headquarters in Copenhagen, in the Kingdom of Denmark. Our offices in the United States of America are in Columbia, Maryland, which is located near the District of Columbia. I am a Danish citizen. I am familiar with the English language and use it in the business conducted in the U.S. and around the

world. I have read this is in the English language and believe it truly represents the facts as I know them.

3.       I have read the complaint filed by Chamilia on August 2, 2004 alleging violations of federal and state unfair competition laws and various state law claims. I have personal knowledge of the facts stated herein.

4.       This is not Pandora's first encounter with Chamilia. As explained further in my declaration, my company was forced to bring two federal lawsuits, one in the Southern District of New York and another in the District Court of New Jersey, to enjoin Chamilia and its retailers from selling jewelry which infringed Pandora's U.S. copyrights.

5.       Pandora Jewelry is the United States distributor of the unique and distinctive jewelry designs created by Pandora Smykker's artisans in Copenhagen. In particular, we created a unique series of silver and 14 karat gold beads, spacers, clips, bracelets and necklaces, each an original work of art which captures the expressive spirit of Scandinavian design (hereinafter "Pandora jewelry"). Lisbeth Susanne Eno Larsen and Lone Ronnow Frandsen, employees of Pandora Smykker, created each of the original designs for the Pandora jewelry designs in our Copenhagen studio.

6.       The Pandora jewelry designs were created in 2000, and are protected by the Danish Copyright laws. Pandora Jewelry obtained U.S. Copyright Certificate Registrations, VA-1-208-549, VA-1-210-216, VA-1-210-240 and VA-1-218-723, for our Pandora jewelry designs, first effective on September 4, 2003.

7.       In October, 2002, Pandora entered the United States market and began distributing Pandora's copyrighted catalogs and other sales information including samples of the Pandora jewelry designs to retailers and potential customers. In April, 2003, we began selling the copyrighted Pandora jewelry designs crafted in silver and 14 karat gold into the United States. As part of this

2

effort, we organized Pandora Jewelry to manage our business in the United States. As [**owner**/president] of Pandora Jewelry, I manage this business for Pandora Smykker.

8.    Building upon the original distinctive character of our copyrighted Pandora jewelry designs, Per. A. Enevoldsen, a principal of Pandora, invented a unique method of stringing jewelry beads, spacers and clips which, in turn, form individually distinctive bracelets and necklaces. On July 21, 2003, Pandora filed a patent application with the U.S. Patent and Trademark Office to protect Mr. Enevoldsen's invention. The patent pending is entitled "NECKLACES AND BRACELETS WITH KEEPERS" and was assigned Application No. 10/623,641.

9.    Once the patent application was filed, Pandora began using the legend "patent pending" on all of its promotional and advertising materials used in connection with the distribution and sale of the Pandora jewelry line. Attached as Exhibit D are copies of Pandora's promotional and advertising materials bearing the legend "patent pending."

10.    Pandora's patent application was published by the U.S. Patent and Trademark Office on July 29, 2004, as Publication No. US 2004/0144131-A1. Attached as Exhibit E is a copy of the U.S. Patent Application Publication issued by the U.S. Patent and Trademark Office in connection with the Pandora's application.

11.    Once the patent application was published we requested our intellectual property counsel to provide notice by letter to manufacturers and retailers of necklaces and bracelets in the United States, including Chamilia, which appear to utilize substantially the same construction and perform the same function as Pandora's patent pending for its necklaces and bracelets. Attached as Exhibit F is a copy of a letter dated August 18, 2004 notifying Chamilia's counsel, Verrill & Dana LLP, that Pandora's patent application had been published.

3

12.    Emphasizing original and interesting shapes, Pandora has developed a distinctive line of precious metal and semi-precious stone jewelry which has proven to be very successful. Since our introduction of these distinctive jewelry items in October, 2002, we have achieved nearly $16,000,000 in wholesale sales in the U.S and have become the recognized leader in the jewelry industry in the U.S. for the type of custom designed bracelets and necklaces manufactured and sold by Pandora . We began our sales effort on the West Coast and are now selling products across the United States as a result of the terrific customer interest our designs have generated. Our customers are presently selling our Pandora jewelry designs in approximately 1,000 retail locations in the United States.

