**LATHROP & GAGE L.C.**
**William R. Hansen (WH-9446)**
**Gianfranco G. Mitrione (GM-8168)**
**Bernadette McGlynn Reilly (BM-4117)**
230 Park Avenue, Suite 1847
New York, New York 10169
(212) 850-6220 (tel)
(212) 850-6221 (fax)

**Attorneys for Defendant**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
CHAMILIA, LLC,                              :   Civil Action No.:
                                            :   04 CV 06017 (KMK)
         Plaintiff,                :
                                            :
    -against-                             :   ECF CASE
                                            :
PANDORA JEWELRY, LLC,                       :
                                            :
         Defendant.                :
------------------------------------------------------------X

**DECLARATION OF JODY HENDERSON IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

     JODY HENDERSON, does hereby declare:

     1.    I am a sales representative for Pandora Jewelry, LLC ("Pandora") located in Columbia, Maryland. I am responsible for promoting and distributing Pandora's unique and distinctive line of silver and 14-karat gold jewelry to retailers in Central and Southern Illinois. My employment with Pandora began in mid-February, 2004 and since then, on its behalf, I have established accounts in approximately 47 retail locations in Illinois. Until the end of December,

2004, I was also a sales representative for the LAD Group promoting and distributing its Message Connextion jewelry line in Illinois. Today, all of my time is devoted to Pandora.

2. I have read the complaint filed by Chamilia, LLC ("Chamilia") in this action with particular attention to those allegations made in paragraph 20 concerning alleged statements that I made to Kathy Riley on March 14, 2004 at the Chicago Gift Show.

3. My declaration will serve to correct the erroneous allegations made in Chamilia's complaint concerning my interaction with Ms. Riley in March, 2004. I have personal knowledge of the facts stated herein.

4. On March 14, 2004, together with my 10-year old daughter, I visited the LAD Group display booth at the Chicago Gift Show in Chicago, Illinois to pick up several documents from Robbi Potter, an owner of the LAD Group. My daughter and I spent approximately 20 minutes at the LAD Group booth. Although I did not attend the Chicago Gift Show in my capacity as a Pandora sales representative, I was wearing a Pandora bracelet with various silver and 14-karat gold jewelry beads.

5. While at the LAD Group booth, Ms. Riley approached me and inquired about my Pandora bracelet. We spoke for a few minutes concerning the Pandora jewelry line before she asked me about a lawsuit involving Pandora and Chamilia. During the time in which Ms. Riley and I spoke, the only other individuals present at the LAD Group booth during our brief conversation were my daughter and Mrs. Potter.

6. I quickly informed Ms. Riley that the only lawsuit I was aware of concerned the copying of Pandora's jewelry bead designs by Chamilia. I never said to her that Pandora was suing or intended to sue Chamilia based on its patent pending. In fact, the only lawsuit that Ms.

2

Riley and I discussed involved the copyright infringement lawsuit filed against Chamilia which ended in November, 2003. While I was aware in March, 2004 that Pandora had a patent pending for its jewelry line, Ms. Riley and I never discussed it.

7. Since I began promoting and selling the Pandora line of jewelry products in mid-February, 2004, I have encountered several customers who have inquired about a lawsuit involving Pandora and Chamilia. In an effort not to misstate any facts concerning the only lawsuit I am aware of involving Pandora and Chamilia, while traveling during the months of February, March and April, 2004 to promote the Pandora jewelry products, I carried along with me a copy of a press release from Gift Beat magazine which sets forth the facts of the copyright lawsuit against Chamilia and the permanent injunction and judgment entered against it. A copy of the Gift Beat press release is attached as Exhibit K to my declaration.

8. When asked by a customer or potential customer of the Pandora jewelry line about any lawsuit involving the two parties, I would present a copy of the Gift Beat press release to them so that they could familiarize themselves with the facts of that case. I have never advised anyone that Pandora was suing Chamilia because Pandora had a patent. In fact, the Gift Beat article mentions that Pandora has a "patent-pending on its bracelet design." See Exhibit K.

3

I DECLARE under penalty of perjury that the foregoing is true and correct.

