LATHROP & GAGE L.C.
William R. Hansen (WH-9446)
Gianfranco G. Mitrione (GM-8168)
Bernadette McGlynn Reilly (BM-4117)
230 Park Avenue, Suite 1847
New York, New York 10169
(212) 850-6220 (tel)
(212) 850-6221 (fax)

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
CHAMILIA, LLC,                           :    Civil Action No.:
                                         :    04 CV 06017 (KMK)
                 Plaintiff,              :
                                         :
        -against-                        :    ECF CASE
                                         :
PANDORA JEWELRY, LLC,                    :
                                         :
                 Defendant.              :
-------------------------------------------------------X

## DECLARATION OF STEVE GLUECK IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

STEVE GLUECK, does hereby declare:

1. I submit this declaration pursuant to Rule 56 of the Federal Rules of Civil Procedure in support of defendant's motion for summary judgment.

2. I am a sales representative for Pandora Jewelry, LLC ("Pandora") located in Columbia, Maryland. I am responsible for promoting and distributing Pandora's unique and distinctive line of silver and 14-karat gold jewelry to retailers in California, Oregon, Washington, Nevada, Arizona and Hawaii. My employment with Pandora began in March, 2003 and since

then, on its behalf, I have established accounts in approximately 250 retail locations in the western part of the United States.

3. I have read the complaint filed by Chamilia, LLC ("Chamilia") in this action with particular attention paid to those allegations made in paragraphs 19 and 22 concerning statements that I am alleged to have made to Lisa Whirlow and others on February 8, 2004 at the Winter International Gift Show.

4. My declaration will serve to correct the erroneous allegations made in Chamilia's complaint concerning alleged statements made to Ms. Whirlow and others in February, 2004. I have personal knowledge of the facts stated herein.

5. In February, 2004, Pandora was an exhibitor of its jewelry products at the Winter International Gift Show ("Gift Show") in San Francisco, California. I was the only Pandora representative who oversaw and managed the exhibition booth during the days of the Gift Show.

6. I do not make a practice of visiting other exhibitors at trade shows but on February 8, 2004, as I walked through the exhibition hall on my way to the restroom, I encountered Ms. Whirlow at Chamilia's exhibition booth and I introduced myself. It is my understanding that Ms. Whirlow is the national sales representative for Chamilia LLC.

7. Ms. Whirlow and I began discussing Pandora's copyright infringement suit filed against Chamilia in October, 2003. Ms. Whirlow's tone was very apologetic and she indicated that she regretted that her company had ever copied Pandora's jewelry beads. She also specified that she was unaware that Chamilia would copy a competitor's protected jewelry designs.

8. Furthermore, Ms. Whirlow suggested to me that Pandora and Chamilia should collaborate their jewelry businesses since, as she put it, there was "plenty of room for the both

2

us." She went on to inquire whether it was possible for Pandora to manufacture for Chamilia, using Pandora's manufacturing efficiencies in Asia, jewelry products for Chamilia.

9. When Ms. Whirlow inquired about Pandora's patent for its jewelry line, I clearly indicated to her that Pandora did not own a patent. I followed up my comment by stating that Pandora filed a patent for its jewelry line, and if such patent issues, Pandora would take the necessary steps to protects its valuable rights. At no such time did I indicate to Ms. Whirlow or anyone at the Gift Show that Pandora owned a patent or that Chamilia had violated Pandora's "patent rights."

10. At the conclusion of the Gift Show in San Francisco, in February, 2004, I received a telephone call from a gentleman who introduced himself as the vice president of Chamilia. He accused me of informing a Chamilia customer that Pandora would "close down" Chamilia based on its patent rights. He further advised me that Pandora and Chamilia should make their jewelry products compatible since there "is enough business for all of us." I informed the gentleman that Pandora was likely not interested in conducting business with Chamilia. Further, I advised him that his customer obviously misunderstood any statement I made. I reiterated to him the same statement I made to Ms. Whirlow on February 8, 2004, and advised him that if Pandora's patent pending issued, that Pandora was prepared to take the necessary steps to protect its rights. I have repeated this same statement to several customers or potential customers which inquired about Pandora's "patent rights."

11. I have never advised a customer or potential customer that Pandora would "close down Chamilia with the Pandora patent" or that Chamilia was having "financial problems."

3

I DECLARE under penalty of perjury that the foregoing is true and correct.

Dated: Los Angeles, California
January 12, 2005

Steve Glueck