# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

```
----------------------------------------------------------X
CHAMILIA, LLC,                          :        Civil Action No.:
                                        :        04 CV 06017 (KMK)
                        Plaintiff,      :
                                        :
        -against-                       :        ECF CASE
                                        :
PANDORA JEWELRY, LLC,                   :
                                        :
                                        :
                        Defendant.      :
----------------------------------------------------------X
```

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LATHROP & GAGE L.C.
William R. Hansen (WH-9446)
Gianfranco G. Mitrione (GM-8168)
Bernadette McGlynn Reilly (BM-4117)
230 Park Avenue, Suite 1847
New York, New York 10169
(212) 850-6220 (tel)
(212) 850-6221 (fax)

Attorneys for Defendant

Of counsel:
Travis W. McCallon
LATHROP & GAGE L.C.
Kansas City, Missouri

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS ..................................................................................................1

      A.     Prior Lawsuits Against Chamilia ..............................................................3

      B.     Pandora Sales Representatives ....................................................................4

              i. Jody Henderson .........................................................................4

              ii. Steve Glueck .............................................................................5

              iii. Michael Lund Petersen ............................................................6

              iv. Knud Hostrup ...........................................................................9

ARGUMENT ......................................................................................................................9

      A.   THE STANDARD FOR SUMMARY JUDGMENT .......................................9

      B.  UNFAIR COMPETITION CLAIM
          UNDER THE LANHAM ACT ........................................................................11

      C.  COMMON LAW UNFAIR COMPETITION ..................................................15

      D.  FALSE PATENT MARKING ..........................................................................15

      E.  SLANDER OF TITLE .....................................................................................17

      F.  DEFAMATION................................................................................................18

      G.  PRODUCT DISPARAGEMENT .....................................................................21

      H.  TORTIOUS INTERFERENCE .......................................................................23

      I.   DECLARATORY JUDGMENT ......................................................................24

CONCLUSION...................................................................................................................25

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

Accent Designs, Inc. v. Jan Jewelry Designs, Inc.,
827 F. Supp. 957 (S.D.N.Y. 1993) ........................................................................15, 16, 17

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986)........................................................................................................10

Blank v. Pollack,
916 F. Supp. 165 (N.D.N.Y. 1996)..................................................................................16

Borthwick v. First Georgetown Securities, Inc.,
892 F.2d 178 (2d Cir. 1989)............................................................................................10

Boule v. Hutton,
320 F. Supp. 2d 132 (S.D.N.Y. 2004).............................................................................15

Carvel Corp. v. Noonan,
350 F.3d 6 (2d Cir. 2003)................................................................................................23

Celotex Corp. v. Catrett,
477 U.S. 317 (1986)........................................................................................................10

County Vanlines, Inc. v. Experian Info. Solutions, Inc.,
317 F. Supp. 2d 383 (S.D.N.Y. 2004).............................................................................22

Dillon v. City of New York,
261 A.D.2d 34 (1st Dept. 1999)......................................................................................18

Drug Research Corp. v. Curtis Publg. Co.,
7 N.Y.2d 435, 441 (N.Y. 1960) ......................................................................................23

El Greco Leather Prods. Co. v. Shoe World, Inc.,
623 F. Supp. 1038 (E.D.N.Y. 1985) ................................................................15, 18, 21, 24

Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,
314 F.3d 48 (2d Cir. 2002)..........................................................................................13, 14, 21

Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,
942 F. Supp. 209 (S.D.N.Y. 1996) ..............................................................................14, 20

Fowles v. Bowen,
30 N.Y. 20 (N.Y. 1864) ...................................................................................21

GAF Building Materials Corp. v. Elk Corp. of Dallas,
90 F.3d 479 (Fed. Cir. 1996)........................................................................24, 25

H. Sand & Co. v. Airtemp Corp.,
934 F.2d 450 (2d Cir. 1991)....................................................................11, 14, 20

Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v.
Smithkline Beecham Corp.,
960 F.2d 294, 297 (2d Cir. 1992)....................................................................12

Kasachkoff v. City of New York,
107 A.D.2d 130 (N.Y. App. Div. 1st Dept. 1985) .............................................22

Kasada, Inc. v. Access Capital, Inc.,
2004 U.S. Dist. LEXIS 25257 (S.D.N.Y. Dec. 10, 2004) ................... 18, 20, 21-24

Kirby v. Wildenstein,
784 F. Supp. 1112 (S.D.N.Y. 1992)...................................................................22

Knight v. U.S. Fire Insurance Co.,
804 F.2d 9 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987) ...........................10

Liberman v. Gelstein,
80 N.Y.2d 429 (N.Y. 1992) .......................................................................18, 21

Licata & Co. v. Goldberg,
812 F. Supp. 403 (S.D.N.Y. 1993) .....................................................................13

Lurzer GMBH v. Am. Showcase, Inc.,
73 F. Supp. 2d 327 (S.D.N.Y. 1998)...................................................................15

Markowitz v. Republic Bank of New York,
651 F.2d 825 (2d Cir. 1981)...............................................................................17

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574 (1986)...........................................................................................10

McSherry v. Natl. Blue Print Div. of Natl. Reprographics, Inc.,
1982 U.S. Dist. LEXIS 17044 (S.D.N.Y. Dec. 27, 1982) ..................................19

Mead Johnson & Co. v. Abbott Labs.,
201 F.3d 883 (7th Cir. 2000) ............................................................................12

Patterson v. County of Oneida,
375 F.3d 206 (2d Cir. 2004)............................................................11

Prof. Sound Servs., Inc. v. Guzzi,
2004 U.S. Dist. LEXIS 25913 (S.D.N.Y. December 27, 2004) .........................13

Resource Developers Inc. v. Statue of Liberty Foundation,
926 F.2d 134 (2d Cir. 1991).............................................................10

Shapiro v. Health Ins. Plan,
7 N.Y.2d 56 (N.Y. 1959) ................................................................22

Stillman v. Ford,
22 N.Y.2d 48 (N.Y. 1968) ...............................................................18

Stukuls v. State,
42 N.Y.2d 272 (N.Y. 1977) ..............................................................21

Western World Insurance Co. v. Stack Oil, Inc.,
922 F.2d 118 (2d Cir. 1990)...................................................10, 14, 20

Wolf St. Supermarkets v. McPartland,
108 A.D.2d 25 (N.Y. App. Div. 4th Dept. 1985)............................................21

**STATUTES**

15 U.S.C. § 1125(a) ......................................................................11

15 U.S.C. § 1125(a)(1)(B) (2000)....................................................1, 12

28 U.S.C. § 2201.........................................................................25

35 U.S.C. § 154(d)(1)(A)(B)..............................................................11

35 U.S.C. § 292........................................................................1, 15

35 U.S.C. § 292 (a) and (b)..............................................................15

Fed. R. Civ. P. 56 (c) ....................................................................9

Fed. R. Civ. P. 56 (e) ...................................................................11

N.Y. Civ. Rights L. § 74 ............................................................18, 21

## MISCELLANEOUS

Chisum on Patents, vol. 8, § 21.02[1][d][iii] (2003) ........................................................25

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition vol. 4,
§ 27:110 (West 2004)........................................................................................................21

Merriam-Webster's Collegiate Dictionary, Tenth Edition, .................................................7

Defendant, Pandora Jewelry, LLC ("Pandora"), by its attorneys, hereby submits a motion for summary judgment brought under Fed. R. Civ. P. 56 against the claims averred by plaintiff, Chamilia, LLC ("Chamilia").