13.    A copy of our catalog, which is accessible via my company's website, www.pandora-jewelry.com, depicts our beautiful and creative jewelry which has attracted customers of taste who have purchased our unique combination of copyrighted Pandora's jewelry designs, including jewelry beads, spacers, clips, bracelets and necklaces.

14.    In June 2003, Dov Schwartz, a principal of Chamilia, became a distributor of the Pandora Jewelry. I believe that during the summer of 2003, Chamilia arranged to have the Pandora jewelry designs reverse engineered in Asia by taking a cast from existing jewelry items then creating a mold to cast the infringing copies. In mid-August 2003 I learned that Chamilia had copied Pandora's collection of the Pandora jewelry designs and were offering them for sale to Pandora's own retail store customers. I considered Chamilia's copies of Pandora's jewelry designs to be more than knockoffs in the jewelry industry since they were blatant copies of our copyrighted designs.

15.    In order to confirm that Chamilia had in fact infringed our copyrighted jewelry designs I attended the San Francisco International Gift Fair in San Francisco, California on August 26 and 27, 2003. At the Gift Fair on August 26, 2003 I visited Chamilia's booth and discovered that Chamilia

4

was displaying jewelry products which in fact were copies of Pandora's protected jewelry designs. On August 27, I visited the booth again and encountered Lisa Whirlow. At the time I was aware that she was Chamilia sales representative for the southern California area.

16.    I informed Ms. Whirlow then that the jewelry imported, marketed and sold by Chamilia were copies of Pandora's copyrighted designs. I also informed her that Pandora's jewelry designs were protected by the Berne Convention and that Pandora owned a copyright in the United States for all of its jewelry designs. I am informed that since Denmark and the U.S. are part of an international copyright treaty, I told her that Pandora owned a "worldwide copyright." Ms. Whirlow then told me that there were a number of companies in the jewelry industry that have copied or planned to copy Pandora's jewelry designs.

17.    After examining Chamilia's line of jewelry, I realized that Chamilia's jewelry was unquestionably inferior in quality of workmanship and that it copied the system used by Pandora to string jewelry beads, spacers and clips to necklaces and bracelets. Inferior jewelry products are known to me, the jewelry industry and to the public as "knockoffs" of the original.

18.    During our conversation, I notified her that Pandora had a patent pending for the method by which the jewelry beads, clips and spacers are fastened to the bracelets and necklaces. She asked me for the patent application number and I told her I did not know it off hand. I never told Ms. Whirlow that Pandora owned a patent for its jewelry line. When I advised her of Pandora's "worldwide" rights, I clearly referred to Pandora's copyrights and not any patent. Furthermore, at no time did I advise her that Pandora would use its patent to "shut down" Chamilia or any of Pandora's competitors.

19.    On August 26, 2003, I instructed our then patent counsel, William S. Ramsey, to send a letter to Chamilia demanding that it cease infringing Pandora's jewelry designs. A copy of that

5

letter is annexed hereto as Exhibit G. In that letter, Mr. Ramsey informed Chamilia of Pandora's copyright rights in the jewelry designs and further informed Chamilia that Pandora had filed a "nonprovisional U.S. Patent Application which protects the functional aspects of the necklaces and bracelets."

20.     Shortly after the cease and desist letter was mailed, Mr. Ramsey informed me that he had a telephone conversation with a representative of Chamilia about the letter. Despite this acknowledged notice of its infringement, Chamilia did not cease copying Pandora's jewelry designs. Even after being put on notice of the strength of plaintiffs' rights and goodwill in their original and novel jewelry designs, Chamilia continued to distribute jewelry products copying Pandora's jewelry designs in the United States.

21.     I instructed our new intellectual property counsel, William R. Hansen, then with the firm of Duane Morris LLP, to initiate a lawsuit against Chamilia based on its willful infringement of Pandora's copyrights. On September 25, 2003, Pandora filed suit against Chamilia for copyright infringement, trade dress infringement, unfair competition, dilution and deceptive trade practices under both federal and New York law. This lawsuit, which concerned the unauthorized manufacture, promotion, distribution and sale of Chamilia's jewelry which copied the copyrighted Pandora jewelry designs, was filed in the United States District Court for the Southern District of New York and was assigned to United States District Judge John E. Sprizzo ("New York Action").

22.     In the New York Action, Pandora sought a temporary restraining order ("TRO") against Chamilia. On October 2, 2003, after holding a hearing, Judge Sprizzo issued a TRO which enjoined Chamilia, and any other person acting in concert or participation with Chamilia, from, among other things, copying, marketing, or selling copies of Pandora's copyrighted jewelry designs. A copy of the TRO is attached hereto as Exhibit H.