Dated: Chicago, Illinois
January 12, 2005

_Jody Henderson 1-12-05_
Jody Henderson

Case 7:04-cv-06017-KMK     Document 15-7     Filed 01/14/2005     Page 5 of 6

**EXHIBIT K**

## On Our Radar...

♦ *A European bead trend...* that is receiving some interest on giftbeat.com (see "The next ICB?" in the Buying/Product forum). Pandora Jewelry (410) 309-0200, which has a patent-pending on its bracelet design, has been selling in Northern Europe for four years. A year ago, the company opened a U.S. office. The concept is similar to Italian charms, where consumers create unique bracelets for themselves. Bracelets are divided by small threads into three sections. Each bead is also threaded, which allows easy attachment to the desired section of



the bracelet. Pandora's bracelets are offered in six lengths ($13.25 cost). Sterling silver spacers cost $5 each, while 14-karat gold spacers begin at $22 wholesale. Sterling silver beads start at $5.50 cost and 14-karat gold styles are $44 and up.

A California retailer, who does big business in Italian charms, brought in the Pandora line last April. "It's doubling in sales for us every month." While he doesn't believe the trend will be as big as Italian charms, he expects it will be about 50-65% of his ICB business. "Customers love the look. Some people say it's a little more upscale than the Italian charms." While the bracelets are much easier to put together, he stresses the importance of sales associates spending time with customers to explain how to create their own special jewelry (pandora-jewelry.com).
*Editor's Note: We confirmed that on November 25, 2003, Pandora won a judgment for copyright infringement against the company Chamilia in U.S. District Court for the Southern District of New York. Chamilia was ordered to destroy the jewelry that infringed upon Pandora's copyright.*

to do so in the future.

Manufacturers we polled point to improved customer service and communication as two key benefits of a Web presence. Notes one respondent, "W[...]

---

s! As consumers
6) 394-6313 are
Soy Beads" por-
ice or an electric



mber, based on
ince then, he's
ng into 2004, he
s.com).

1 *Vintage Flair.* The
ues to gain attention
*atural Life* (800)
f this trend with its
ollection." Featuring
olorful, hand-embroi-
tress ticking fabric,
es a frame, bag, door
ach piece is high-
ntiments, such as
' "Friends are the best
od for girlfriends" and
ke a sister." Cost —
(naturallife.net).

## lier Meetings

nt perspectives. *Example:* "We've
l at the downside of this proposal,
anyone have a more positive take on
uation?"
it everyone involved. Break meetings
maller groups and assign specific tasks.
ing in small groups will give more
e a chance to become active and
ate new ideas.
ep participants' comments brief.
ully limit discussion if you see that peo-
e rambling on or repeating themselves.
*: Communication Briefings,* Dec. '03,
"The Complete Handbook of Business
ings," AMACOM (800) 262-9699.

---

## A Sentiment Line That Sells

Looking for some well-priced, well-designed sentiment items that focus on sister, mother or special friends? Plain Jane (800) 253-5263 has hit the mark in this category, retailers report. The ceramic items are decorative, functional and boxed for gift giving. The company's tagline is appropriate: "Gifts to go...just add a bow!" Plain Jane's collections feature verses like "A true friend reaches for your hand and touches your heart" or "Simple pleasures are life's greatest treasures." Sentiments are found on two lines: "Petite Expressions,"



dainty, blue-and-white dishes introduced last year; and "English Garden" (shown above), new for 2004 and featuring oval and oblong dishes for holding eyeglasses or jewelry. A Georgia retailer, who has reordered the "Petite Expressions" dishes ten times, retails them for $12 (wholesale is $5). "Customers don't have to look at their budget to decide if they want to spend $12 to make a friend happy." An Ohio retailer adds, "We rarely sell just one dish. It's usually at least two. Some buy four or six at a time." A pump dispenser and two picture frame shapes are new for 2004. Plain Jane receives high marks from retailers for customer service, prompt shipping and quality. "All this just makes it a no-brainer to bring this line into your store," the Georgia retailer adds (plainjaneinc.com).

*Licensing Watch... Simson Giftware* (800) 966-0060 *applies the nostalgia of the Pillsbury Doughboy to a 40-piece introduction of home decor, casual serveware and desktop and tabletop accessories. Categories include magnets, bookends, bowls and more. All serving*



*produces are made of ceramic. Cost range: $1.50-$25. The cheeseboard shown here is 16-in. high with a cost of $25* (simsongift.com).