## PRELIMINARY STATEMENT

This is not the first encounter between the two captioned parties before this Court. In an action filed against Chamilia, LLC in September, 2003, entitled <u>Pandora Smykker USA Aps and Pandora Jewelry LLC  v. Chamilia LLC</u>, 03 Civ. 7587 (Judge Sprizzo), Pandora charged Chamilia with copyright infringement and sought an injunction against Chamilia's sale of jewelry products which infringed Pandora's copyrights. The case ended with Chamilia consenting to the entry of a judgment against it for copyright infringement. Now the parties come again before the Court, this time, Chamilia, who had been given notice, then sued and then enjoined for its illegal copying of Pandora's jewelry designs, claims that Pandora has violated federal and state unfair competition laws, the patent marking statute, and various state laws. By this motion, Pandora seeks summary judgment directed against all of the claims asserted by the plaintiff, Chamilia, in its complaint filed on August 3, 2004, including: (1) false or misleading representation of fact under 15 U.S.C. § 1125(a)(1)(B); (2) false patent marking under 35 U.S.C. § 292; (3) slander of title under the common law of New York; (4) defamation under the common law of New York; (5) business or product disparagement under the common law of New York; (6) tortious interference with advantageous relationships under the common law of New York; (7) unfair competition under the common law of New York; and (8) a declaratory judgment.

## STATEMENT OF FACTS

While the facts applicable to Chamilia's claims and the circumstances surrounding the relationship between the two litigants are set forth at length in the accompanying Declarations of

Gianfranco G. Mitrione ("Mitrione Decl."), Michael Lund Petersen ("Petersen Decl."), Steve

Glueck ("Glueck Decl."), Jody Henderson ("Henderson Decl.") and Knud Hostrup ("Hostrup

Decl."), defendant herein provides a summary of the material facts in the instant case for the

Court's convenience.[1]

Pandora is engaged in the business of creating, manufacturing, marketing, distributing,

and selling custom designed bracelets and necklaces featuring silver and 14-karat gold jewelry

beads.  With regard to specialty bracelets, necklaces and beads, Pandora is a recognized leader in

the jewelry industry, particularly for elegant jewelry that is inspired by a distinctive

Scandinavian style and design.  Pandora's jewelry designs were created in 2000, and are

protected by the Danish Copyright laws.   Pandora obtained U.S. Copyright Certificate

Registrations VA-1-208-549, VA-1-210-216, VA-1-210-240 and VA-1-218-723, for its jewelry

designs that first became effective on September 4, 2003.

To complement the original character of these copyrighted Pandora jewelry designs, Per.

A. Enevoldsen,  a principal of Pandora, invented a unique method of stringing jewelry beads,

spacers, and clips which, in turn, form individually distinctive bracelets and necklaces.  On July

21, 2003, Pandora filed a patent application with the U.S. Patent and Trademark Office to protect

Mr. Enevoldsen's invention.  The patent application currently pending is entitled "NECKLACES

AND BRACELETS WITH KEEPERS" and was assigned Application No. 10/623,641.  Once

Pandora filed the patent application, it began using the legend "patent pending" on all of its

promotional and advertising materials used in connection with the distribution and sale of the

Pandora jewelry line.  See Petersen Decl. Exhibit D.  Moreover, when Pandora's patent

---

[1]    As required by Local Rule 56.1, a Statement of Material Facts is submitted and attached to plaintiff's
Notice of Motion.

application was published by the U.S. Patent and Trademark Office on July 29, 2004, as

Publication No. US 2004/0144131-A1, Pandora provided notice to Chamilia, and to other

manufacturers and retailers of the application's publication. See Petersen Decl. Exhibit F.

### A.    Prior Lawsuits Against Chamilia

On September 25, 2003, Pandora filed suit against Chamilia in the United States District

court for the Southern District of New York, Civil Action  No. 03 CV 7587 ("New York

Action") and another suit was filed in the District Court of New Jersey ("New Jersey Action")

alleging, among other things, that Chamilia had been illegally copying Pandora's jewelry bead

designs and thereby infringing Pandora's valid, U.S. copyrights in those designs.

In the New York Action, Pandora sought a temporary restraining order ("TRO") against

Chamilia.  On October 2, 2003, after holding a hearing, District Court Judge Sprizzo issued a

TRO which enjoined Chamilia, and any other person acting in concert or participation with

Chamilia, from, among other things, the copying, marketing, or selling of copies of Pandora's

copyrighted jewelry designs.  See Peterson Decl. Exhibit H.  After a period of settlement

discussions, during which the TRO remained in effect by the stipulation of the parties, Chamilia

consented to the entry of a judgment against it.  On November 24, 2003, a Final Judgment on

Consent ("Final Judgment") was entered by the Southern District of New York and executed by

the parties involved whereby a final judgment of copyright infringement was entered against

Chamilia in favor of Pandora.  See Peterson Decl. Exhibit I.

In early November, 2003, in order to restrain various retailers in New Jersey from selling

the infringing Chamilia jewelry,  Pandora filed an action in New Jersey against Jason Adams,

individually, and Jason Adams conducting business as Chamilia Beaded Charms alleging

copyright and trademark infringement resulting from the New Jersey retailer's sale of the

Chamilia jewelry.  On November 7, 2003, the District Court Judge in New Jersey also issued a

3

TRO enjoining the New Jersey retailers from promoting, selling, or distributing the Chamilia jewelry. On January 26, 2004, the District Court in New Jersey entered a Stipulation and Order of Settlement whereby Jason Adams consented to an injunction permanently restraining Mr. Adams from copying Pandora's jewelry designs and selling the Chamilia jewelry. See Peterson Decl. Exhibit J.