6

23.    After a period of settlement discussions, Chamilia consented to the entry of a judgment against it. On November 24, 2003, a Final Judgment on Consent ("Final Judgment") executed by the parties was entered by Judge Sprizzo as a final judgment of copyright infringement against Chamilia in favor of Pandora. A copy of the Complaint and Final Judgment is attached hereto as Exhibit I.

24.    In early November, 2003, in order to restrain various retailers in New Jersey from selling the infringing Chamilia jewelry, Pandora filed an action against Jason Adams, individually, and Jason Adams conducting business as Chamilia Beaded Charms in the District Court for New Jersey ("New Jersey Action") alleging the copyright and trademark infringement resulting from the New Jersey retailer's sale of the Chamilia jewelry. On November 7, 2003, the District Court Judge in the New Jersey Action also issued a TRO enjoining the New Jersey retailers from promoting, selling or distributing the Chamilia jewelry.

25.    On January 26, 2004, the District Court Judge in the New Jersey action entered a Stipulation and Order of Settlement whereby Jason Adams consented to an injunction permanently restraining Mr. Adams from copying Pandora's jewelry designs and selling the Chamilia jewelry. A copy of the Stipulation and Order of Settlement is attached hereto as Exhibit J.

26.    Since Pandora's remarkable sales during the 2003-2004 holiday season, there have emerged at least five (5) other companies with lines of jewelry which sell necklaces and bracelets in the United States which appear to utilize substantially the same construction and perform the same function as Pandora's patent pending for its necklaces and bracelets. At my request, Pandora's counsel has notified each one of the companies that Pandora's patent application had been published.

7

I DECLARE under penalty of perjury that the foregoing is true and correct.

Dated: Columbia, Maryland
      January 12, 2005

_____
           Michael Lund Petersen

**EXHIBIT D**



Patent pending - Copyright - All rights reserved - For store locator visit www.pandora-jewelry.com

**One for every unforgettable moment**

      

www.pandora-jewelry.com    ©2000 Pandora Jewelry LLC. All Rights Reserved.

PANDORA









10015 Old Columbia Road
Suite B-215
Columbia, MD 21046
410-309-0200  Tel    410-309-0250  Fax
www.pandora-jewelry.com  Website

© 2000 Pandora Jewelry. LLC. All Rights Reserved

Patent Pending





 



PANDORA
Jewelry



*Pandora invites you...*

**PANDORA**
*Jewelry*

Patent Pending # 10/623,641
www.pandora-jewelry.com
© 2000 Pandora Jewelry, LLC. All Rights Reserved.



Reserve your appointment for the show to be guaranteed an introductory presentation of the hot new extension of the Pandora line. Please reserve your time by calling your Pandora representative today to let them know you are interested in attending the show.

When you reserve an appointment and attend the show please bring the enclosed card to redeem your free gift of a great piece of jewelry from our New Match collection.






*receive your free gift...*

*Redeem this card for your free gift of jewelry from Pandora's NEW Match collection.*

*locations...*

**Atlanta Gift & Home Furnishings Market**

January 14th - 18th, 2005

AmericasMart Atlanta
Atlanta, GA

Booth #1314

404-220-3000

**Dallas International Gift & Home Accesories Market**

January 14th – 17th, 2005

World Trade Center
Dallas, TX
Personal Style 13th Floor

Booth #3223

888-231-7024

## PANDORA

**The San Francisco International Gift Show**

February 5th – 9th, 2005

Mosconi Center
San Francisco, CA

Booth #532

**California Gift Show**

January 22nd – 25th, 2005

Los Angeles Convention Center
Los Angeles, CA

Booth #6706

*to attend...*

*any of the following shows:*

*Atlanta Gift &
Home Furnishings Market*

*Dallas International Gift &
Home Accessories Market*

*The San Francisco International
Gift Show*

*or the*

*California Gift Show*

One for every *charmed* moment

**PANDORA** *Jewelry*

Patent pending • Solid gold and precious stones • Copyright • All rights reserved • For your nearest location visit www.pandora-jewelry.com



Patent pending • Solid gold and precious stones • Copyright • All rights reserved • For store locator visit www.pandora-jewelry.com