### B.    Pandora Sales Representatives

Chamilia's complaint demonstrates a significant level of confusion on the part of Chamilia's sales representatives as to what legal rights Pandora maintains. The Pandora sales representatives identified in Chamilia's complaint, namely, Michael Lund Petersen, Jody Henderson, Steve Glueck, and Knud Hostrup have been grossly misquoted and their interactions with Chamilia's representatives have been utterly mischaracterized in Chamilia's hearsay based complaint.

### i.    Jody Henderson

The declaration of Jody Henderson submitted herewith establishes the erroneous claims made in Chamilia's complaint. In fact, on March 14, 2003, Ms. Henderson visited the LAD Group display booth at the Chicago Gift Show. She was wearing a Pandora bracelet with various silver and 14-karat gold jewelry beads. While at the LAD Group booth, Ms. Riley approached Ms. Henderson and inquired about her Pandora bracelet. They spoke concerning the Pandora jewelry line before Ms. Riley asked Ms. Henderson about a lawsuit involving Pandora and Chamilia. Contrary to the allegations made in Chamilia's complaint, during the time in which they spoke, there were no other jewelry distributors or customers present. The only individuals present at the LAD Group booth during their brief conversation were Ms. Henderson's daughter and Robbi Potter, owner of LAD Group.

4

Ms. Henderson informed Ms. Riley that the only lawsuit she was aware of concerned the copying of Pandora's jewelry bead designs by Chamilia. Ms. Henderson never indicated to Ms. Riley that Pandora was suing or intended to sue Chamilia based upon its pending patent rights. The only lawsuit that Ms. Riley and Ms. Henderson discussed involved the copyright infringement suit against Chamilia, which ended in November 2003.

Ms. Henderson has encountered several customers who have inquired about a lawsuit involving Pandora and Chamilia. In response to questions concerning the lawsuit between the two companies, Ms. Henderson would present a copy of a press release to them so that they can familiarize themselves with the facts of that case. See Henderson Decl. Exhibit K. Ms. Henderson has never advised a customer or potential customer that Pandora would close down Chamilia with the Pandora patent.

### ii.    Steve Glueck

Similarly, Steve Glueck, a sales representative for Pandora who is responsible for promoting and distributing Pandora's jewelry products in California, Oregon, Washington, Nevada, Arizona and Hawaii, has also been misquoted in Chamilia's hearsay complaint. In fact, on or about February 2004, Pandora was an exhibitor at the Winter International Gift Show in San Francisco, California. Mr. Glueck was the only Pandora representative who oversaw and managed the exhibition booth during the days of that Gift Show. Mr. Glueck did not purposefully visit Petitioner's booth at this show, but on his way to the restroom, he encountered Ms. Whirlow at Chamilia's exhibition booth and introduced himself. Ms. Whirlow and Mr. Glueck discussed the pending copyright infringement suit that Pandora instituted against Chamilia. Significantly, Ms. Whirlow indicated that she regretted that her company (Chamilia) had ever copied Pandora's jewelry beads. She also stated that she was unaware that Chamilia would copy a competitor's protected jewelry designs.

5

Ms. Whirlow did inquire with Mr. Glueck about Pandora's patent for its jewelry line. Mr. Glueck stated that Pandora did not own a patent, but that Pandora filed a patent application for its jewelry line, and if such patent application were to issue, Pandora would take the necessary steps to protect those rights. At no such time did Mr. Glueck state to Ms. Whirlow that Pandora owned a patent or that Chamilia had violated Pandora's "patent rights."

At the conclusion of the Gift Show in San Francisco, Mr. Glueck received a telephone call from a gentleman who introduced himself as the vice president of Chamilia. He accused Mr. Glueck of informing a Chamilia customer that Pandora would "close down" Chamilia based on its patent rights. He further advised Mr. Glueck that Pandora and Chamilia should make their jewelry products compatible since there "is enough business for all of us." Mr. Glueck informed the gentleman that Pandora was likely not interested in conducting business with Chamilia. Further, Mr. Glueck advised the gentleman that his customer obviously misunderstood any statement he had made. Mr. Glueck reiterated to the caller the same statement he had made to Ms. Whirlow, and advised him that if Pandora's pending patent application issued, Pandora was prepared to take the necessary steps to protect those rights. Mr. Glueck repeated this same statement to several customers or potential customers which inquired about Pandora's "patent rights." Mr. Glueck never advised a customer or potential customer that Pandora would "close down Chamilia with the Pandora patent" or that Chamilia was having "financial problems."

### iii.    Michael Lund Peterson

It was Michael Lund Peterson, a principal and Sales Director of Pandora, who instructed the commencement of the two (2) previously mentioned federal lawsuits that sought to enjoin Chamilia and its retailers from selling jewelry which infringes Pandora's copyrights.

In his declaration, Mr. Petersen establishes that in June 2003, Dov Schwartz, a principal of Chamilia, became a customer of Pandora's jewelry line. Mr. Petersen believes that during the

6

summer of 2003, Chamilia secretly arranged to have the Pandora jewelry designs reverse engineered in Asia by taking a casting from existing jewelry items and creating a mold. In mid-August 2003, Mr. Petersen learned that Chamilia had copied Pandora's collection of jewelry designs and were offering them for sale to Pandora's customers. To confirm that Chamilia had in fact copied Pandora's copyrighted jewelry designs, Mr. Petersen attended the San Francisco International Gift Fair in San Francisco, California on August 26, and 27, 2003. On August 26, 2003, Mr. Petersen visited Chamilia's booth and discovered that Chamilia was displaying jewelry products which, in fact, were illegal copies of Pandora's jewelry designs. On August 27, Mr. Petersen visited the Chamilia booth again, and encountered Lisa Whirlow. Mr. Petersen was aware that she was a Chamilia sales representative for the southern California area.

After examining Chamilia's line of jewelry, Mr. Petersen realized that Chamilia's jewelry had infringed Pandora's copyrights, was unquestionably inferior in quality, and had copied the system used by Pandora to string jewelry beads, spacers, and clips to necklaces and bracelets. Chamilia's inferior, copy-cat jewelry products are known to Mr. Petersen, the jewelry industry, and to the public as "knockoffs." According to Merriam-Webster's Collegiate Dictionary, the term "knockoff" is defined as "a copy that sells for less than the original; a copy or imitation of someone or something popular." Furthermore, the verb "knock off" is defined as "to make a knock off of: copy, imitate; [e.g.] knocks off popular dress designs."

During Mr. Petersen's encounter with Ms. Whirlow, he informed her that the jewelry imported, marketed, and sold by Chamilia were copies of Pandora's copyrighted designs. Mr. Petersen also informed Ms. Whirlow that Pandora owned a copyright in Europe and in the United States for all of its jewelry designs, and that in fact, Pandora owned a "worldwide copyright." Ms. Whirlow then told Mr. Petersen that there were a number of companies in the jewelry industry that had copied or planned to copy Pandora's jewelry designs.

7

Mr. Petersen notified Ms. Whirlow that Pandora had a patent application pending for the method by which the jewelry beads, clips and spacers are fastened to the bracelets and necklaces. She asked for the patent application number and Mr. Petersen told her he did not know it off-hand. When discussing Pandora's "worldwide" rights, Mr. Petersen clearly referred to Pandora's copyrights and not any patent. Furthermore, at no time did he advise her that Pandora would use its patent to "shut down" Chamilia or any of Pandora's competitors.

On August 26, 2003, Mr. Petersen had a letter sent to Chamilia demanding that it cease infringing Pandora's jewelry designs. See Petersen Decl. Exhibit G.  In that letter, Mr. Petersen's attorney informed Chamilia of Pandora's copyright rights in the jewelry designs and further informed Chamilia that Pandora had filed a "nonprovisional U.S. Patent Application to obtain claims directed to the functional and structural aspects of Pandora's necklaces and bracelets." Shortly after the cease and desist letter was mailed, Mr. Petersen's attorney had a telephone conversation with a representative of Chamilia which chose not to cease copying Pandora's copyrighted jewelry designs. Despite being put on notice of the strength of Pandora's rights and goodwill in their original and novel jewelry designs, Chamilia continued to distribute jewelry products copying Pandora's jewelry designs in the United States. These illegal activities were ended by the courts in New York and New Jersey.

Since Pandora's remarkable sales during the 2003-2004 holiday season, there have emerged at least five (5) jewelry manufacturers that have begun selling necklaces and bracelets in the United States which appear to utilize substantially the same construction and perform the same function as Pandora's patent pending for its necklaces and bracelets. Pandora's counsel has notified each one of them that Pandora's patent application has been published.

8

### iv.    Knud Hostrup

Knud Hostrup, Pandora's Sales Director for nineteen (19) states, managed Pandora's exhibition booth at the Atlanta Tradeshow on July 9 - 13, 2004.  In his declaration, Mr. Hostrup does not recall telling a Chamilia representative that the Chamilia line of jewelry was a "knockoff" or that Pandora was the "original."  Nevertheless, Mr. Hostrup has told numerous customers and potential customers that Pandora is the "original" inventor, designer and manufacturer of the type of jewelry sold by Pandora.  Furthermore, he has said that Pandora has a "patent pending" for its jewelry product and has shown individuals a copy of Pandora's jewelry products brochure which bears the legend "patent pending" clearly marked.  Finally, he has never threatened any customer or potential customer based on any patent rights.  He has only informed Pandora customers and potential customers that if, and only if, the patent in question issues, Pandora would take the necessary steps to protects its rights.

During Mr. Hostrup's encounter with the Chamilia representative at the Tradeshow he discussed the quality of Chamilia's jewelry products.  He told the representative that Chamilia's jewelry products are inferior to those manufactured and sold by Pandora.  He explained that Chamilia's jewelry beads, in their manufacturing, are not finished as well as Pandora's jewelry and, as a result, they often times get stuck and become immovable when trying to thread them onto a Pandora or Chamilia bracelet or necklace.

### ARGUMENT

### A.    THE STANDARD FOR SUMMARY JUDGMENT

Summary judgment shall be granted if "there is no issue as to any material fact" and the moving party is entitled to a judgment in its favor as a matter of law. Fed. R. Civ. P. 56(c).  A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis of its motion" and identifying facts that it believes "demonstrates the absence

9

of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once

the moving party has properly discharged this responsibility, the burden then shifts to the

nonmoving party which "must 'set forth specific facts showing that there is a genuine issue for

trial.'" Resource Developers Inc. v. Statue of Liberty Foundation, 926 F.2d 134, 139 (2d Cir.

1991), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); see also Fed. R. Civ.

P. 56(e).

In order to defeat a motion for summary judgment, however, the evidence must be such

that, when viewed in the light most favorable to the party opposing the motion, "a reasonable

juror could return a verdict" in favor of the non-movant. See Anderson, 477 U.S. at 256.

Indeed, summary judgment is still fully appropriate when the evidence is insufficient to support

the non-moving party's case. Celotex, 477 U.S. at 317, 325-26 (1986). Summary judgment may

also be granted when the opposing party fails to establish an element essential to that party's case

and on which that party would bear the burden of proof at trial. Id. at 321. To defeat a motion

for summary judgment, Chamilia must show more than a "scintilla of evidence," Anderson, 477

U.S. 252, and more than "some metaphysical doubt as to the material facts." Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It may not rely upon conclusory

allegations since they alone will not suffice to create a genuine issue of material fact. A party

cannot "'escape summary judgment merely by vaguely asserting the existence of some

unspecified disputed material facts,'" or defeat the motion through "'mere speculation or

conjecture.'" Western World Insurance Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990),

citing Borthwick v. First Georgetown Securities, Inc., 892 F.2d 178, 181 (2d Cir. 1989) and

Knight v. U.S. Fire Insurance Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932

(1987). To that end, any "affidavits submitted in support of or in opposition to a summary

judgment motion must 'be made on personal knowledge, shall set forth such facts as would be

10

admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)). The requirement set forth in Rule 56(e) that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit "also means that an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." Id. at 219; see also H. Sand & Co. v. Airtemp Corp., 934 F.2d 450, 454-55 (2d Cir. 1991) (hearsay assertion that would not be admissible if testified to at trial is not competent material for a Rule 56 affidavit).

As set forth below, summary judgment is appropriate for each claim averred by plaintiff against Pandora.

## B.    UNFAIR COMPETITION CLAIM UNDER THE LANHAM ACT

Chamilia alleges in its complaint that Pandora has falsely represented to consumers: (1) that it owned patent rights violated by Chamilia's jewelry product; (2) that Chamilia's products are inferior and "knock-offs"; and (3) that the products sold by Pandora are the "original." Chamilia's unfair competition claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), lacks merit and cannot survive summary judgment.

Chamilia's complaint does not support the allegation that Pandora falsely disparaged Chamilia or its products. As to Chamilia's claim that Pandora falsely represented that it owned patent rights violated by Chamilia, Pandora is in fact the owner of a patent pending in the United States Patent and Trademark Office assigned Application No. 10/623,641 and published on July 29, 2004 under Publication No. US 2004/0144131-A1 (hereinafter "Patent Pending"). See Petersen Decl. ¶¶ 8-10. Pandora has put several manufacturers and retailers on notice of the potential for damages from the date of publication pursuant to 35 U.S.C. § 154(d)(1)(A)(B). See id. at ¶ 11. In addition, Chamilia's Complaint only identifies four Pandora representatives that

11

allegedly made disparaging statements, Compl. ¶¶ 18-20, 24, and those four representatives have never stated that Pandora owns any United States patent rights regarding its products or that it would sue on the basis of any existing patent rights. See Peterson Decl. ¶ 18; Glueck Decl. ¶¶ 9 and 11; Henderson Decl. ¶ 6; and Knud Decl. ¶ 9. Similarly, Pandora's representatives have never threatened to "shut down" Chamilia based on any patent rights and have never stated that Chamilia was having financial problems. See Peterson Decl. ¶ 18; Glueck Decl. ¶ 11. Because the only statements made by Pandora pertained to its patent application, its statements were true and cannot form the basis for a Lanham Act violation.

Moreover, although Chamilia alleges that Pandora has falsely represented that Chamilia's products are "knock-offs," the previous action between these parties—Chamilia accepted a judgment which, inter alia, compensated Pandora for the damages caused by Chamilia's infringement of Pandora's registered copyrights—determined that Chamilia's products are in fact "knock-offs," and Pandora's products are the "original." See Pandora Smykker, 03 Civ. 7587; see also Mitrione Decl. ¶ 5 and Petersen Decl. ¶¶ 14 and 17. Further, Chamilia's products utilizing its copy of the system used first by Pandora to string jewelry beads, spacers, and clips are known in the industry and to the public as "knock-offs." See Petersen Decl. ¶¶ 14 and 17; Knud Decl. ¶ 6 and Mitrione Decl. ¶ 5. Any dissemination of information regarding Chamilia's present "knock-off" of Pandora's "original" jewelry products are accurate statements of fact which would not mislead consumers, and, as such, are not actionable under the Lanham Act. Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp., 960 F.2d 294, 297 (2d Cir. 1992); see also, Mead Johnson & Co. v. Abbott Labs., 201 F.3d 883 (7th Cir. 2000).

Even if the Court accepts Chamilia's claim that Pandora falsely represented the nature of both parties' products, however, Chamilia still has not set forth the facts necessary to sustain an

12

unfair competition claim under the Lanham Act. Statements such as those allegedly made by Pandora, even if false, do not qualify as "commercial advertising or promotion," as required in order to sustain a cause of action under the Lanham Act. See 15 U.S.C. § 1125(a)(1)(B) (2000) (providing a cause of action for misrepresentation "in commercial advertising or promotion"). The Second Circuit has held that in order to qualify as "commercial advertising or promotion," the contested representations must be 1) commercial speech, 2) for the purpose of influencing consumers to buy defendant's goods or services, and 3) disseminated sufficiently to the relevant purchasing public. Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 56-58 (2d Cir. 2002) ("Fashion Boutique II").

> Thus, the touchstone of whether a defendant's actions may be considered 'commercial advertising or promotion' under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market. Proof of widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement. Thus, businesses harmed by isolated disparaging statements do not have redress under the Lanham Act; they must seek redress under state-law causes of action.

Id. at 57 (emphasis added). The Second Circuit in Fashion Boutique II found that twenty-seven oral statements by the defendant concerning the "fake," "bogus," or inferior nature of the plaintiff's merchandise and service in a potential marketplace of thousands of customers did not constitute commercial advertising or promotion so as to support a Lanham Act disparagement claim that could survive summary judgment. Id. at 58; see Prof. Sound Servs., Inc. v. Guzzi, 2004 U.S. Dist. LEXIS 25913, at *12 ( S.D.N.Y. December 27, 2004) (finding that evidence of one customer out of thirty-six or more having heard a disparaging statement is not sufficient to overcome summary judgment); Licata & Co. v. Goldberg, 812 F. Supp. 403, 409 (S.D.N.Y. 1993) (noting that the plain meaning of the Lanham Act "reflects a legislative judgment that for the statute to apply, the questioned advertising or statements, and not merely the underlying commercial activity, must be disseminated in commerce - i.e., not be purely local").

13

Here, Chamilia's complaint specifically identifies only three entities that allegedly heard disparaging statements and only four specific Pandora representatives allegedly making disparaging statements. Compl. ¶¶ 18-22, 24. As to the former, Chamilia cannot rely upon hearsay statements in order to create a genuine issue for trial. See H. Sand & Co., 934 F.2d at 454-55 (holding that a hearsay assertion that would not be admissible at trial is insufficient to oppose a motion for summary judgment). Thus, Chamilia cannot rely upon its recitation of information relayed by the three alleged recipients of disparaging statements—Anne's Hallmark, Now & Then, and The Gift Gallery—in order to overcome summary judgment.[2] As to the four Pandora representatives allegedly making disparaging statements, Chamilia does not allege that any specific third party heard any of those statements. See Compl. ¶¶ 18-20, 24. And, because Chamilia cannot rely on "mere speculation or conjecture" here, its unsupported, general allegation that "Defendant has made statements to Plaintiff's customers and potential customers" does not suffice. See Western World Insurance, 922 F.2d at 121.

Four alleged communications containing disparaging remarks simply do not amount to "commercial advertising or promotion," especially given the parties' large potential marketplace. Even if the Court considers every specific instance of false representation Chamilia asserts, Chamilia is still far short of the twenty-seven oral communications the court in Fashion Boutique II found to be insufficient to overcome summary judgment. Chamilia has not asserted facts that, even if true, prove a "widespread dissemination" of disparaging statements. And, Chamilia has

---

[2] For the same reason, Chamilia's reference elsewhere to "customers who have indicated a reluctance to purchase products from Plaintiff" is inadmissible and does not suffice to prove dissemination. In addition, this Court and the Second Circuit have held that testimony or evidence of "rumors" regarding the quality of a plaintiff's goods should not be considered on a motion for summary judgment. See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 942 F. Supp. 209, 215 (S.D.N.Y. 1996) ("Fashion Boutique I").

14

not set forth any facts proving that any alleged statements by Pandora actually damaged

Chamilia. See Accent Designs, Inc. v. Jan Jewelry Designs, Inc., 827 F. Supp. 957, 968

(S.D.N.Y. 1993) (noting that a claim of unfair competition "is not actionable absent proof that

any such allegedly false claims caused actual damage to the plaintiff"). Consequently, the Court

should dismiss its Lanham Act claim.

### C.    COMMON LAW UNFAIR COMPETITION

The standard for setting forth a claim of unfair competition under New York law and the

standard for setting forth a claim under section 43(a) of the Lanham Act are "almost

indistinguishable." Lurzer GMBH v. Am. Showcase, Inc., 73 F. Supp. 2d 327, 331 (S.D.N.Y.

1998). Chamilia relies upon the same facts to support its state common law unfair competition

claim as it relies upon to support all of its state law disparagement-related claims. Chamilia's

state law unfair competition claim is thus nothing more than a product or business disparagement

claim, a claim Chamilia already brings. See Boule v. Hutton, 320 F. Supp. 2d 132, 138-39

(S.D.N.Y. 2004) (treating plaintiffs' unfair competition claims as disparagement claims). As

such, Chamilia's unfair competition claim is redundant to its federal unfair competition claim and

its other state law claims, and, therefore, should be dismissed for the same reasons as those

claims, as discussed below. See El Greco Leather Prods. Co. v. Shoe World, Inc., 623 F. Supp.

1038, 1044 (E.D.N.Y. 1985) (dismissing unfair competition claim because it was redundant to

claims for disparagement and tortious interference).

### D.    FALSE PATENT MARKING

Chamilia claims that Pandora has falsely used in advertising in connection with the sale

of its jewelry products the term "patent" in violation of 35 U.S.C. § 292, which states, in relevant

part, "whoever . . . uses in advertising in connection with any unpatented article, the word

"patent" or any word or number importing that the same is patented, for the purpose of deceiving

15

the public . . . shall be fined not more than $500 for every such offense . . . and . . . any person

may sue for the penalty." See 35 U.S.C. § 292 (a) and (b). Since the statute is penal in nature, it

must be strictly construed, and Courts have held that an intent to deceive will not be inferred

where the facts show "no more than that the erroneous patent marking was the result of mistake

or inadvertence." Blank v. Pollack, 916 F. Supp. 165, 173 (N.D.N.Y. 1996).

In order to state a claim under the statute, Chamilia must prove (1) that the statements are

a form of advertising medium falling within the meaning of the statute; and (2) that Pandora

intended to deceive the public. See Accent Designs, 827 F. Supp. at 968. In the instant case,

Chamilia has alleged no facts showing an intent to deceive, relying instead on alleged statements

made by Pandora representatives to Chamilia's customers or potential customers. Moreover,

> [i]f every word and clause in the statute is to be given effect, the expression 'uses
> in advertising' cannot refer to any and all documents by which the word 'patent' is
> brought to the attention of the public; it can only refer to use of the word 'patent'
> in publications which are designed to promote the allegedly unpatented product,
> namely, advertisements. Thus the phrase 'uses in advertising' limits the kinds of
> the documents covered by the statute. Any other construction would render the
> words 'uses in advertising' surplusage.

Id. at 968-69.

Pandora does in fact own a patent application pending in the U.S. Patent and Trademark

Office for its jewelry product. See Petersen Decl. ¶ 8; Hostrup Decl.¶ 7; and Henderson Decl. ¶

6. Furthermore, since the filing of the application, Pandora has used the permitted legend "patent

pending" in the marketplace and in publications designed to promote its product covered by the

pending patent application. See Petersen Decl. ¶ 9 and Ex D; and Hostrup Decl.¶ 7. For

example, Pandora's advertisement in InStyle magazine, its brochures, and product displays all

clearly indicate that there is a "patent pending" covering the jewelry products depicted in the

promotional piece. See id. Also, Pandora representatives have advised customers and potential

customers that Pandora has a patent pending for its jewelry product. See Glueck Decl. ¶ 9; and

16

Hostrup Decl. ¶¶ 8 and 9. Lastly, a year and half ago, in late August 2003, Pandora's then counsel advised Chamilia that Pandora had filed a "nonprovisional U.S. Patent Application which protects the functional aspects of the necklaces and bracelets." See Petersen Decl. ¶ 19 and Exhibit G.

Moreover, the alleged statements made by Pandora's representatives do not meet the statute's "uses in advertising" requirement. Accent Designs, 827 F. Supp. 957. Pandora's use of the words "patent pending" in the marketplace and on its advertising and promotional materials would not violate the statute in view of the pending patent application. In its complaint, Chamilia has failed to allege any facts supporting either element required by Section 292, and, therefore, such allegations are insufficient to withstand a summary judgment motion with respect to this claim.

### E.    SLANDER OF TITLE

In order to establish an action for slander of title, Chamilia must show that there has been a malicious publication of false allegations concerning the title to its property causing special damages. Markowitz v. Republic Bank of New York, 651 F.2d 825 (2d Cir. 1981). A defendant, however, who asserts a claim against property in good faith "under an honest impression of its truth" will not be penalized in damages. Id. In this case, Chamilia has alleged no facts showing that Pandora or any of its representatives acted with malice in the publication of false allegations concerning title to property resulting special damages. Furthermore, Chamilia has not identified any "title to property" which is recognizable under the law as meriting protection. In view of Pandora's Patent Pending and Chamilia's past commercially antagonistic approach taken against Pandora's intellectual property rights, Pandora's representatives have been "under an honest impression of truth" when referring to Chamilia's products. Since Chamilia has not set forth any specific facts indicating any acts of malice or bad faith on the part of Pandora,

17

Chamilia's slander of title claim under the common law of New York would not survive summary judgment.

### F.    DEFAMATION

In order to prevail on its state law defamation claim, Chamilia must prove: (1) a false; (2) defamatory statement of fact concerning Chamilia; (3) published by Pandora to a third party; (4) fault on the part of Pandora; and (5) special damages or actionability per se. See Kasada, Inc. v. Access Capital, Inc., 2004 U.S. Dist. LEXIS 25257, at **54-55 (S.D.N.Y. Dec. 10, 2004); Dillon v. City of New York, 261 A.D.2d 34, 38 (1st Dept. 1999). Pandora has never made any false statements regarding Chamilia or its products. Any statements Pandora made concerning Chamilia were true, as discussed above. At any rate, Pandora had a privilege to make certain statements regarding Chamilia. Even if Pandora had made allegedly false statements, however, Chamilia has not set forth the facts necessary to prove the other elements of defamation.

Even if Pandora had made allegedly false statements concerning Chamilia, Pandora has a privilege to communicate with its customers regarding Chamilia's past business practices and the "knock-off" character of Chamilia's products. Indeed, under New York law, "[a] civil action cannot be maintained against any person, firm or corporation for the publication of a fair and true report of any judicial proceeding . . . ." N.Y. Civ. Rights L. § 74 (Consol. 2004). Pandora is fully entitled to inform its customers of the nature and outcome of the previous action between these parties. See El Greco Leather, 623 F. Supp. 1038 at 1043-44 (dismissing defendant's counterclaim for defamation regarding its products and business practices on the basis of statutory privilege). New York courts also recognize a common interest privilege, which protects "communication[s] made by one person to another upon a subject in which both have an interest." Liberman v. Gelstein, 80 N.Y.2d 429, 437 (N.Y. 1992) (quoting Stillman v. Ford, 22 N.Y.2d 48, 53 (N.Y. 1968)). New York courts further recognize a privilege in situations where

18

the communicator offers information in order to protect a business interest. See McSherry v. Natl. Blue Print Div. of Natl. Reprographics, Inc., 1982 U.S. Dist. LEXIS 17044, at **1-2 (S.D.N.Y. Dec. 27, 1982) (finding business interest privilege where the communicator and the recipient have a business relationship). Given Chamilia's admitted infringement and the importance of Pandora's business relationships with retailers, Pandora's statements find protection by common law privilege, in addition to statutory privilege. Under any inquiry, Pandora's statements regarding the "knock-off" or "inferior" character of Chamilia's products do not provide an actionable basis for a defamation claim.

Moreover, Chamilia still has not set forth the facts necessary to prove the other elements of defamation. First, Chamilia cannot prove that any allegedly defamatory statements were published to a third party. As previously mentioned, Chamilia has identified four specific Pandora representatives that allegedly made defamatory statements. Compl. ¶¶ 18-20, 24. With respect to alleged statements made by Mr. Peterson, Mr. Glueck, and Mr. Knud, Chamilia makes no reference to any specific third party; indeed, no reading of Chamilia's Complaint could establish, or even infer, the immediate presence of any third party. See id. As to alleged statements made by Ms. Henderson, Chamilia asserts only that "Mr. [sic] Henderson's statements were made in front of other jewelry distributors, and Plaintiff's customers and potential customers." Id. at ¶ 20. Chamilia later alleges that its customers Anne's Hallmark, Now & Then, and The Gift Gallery each informed Chamilia that Mr. Glueck, not Ms. Henderson, told them not to purchase products from Chamilia. Id. at ¶ 22. Chamilia has allegedly also had to "allay the fears of other customers and potential customers who have indicated a reluctance to purchase products from Plaintiff as a result of Defendant's patent assertion." Id. As to the remainder of Chamilia's Complaint, Chamilia merely alleges that "Defendant has made statements to Plaintiff's customers and potential customers." See e.g. id. at ¶ 21.

19

Just as with its Lanham Act claim, Chamilia's alleged facts concerning Pandora's publication of statements to third parties are not sufficient here. This Court has held that it is insufficient for a plaintiff to assert only that a defendant published allegedly defamatory statements to "plaintiffs' customers and others in the industry." See Kasada, Inc., 2004 U.S. Dist. LEXIS 25257, at **47-52, 57 (dismissing plaintiffs' complaint). As such, Chamilia's unsupported allegations that Pandora made statements to its "customers" or "potential customers" do not set forth sufficient facts to support a defamation claim. In addition, Chamilia cannot rely upon hearsay statements in order to create a genuine issue for trial. See H. Sand & Co., 934 F.2d at 454-55. Thus, Chamilia cannot rely upon its recitation of information relayed by Anne's Hallmark, Now & Then, and The Gift Gallery in order to overcome summary judgment. For the same reason, Chamilia's reference to "customers who have indicated a reluctance to purchase products from Plaintiff" is inadmissible and does not suffice to prove publication to a third party. Finally, this Court and the Second Circuit have held that testimony or evidence of "rumors" regarding the quality of a plaintiff's goods should not be considered on a motion for summary judgment. See Fashion Boutique I, 942 F. Supp. at 215. Under applicable law, Chamilia has not set forth any admissible evidence that creates a genuine issue for trial regarding the publication of any statements to third parties, and the Court should dismiss its defamation claim as a result.

Chamilia further cannot prove the existence of any fault on the part of Pandora. Chamilia has set forth nothing more than mere allegations that Pandora acted with intent and with reckless disregard for the truth of its statements. However, Chamilia must produce more than "mere speculation or conjecture" here. See Western World Insurance, 922 F.2d at 121. Likewise, Chamilia has not set forth sufficient evidence regarding its entitlement to damages. Even if the Court treats Pandora's alleged statements as defamation per se, Chamilia must still prove its entitlement to actual damages. "The amount of general damages 'must be supported by

20

competent evidence concerning the injury.'" Fashion Boutique II, 314 F.3d at 59 (quoting Wolf

St. Supermarkets v. McPartland, 108 A.D.2d 25, 32 (N.Y. App. Div. 4th Dept. 1985). Chamilia

has not set forth any admissible evidence supporting its claim to injury and damages as a result

of Pandora's alleged statements.

## G.    PRODUCT DISPARAGEMENT

In order to prevail on its state law product disparagement claim, Chamilia must prove: 1)

a false statement; 2) published by Pandora to a third party; 3) malice on the part of Pandora; and

4) special damages. See Kasada, Inc., 2004 U.S. Dist. LEXIS 25257 at **50-51. Chamilia relies

on the same alleged statements here as it does to support all of its claims. Therefore, particularly

as with its defamation claim, Chamilia cannot establish that Pandora published false statements

to a third party. The product disparagement claim cannot stand. See El Greco, 623 F. Supp. at

1044 (holding that New York's statutory privilege regarding judicial proceedings, N.Y. Civ.

Rights L. § 74, "applies equally to defamation and trade libel suits"); J. Thomas McCarthy,

McCarthy on Trademarks and Unfair Competition vol. 4, § 27:110 (West 2004) ("A conditional

privilege specially crafted as a defense to a disparagement claim is the 'competitor's comparison'

privilege. This gives a seller a privilege to make an unfavorable comparison of the quality of its

own goods or services with the corresponding quality of a competitor's goods or services . . . ."").

In any event, however, Chamilia has not set forth facts necessary to show malice and special

damages.

Chamilia cannot prove actual malice or common law malice. Unless Chamilia can prove

that Pandora acted with a "high degree of awareness" of the probable falsity of its statements,

there is no actual malice. Liberman, 80 N.Y.2d at 438. As to common law malice, Chamilia

must show that malice was the "one and only" motivation for Pandora's alleged statements. Id. at

439. The alleged statements must have been "consistent only with a desire to injure the plaintiff

21

to justify . . . [sending] the question of malice to the jury." Stukuls v. State, 42 N.Y.2d 272, 279

(N.Y. 1977) (quoting Fowles v. Bowen, 30 N.Y. 20, 26 (N.Y. 1864)).  Thus, a desire on

Pandora's part to benefit itself or protect its business interests in making any statements

concerning Chamilia would preclude the existence of common law malice.

Chamilia offers only its conclusory assertion that Pandora acted with malice. But "a

plaintiff does not make the requisite showing of malice simply by conclusorily labeling the

defamation malice." County Vanlines, Inc. v. Experian Info. Solutions, Inc., 317 F. Supp. 2d

383, 390 (S.D.N.Y. 2004). Chamilia's burden "may not be met by 'surmise, conjecture and

suspicion' . . . nor by 'mere conclusions, expressions of hope or unsubstantiated allegations or

assertions . . . .'" Id. (quoting Kasachkoff v. City of New York, 107 A.D.2d 130, 135 (N.Y. App.

Div. 1st Dept. 1985)). Malice is not an issue for the jury if Chamilia presents insufficient

evidence. See Shapiro v. Health Ins. Plan, 7 N.Y.2d 56, 61 (N.Y. 1959). As all of the statements

actually made by Pandora were true, and as Chamilia offers only bald assertions that Pandora

acted with malice, Chamilia has not met its burden as to this necessary element.

Similarly, Chamilia cannot prove special damages; indeed, Chamilia does not even

sufficiently allege special damages.  The requirement that Chamilia prove special damages, or

specific pecuniary losses, is strictly applied. Kasada, Inc., 2004 U.S. Dist. LEXIS 25257 at *51.

Special damages must be "fully and accurately stated," and courts have granted summary

judgment for a failure to allege and prove special damages with the requisite specificity. See

Kirby v. Wildenstein, 784 F. Supp. 1112, 1116, 1118 (S.D.N.Y. 1992) (granting summary

judgment where plaintiff sought damages of $250,000 and $200,000 without any precise

itemization); Drug Research Corp. v. Curtis Publg. Co., 7 N.Y.2d 435, 441 (N.Y. 1960) (finding

that a round damage estimation of $5,000,000 was not sufficiently proven). Under New York

law, if special damages arise from a loss of customers, as Chamilia claims, those customers must

22

be named. Drug Research, 7 N.Y.2d at 441. Moreover, Chamilia must show that its special

damages are causally related to any alleged disparaging statements made by Pandora. Kirby, 784

F. Supp. at 1116. Chamilia seeks only "damages in an amount to be determined by the Court."

Compl. p. 11. As noted, courts have granted summary judgment when plaintiffs have provided

much more.

Chamilia has failed to identify the amount of any special damages whatsoever, and has

failed to offer admissible evidence of any third parties actually ceasing to do business with

Chamilia as a direct result of statements allegedly made by Pandora. There is no triable issue of

fact with respect to special damages or Chamilia's claim of product disparagement.

## H.   TORTIOUS INTERFERENCE

Chamilia asserts its Tortious Interference with Advantageous Relationships claim in

terms of a "prospective economic advantage." Compl. ¶ 51. The standard for proving tortious

interference with business or prospective economic relations, as Chamilia asserts, is more

stringent than the standard for interference with contractual relations. Kasada, Inc., 2004 U.S.

Dist. LEXIS 25257 at *62. Nevertheless, Chamilia has not set forth the facts necessary to

support a claim under either theory.

In order to prevail on its state law tortious interference claim, Chamilia must prove that 1)

it had a business relationship with a third party; 2) Pandora knew of that relationship and

intentionally interfered with it; 3) Pandora acted solely out of malice or used dishonest, unfair, or

improper means; and 4) Pandora's interference caused injury to the relationship. Carvel Corp. v.

Noonan, 350 F.3d 6, 30-31 (2d Cir. 2003). As to the requirement of proving malice or "wrongful

means," courts do not impose liability unless "the conduct is highly reprehensible." Id. at 19; see

Kasada, Inc., 2004 U.S. Dist. LEXIS at **62-63 ("[T]he defendant must interfere with the

business relationship directly; that is, the defendant must direct some activities towards the third

23

party . . . ." (emphasis added)).  In addition, even under a claim of interference with contractual

relations, the law requires a plaintiff to identify the contracts or prospective business relations

that were allegedly interfered with.  See Kasada, Inc., 2004 U.S. Dist. LEXIS at **64 ("Plaintiffs

do not allege with any specificity the contracts it claims were breached or the business relations

it claims were prevented from going forward as a result of [the defendants'] actions.").  Finally,

interference with prospective economic relations requires that the contract would have been

entered into but for the interference.  See El Greco, 623 F. Supp. at 1044 (dismissing

counterclaim because defendant "failed to offer any facts which, if proved at trial, would show

that [the] contract would have been entered into but for [the] interference").

     Here again, Chamilia's scant factual assertions do not suffice to create a triable issue of

fact.  As previously discussed, Chamilia cannot prove malice on the current facts, and those same

facts do not suffice to prove "wrongful means" here.  Deadliest to Chamilia's claim, however, is

its utter failure to offer admissible facts establishing the existence of any specific business

relationships with which Pandora intentionally interfered.  Equally fatal is Chamilia's failure to

offer any facts that show it would have entered into business relationships in the future but for

Pandora's alleged interference.  Chamilia cannot prove the elements of a tortious interference

claim on the current facts, and the Court should accordingly dismiss its claim.

## I.    DECLARATORY JUDGMENT

     In its complaint, Chamilia requests that the Court grant a declaratory judgment in favor of

plaintiff that defendant is without authority to threaten plaintiff for patent infringement; that none

of defendant's patents are infringed by plaintiff; and that plaintiff is not liable for infringement.

See Compl. p. 14.  In view of the fact that patent rights are created only upon the formal issuance

of the patent; disputes concerning infringement are automatically hypothetical before a patent

issues. GAF Building Materials Corp. v. Elk Corp. of Dallas, 90 F.3d 479, 483 (Fed. Cir. 1996).

24

In Gaf Building Materials, the Federal Circuit held that a declaratory judgment suit concerning noninfringement must be dismissed when the suit was filed before the patent actually issued. See id. at 482; see also Chisum on Patents, vol. 8, § 21.02[1][d][iii] (2003). In this case, since Pandora's patent application has not yet issued, there is no actual case or controversy between the parties and Chamilia's request for a declaratory judgment should be dismissed. 28 U.S.C. § 2201.

## CONCLUSION

Pandora has demonstrated that there is no genuine issue as to any material facts as to plaintiff's claims and, therefore, Pandora is entitled to the entry of summary judgment in its favor against plaintiff on each and every claim in its complaint.

Dated:  New York, New York
         January 14, 2005

                     Respectfully submitted,

                     LATHROP & GAGE L.C.

                     By: _____s/William R. Hansen_____
                          William R. Hansen (WH-9446)
                          Gianfranco G. Mitrione (GM-8168)
                          Bernadette McGlynn Reilly (BM-4117)
                          230 Park Avenue, Suite 1847
                          New York, New York 10169
                          (212) 850-6220 (tel)
                          (212) 850-6221 (fax)

                          Attorneys for Defendant
                          Pandora Jewelry, LLC

Of counsel:
Travis W. McCallon
LATHROP & GAGE L.C.
Kansas City, Missouri

25