**EXHIBIT E**

US 20040144131A1

(19) **United States**
(12) **Patent Application Publication** (10) Pub. No.: US 2004/0144131 A1
      Enevoldsen                          (43) Pub. Date:         Jul. 29, 2004

(54) NECKLACES AND BRACELETS WITH
     KEEPERS

(52) U.S. Cl. ..................................................... 63/3; 63/3.1

(76) Inventor:  Per A. Enevoldsen, Roederovre (DK)

Correspondence Address:
Samuel W. Apicelli, Esquire
Duane Morris LLP
305 North Front Street
P.O. Box 1003
Harrisburg, PA 17108-1003 (US)

(21) Appl. No.:     10/623,641

(22) Filed:         Jul. 21, 2003

              Publication Classification

(51) Int. Cl.⁷ ..................................................... A44C 5/00

(57)              **ABSTRACT**

This invention is a necklace or bracelet with provisions to prevent the bunching of baubles, bangles and beads which are strung on the necklace or bracelet. Bunching is prevented by keepers which are removably attached to bands fixed at intervals on the strands of the necklaces or bracelets. Two types of keepers are disclosed, one of which has internal threads which interact with a threaded bands, and one which uses a clamshell structure to secure the keeper on a band. The keepers may have a variety of shapes for decorative effects, such as cylindrical, spherical, cubical, or pyramid-shaped.



Case 7:04-cv-06017-KMK    Document 29    Filed 07/15/2005    Page 3 of 58



FIG. 1



FIG. 2



FIG. 3A



FIG. 3B



FIG. 4



## FIG. 5

Case 7:04-cv-06017-KMK    Document 29    Filed 07/15/2005    Page 7 of 58



FIG. 6A

FIG. 6B



FIG. 7A



FIG. 7B



FIG. 8A



FIG. 8B

Case 7:04-cv-06017-KMK    Document 29    Filed 07/15/2005    Page 8 of 58



## FIG. 9A



## FIG. 9B



## FIG. 10A



## FIG. 10B



## FIG. 11A



## FIG. 11B

# NECKLACES AND BRACELETS WITH KEEPERS

## CROSS-REFERENCE TO RELATED APPLICATIONS

[0001] Not Applicable.

## STATEMENT REGARDING FEDERALLY SPONSORED RESEARCH OR DEVELOPMENT

[0002] Not Applicable.

[0003] Reference to "Microfiche appendix."

[0004] Not Applicable.

## BACKGROUND OF THE INVENTION

[0005] 1. Field of the Invention

[0006] This invention pertains to necklaces and bracelets with decorative baubles, bangles, and beads.

[0007] 2. Description of Related Art Including Information Disclosed Under 37 CFR 1.97 and 37 CFR 1.98

[0008] A popular type of necklace includes a flexible strand to which a number of beads are retained by being strung on the strand a lumen in the bead or a loop attached to the bead. Beads often are purely decorative and come in a variety of colors and shapes and often have embedded decorative elements such as stones. In addition, beads often have symbolic meaning to the wearer and represent descendents or important events. Necklaces having a plurality of beads often suffer from "bunching", the tendency of all of the beads to collect in a single group at the bottom of the necklace rather than remain in the desirable more even distribution about the length of the necklace. The invention of this patent application prevents bunching.

[0009] U.S. Pat. No. 3,983,716 discloses a jewelry lock in which the ends of strand have attached extensions. The extensions may be secured by a jewelry lock having the external shape of a bead. It includes two hinged hemispheric cups with notches which accommodate hitches attached to the ends of a bead chain, thereby securing the ends.

[0010] U.S. Pat. No. 4,530,221 discloses a necklace attachment for shortening the length of a string of pearls. The attachment engulfs and attaches together two pearls which are in adjacent portions of a strand of pearls. Another embodiment engulfs one pearl and may be used to attach decorative elements to the strand.

[0011] U.S. Pat. No. 4,562,704 discloses a latch for a chain having a male and female element. Removable designer elements are strung over the compressed male element and are retained by the female element and uncompressed male element. There are no provisions for preventing the movement of elements on the chain.

[0012] U.S. Pat. No. 4,907,322 discloses a pearl necklace with a stainless steel wire which is secured by a retainer having a setscrew. The pearls are separated by elastic rings.

[0013] U.S. Pat. No. 5,279,132 discloses a holding device which prevents the movement of a body adornment suspended from a chain. This avoids the tendency of the clasp to walk-around or creep from the back to the front of the wearer's body. The adornment is affixed to the wearer's skin or clothing using a double-sided adhesive, spray adhesive, or brush on adhesive.

[0014] U.S. Pat. No. 6,449,810 discloses a stopper for jewelry strands. The stopper is strung on one or two strands and secured in place by two rubber rings, one above and one below the strand or strands. The stopper is used to adjust the length of a flexible strand.

[0015] None of the discovered prior art provides the advantages of the present invention, that of decorative keepers which retain beads on a necklace in a desirable distribution and prevent bunching.

## BRIEF SUMMARY OF THE INVENTION

[0016] A necklace comprising a strand having two ends and a hook component attached to each end of the strand, the hook components capable of interaction with reversible attachment of the ends together. At least one band is fixedly attached to the strand, two or more beads, each bead having a bore of diameter greater than the diameter of the band and greater than the diameter of the hook component attached to one end of the strand, thereby allowing the stringing of the beads on the strand. Finally, there is at least one keeper having an outside diameter greater than the bore of the bead, the keeper capable of interacting with the band with reversible attachment of the band and keeper, thereby restricting the movement of the beads on the strand.

[0017] The objective of this invention is to provide a necklace with beads and keepers in which the beads do not bunch.

[0018] Another objective of this invention is to provide a necklace with beads and removable keepers so the distribution of the beads on the necklace can be modified by the necklace wearer.

[0019] Another objective of this invention is to provide a necklace with beads and keepers with a threaded keeper or a hinged keeper.

[0020] Another objective of this invention is to provide a necklace with beads and keepers in decorative shapes which add to the decorative effect of the necklace.

[0021] Another objective of this invention is to provide a necklace with beads and keepers of cylindrical, spherical, cubical or pyramid shapes.

[0022] A final objective is to provide a necklace with beads and keepers which can be manufactured inexpensively and without adverse effects on the environment.

## BRIEF DESCRIPTION OF THE SEVERAL VIEWS OF THE DRAWING

[0023] FIG. 1 is a plan view of the necklace of this invention.

[0024] FIG. 2 is a cross-sectional view of the threaded keeper.

[0025] FIG. 3A is a perspective view of the hinged keeper in the open position.

[0026] FIG. 3B is a plan view of the hinged keeper in the closed position.

2

[0027]  FIG. 4 is a plan view of the necklace with the keepers and beads in cross section taken along the plane of the necklace.

[0028]  FIG. 5 shows the necklace without beads and without keepers.

[0029]  FIG. 6A is a front view of a spherical threaded keeper.

[0030]  FIG. 6B is a side view of a spherical threaded keeper.

[0031]  FIG. 7A is a front view of a spherical hinged keeper.

[0032]  FIG. 7B is a side view of a spherical hinged keeper.

[0033]  FIG. 8A is a front view of a cubical threaded keeper.

[0034]  FIG. 8B is a side view of a cubical threaded keeper.

[0035]  FIG. 9A is a front view of a cubical hinged keeper.

[0036]  FIG. 9B is a side view of a cubical hinged keeper.

[0037]  FIG. 10A is a front view of a pyramid-shaped threaded keeper.

[0038]  FIG. 10B is a side view of a pyramid-shaped threaded keeper.

[0039]  FIG. 11A is a front view of a pyramid-shaped hinged keeper.

[0040]  FIG. 11B is a side view of a pyramid-shaped hinged keeper.

## DETAILED DESCRIPTION OF THE INVENTION

[0041]  In this patent application body adornments such as necklaces, bracelets, anklets, waist chains are termed "necklaces". Flexible chains, wire cables, bands, filaments, cords, strings, which are a component of the necklaces are termed "strands". Baubles, bangles, pendants, trinkets, and beads which are strung on a strand are termed "beads".

[0042]  FIG. 1 shows a necklace 10 of this invention. The ends of the strand 60 may be connected by the interaction of a loop connector 12 with a hook connector 15. The loop connector 12 is comprised of a cylindrical loop threaded end 13 which is fixed to a first end 62 of the strand 60. A loop connector loop 14 is connected to the loop threaded end 13. Loop connector threads 11 are cut into the surface of the loop threaded end 13. The loop connector 12 outer diameter 22 is small enough to allow passage of the threaded connector 30 bore (not visible in FIG. 1) and bead 70 bore (not visible in FIG. 1) over the loop connector 12, thereby allowing stringing of the threaded keeper 30 and bead 70 over the strand 60. The hook connector 15 is comprised of a hook threaded end 16 which is fixed to a second end 64 of the strand 60. A hook connector ring 17 is attached to the hook threaded end 16. A hook connector hook 18 is connected to the hook connector ring 17. Visible on the hook connector hook 18 is the movable hook connector latch 19 and the hook connector latch handle 20. Any suitable connectors which enable the connection of the first and second ends of the strand may be used provided that at least

one connector has a diameter small enough to allow the passage over that connector of beads 70 and threaded keepers 30.

[0043]  Beads 70 having a cylindrical bore (not visible in FIG. 1) are strung on the strand 60 and are free to slide back and forth on the strand. The movement of beads 70 is restrained by a threaded keeper 30 and a hinged keeper 40. The keepers are removably fixed on bands (not visible in FIG. 1) which are fixedly attached to the strand 60.

[0044]  The function of the threaded keeper 30 and hinged keeper 40 is to restrain the free movement of the beads 70 on the strand 60, thereby preventing bunching and keeping the beads in a desirable distribution on the necklace.

[0045]  The threaded keeper 30 has a distinctive ornamental pattern 38 on the outer surface. The hinged keeper 40 has a distinctive ornamental pattern 48 on the outer surface which is easily distinguished from the ornamental pattern 38 of the threaded keeper 30. The distinct ornamental patterns allow the necklace wearer to easily distinguish between the threaded and hinged keepers when the necklace is being assembled or in use.

[0046]  The beads 70 have a cylindrical bore (not visible in FIG. 1) which is large enough to pass over the loop connector 12. Any desirable number and type of beads may be used. Any desirable number of bands can be fixed on the strand and any desired number of threaded keepers and or hinged keepers may be used with the necklace.

[0047]  FIG. 2 is a cross sectional view of the threaded keeper 30 taken along line 2-2 in FIG. 1. Visible in FIG. 2 is the threaded keeper bore 32 which is of adequate size to pass over a threaded band (not visible in FIG. 2) and over at least one of the connectors, (12 and 15 in FIG. 1). The interior of the bore 32 is threaded 34 with a thread capable of interaction with and passage over the threaded keeper (not visible in FIG. 2) and the threaded portion of at least one of the connectors by rotation. Alternatively, the threaded keeper is mounted on and retained by the threaded band or threaded portion of at least one of the connectors when it is not rotated. The threaded keeper decoration 38 in the example in FIG. 2 is grooves which encompass the circumference of the cylindrical threaded connector 30. The outer dimension, in this example, the diameter of the threaded keeper 36, is larger than the bore of the beads (not shown in FIG. 2). Fixation of the threaded keeper 30 on a threaded band therefore restricts the movement of the beads on the strand and prevents bunching of the beads on the strand.

[0048]  Although the threaded keeper 30 shown in FIGS. 1 and 2 is cylindrical, threaded keepers may be spherical, or have the shape of any geometric solid having three dimensions, providing the threaded bore and outer dimension has the characteristics described above.

[0049]  FIG. 3A is a perspective view of the hinged keeper 40 in the open position. The hinged keeper 40 is comprised of a left shell 42 and a right shell 43 which are linked together by a hinge 44. The left shell 42 is comprised of a front wall 47 having a hemispheric front wall notch 41, a back wall 52 having a hemispheric back wall notch 51, a web 49 connecting the front wall 47 and back wall 52, and a top wall 50 which covers the U-shaped structure formed by the ends of the front wall 47, web 49 and back wall 52. The hemispheric front and back wall notches 41 and 51, respec-

US 2004/0144131 A1

3

tively, have a diameter slightly larger than one half the diameter of the strand. The right shell 43 is a mirror image of left shell 42 except that the right shell has a friction latch 45 connected to the right shell top wall. The friction latch 45 interacts with the left shell top wall 50 when the hinged keeper 40 is in the closed position and reversibly retains the hinged keeper 40 in the closed position. The hinged keeper decoration element 48 on the outer surface of the hinged keeper is shown in FIG. 3A.

[0050]    FIG. 3B is a plan view of the hinged keeper 40 in the closed position. Visible in FIG. 3B is the left shell 42, hinge 44, right shell 43, and hinged keeper decoration element 48. The hinged keeper 40 is retained in the closed position by the friction latch 45. The user can open the closed hinged keeper by inserting two fingernails into the junction between the left shell and right shell at the friction latch. When the hinged keeper is in the closed position, the left shell hemispheric front wall notch 41 and the right shell hemispheric front wall notch 52 together form a hinged keeper bore 53 having a diameter which is slightly larger than the diameter of the strand but smaller than the diameter of a band (not shown in FIG. 3B). The outer dimension of the hinged keeper, in this example, the diameter of the hinged keeper when closed 46, is larger than the bore of the beads (not shown in FIG. 2). Closure of the hinged keeper 40 on a band, threaded or unthreaded, which is attached to a strand, therefore restricts the movement of beads on the strand and prevents bunching of the beads.

[0051]    Although the hinged keeper 40 shown in FIGS. 1, 3A and 3B is cylindrical, hinged keepers may be spherical, or have the shape of any geometric solid having three dimensions, providing bore and outer dimension have the characteristics described above.

[0052]    FIG. 4 is a plan view of the necklace with the keepers and beads in cross section taken along the plane of the necklace. Visible in FIG. 4 are the strand 60, loop connector 12, and hook connector 15. A threaded band 71 having threads 72 on the outer surface is shown fixed to the strand 60. The diameter and thread dimensions of the threaded band 70 are suitable for the threaded fixation of the threaded keeper 30 by its threads 34. The bore 32 of the threaded keeper 30 is large enough to enable the threaded keeper to be moved over the threaded band 71 by rotation of the threaded keeper 30. The bore 32 of the threaded keeper 30 is large enough to allow passage of the threaded keeper 30 over an unthreaded band 76. A hinged keeper 40 is shown in FIG. 4 in the closed position closed over an unthreaded keeper 76. The bore 53 of the hinged keeper 40 is small enough to prevent movement of the hinged keeper 40 when the hinged keeper 40 is closed over an unthreaded band 76. Also shown in FIG. 4 are beads 70 which are strung on the strand 60. The bores 78 of the beads 70 are large enough to allow movement of the beads 70 over at least one of the connectors 12 and 15, over the threaded bands 71, and over the unthreaded bands 76. The bores 78 of the beads 70 are not large enough to allow passage over the threaded keepers 30 and hinged keepers 40 when they are attached to the threaded bands 71 and unthreaded bands 76, respectively.

[0053]    FIG. 5 shows the necklace without beads and without keepers. Visible in FIG. 5 are the strand 60, loop connector 12, and hook connector 15. A threaded band 71 having threads 72 on the outer surface is shown fixed to the strand 60. The diameter and thread dimensions of the threaded band 70 are suitable for the threaded fixation of the threaded keeper 30 by its threads 34. The bore 32 of the threaded keeper is large enough to pass over the threaded keeper if the threaded keeper is manually rotated against the threaded band. A threaded keeper may be moved over a threaded band by rotating the threaded keeper against a threaded band thereby engaging the band and keeper threads and then disengaging the band and keeper threads. An unthreaded band 76 is shown fixed to the strand. The bore 53 of the hinged keeper is smaller than the diameter of the band. A hinged keeper 40 may be removably fixed to either an unthreaded or threaded band. A hinged keeper, threaded or unthreaded, is fixed to the strand preferably by compression on the strand, by interaction with the links of a chain, or by adhesive, or any other suitable means of fixation of a band on a strand.

[0054]    The diameter the threaded band is larger than the bore of the threaded and hinged keepers, thus preventing the movement of a threaded keeper past a threaded band unless the threaded keeper is rotated into engagement of the band and keeper threads, and preventing the movement of a closed hinged keeper past a threaded band. The diameter of an unthreaded band is large enough to prevent the movement of a closed hinged keeper past an unthreaded band but small enough to allow the movement of a threaded keeper past the unthreaded band.

[0055]    FIG. 6A is a front view of a spherical threaded keeper 100. The threaded keeper bore 132 is oriented at either end of the front view of the spherical threaded keeper 100.

[0056]    FIG. 6B is a side view of a spherical threaded keeper 100. The bore 132 is visible in the side of the spherical threaded keeper 100.

[0057]    FIG. 7A is a front view of a spherical hinged keeper 200. The hinged keeper bore 253 is oriented at either end of the front view of the spherical threaded keeper 200. The intersection 290 between the upper and lower shells is shown in FIG. 7A.

[0058]    FIG. 7B is a side view of a spherical hinged keeper 200. The bore 253 is visible between the upper and lower shells and the intersection 290 between the upper and lower shells and the hinge 644 connecting the upper and lower shells are shown in FIG. 7B.

[0059]    FIG. 8A is a front view of a cubical threaded keeper 300. The threaded keeper bore 332 is oriented at either end of the front view of the spherical threaded keeper 300.

[0060]    FIG. 8B is a side view of a cubical threaded keeper 300. The bore 332 is visible in the side of the cubical threaded keeper 300.

[0061]    FIG. 9A is a front view of a cubical hinged keeper 400. The hinged keeper bore 453 is oriented at either end of the front view of the spherical threaded keeper 400. The intersection 490 between the upper and lower shells is shown in FIG. 9A.

[0062]    FIG. 9B is a side view of a cubical hinged keeper 400. The bore 453 is visible between the upper and lower shells and the intersection 490 between the upper and lower

4

shells shells and the hinge 444 connecting the upper and lower shells are shown in FIG. 9B.

[0063]   FIG. 10A is a front view of a pyramid-shaped threaded keeper 500. The threaded keeper bore 532 is oriented at either end of the front view of the pyramid-shaped threaded keeper 500.

[0064]   FIG. 10B is a side view of a pyramid-shaped threaded keeper 500. The bore 532 is visible in the side of the pyramid-shaped threaded keeper 500.

[0065]   FIG. 11A is a front view of a pyramid-shaped hinged keeper 600. The hinged keeper bore 653 is oriented at either end of the front view of the pyramid-shaped threaded keeper 600.

[0066]   FIG. 11B is a side view of a pyramid-shaped hinged keeper 600. The bore 653 is visible between the upper and lower shells and the intersection 690 between the upper and lower shells and the hinge 644 connecting the upper and lower shells are shown in FIG. 7B.

[0067]   In use, the wearer strings beads and one or more threaded keepers on a strand having one or more threaded bands. The order of the beads and keepers is chosen in order to provide the desired distribution of beads on the necklace. The use of a hinged keeper provides additional flexibility for the wearer, as the hinged connector can be attached after the beads and the threaded keeper have been strung. The arrangement of beads and keepers may be altered by simply restringing the components on the strand.

[0068]   Any suitable strong, flexible material may be used for the strand, or rigid material may be used in the form of a chain. A preferred material of construction is silver. Other suitable materials include bronze, steel, copper, plastic, and silk. Any suitable strong, hard material may be used for construction of the bands. A preferred material of construction is silver. Other suitable materials include stainless steel, copper, and plastic. Any suitable strong, hard material may be used for the keepers. A preferred material of construction is silver. Other suitable materials include bronze, steel, copper, and plastic.

[0069]   It will be apparent to those skilled in the art that the examples and embodiments described herein are by way of illustration and not of limitation, and that other examples may be used without departing from the spirit and scope of the present invention, as set forth in the appended claims.

I claim:

1. A necklace comprising:

a strand having two ends,

a hook component attached to each end of the strand,

the hook components capable of interaction with reversible attachment of the ends together,

at least one band fixedly attached to the strand,

two or more beads,

each bead having a bore of diameter greater than the diameter of the band and greater than the diameter of the hook component attached to one end of the strand, thereby allowing the stringing of the bead on the strand, and

at least one keeper having a bore and an outside diameter greater than the bore of the bead,

the keeper capable of interacting with the band with reversible attachment of the band and keeper, thereby restricting the movement of the bead on the strand.

2. The necklace of claim 1 wherein the bore of the keeper is threaded on its surface and the band is threaded on its external surface, the threaded surfaces of the keeper and band capable of interaction, thereby reversibly fixing the threaded keeper on the strand.

3. The necklace of claim 1 wherein the keeper comprises two hollow sections hinged together, each section having two walls, each wall having a notch, each notch of depth approximating one half the diameter of the strand, the sections and the band capable of interaction by the hinged keeper engulfing the band, thereby reversibly fixing the hinged keeper on the strand.

4. The necklace of claim 3 wherein the sections are reversibly secured in a closed position by a latch attached to one section.

5. The necklace of claim 1 further comprising at least one threaded keeper and at least one hinged keeper.

6. The necklace of claim 5 wherein the threaded keeper and the hinged keeper further comprise decorative elements.

7. The necklace of claim 6 wherein the decorative element of the threaded keep differs from the decorative element of the hinged keeper.

8. The necklace of claim 2 wherein the threaded keeper has any three-dimension geometric shape.

9. The necklace of claim 3 wherein the hinged keeper has any three-dimension geometric shape.

10. The necklace of claim 2 wherein the threaded keeper has a cylindrical, spherical, cubic, or pyramid shape.

11. The necklace of claim 3 wherein the threaded keeper has a cylindrical, spherical, cubic, or pyramid shape.

12. The process of reversibly restricting the movement of beads on a strand, wherein the beads have bores and are strung on a strand by their bores, and a band having an external diameter less than the diameter of the bead bores is fixed on the strand, comprising the step:

a. attaching to the band a keeper having an external diameter greater than the bead bores.

13. The process of claim 12 wherein the band has an external thread and the keeper has a threaded bore, the keeper attached to the band by the steps comprising:

a. threading the keeper onto the strand,

b. bringing the keeper and the band into contact, and

c. rotating the keeper, thereby engaging the band and keeper threads and attaching the keeper to the band.

14. The process of claim 12 wherein the keeper has two hollow sections hinged together comprising the step:

a. positioning the hinged keeper over a band, and

b. closing the hinged keeper over the band, thereby attaching the keeper to the band.

*   *   *   *   *

**EXHIBIT F**



1904-2004
**DuaneMorris**
100th Anniversary

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
CHICAGO
HOUSTON
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
DETROIT
BOSTON
WASHINGTON, DC
ATLANTA
MIAMI
PITTSBURGH
NEWARK
ALLENTOWN
WILMINGTON
CHERRY HILL
HARRISBURG
BANGOR
PRINCETON
WESTCHESTER

WILLIAM R. HANSEN
DIRECT DIAL: 212.692.1011
E-MAIL: wrhansen@duanemorris.com

www.duanemorris.com

August 18, 2004

**VIA FACSIMILE AND FEDEX**

James G. Goggin
Verrill & Dana LLP
One Portland Square
Portland, Maine 04112-0586

Re:   **NOTICE OF PUBLICATION**
      **U.S. Patent Application Publication**
      **Pub. No.:    US 2004/0144131-A1**
      **Pub. Date:   July 29, 2004**
      **NECKLACES AND BRACELETS WITH KEEPERS**

Dear Mr. Goggin:

As you know, we represent Pandora Smykker USA Aps and Pandora Jewelry, LLC (collectively, "Pandora"). Pandora Jewelry is the United States distributor of the unique and distinctive jewelry designs created by Pandora Smykker's artisans in Copenhagen. In particular, our clients had created a unique, distinctive series of beads, spacers, clips, bracelets and necklaces which are each original works of art which capture the expressive spirit of Scandinavian design. Building upon the original character of these copyrighted Pandora jewelry designs, Per E. Enevoldsen, a principal of Pandora, invented a unique method of stringing jewelry beads, spacers and clips which, in turn, form individually distinctive bracelets and necklaces. On July 21, 2003, Pandora filed a patent application with the U.S. Patent and Trademark Office to protect Mr. Enevoldsen's invention. The patent application currently pending is entitled "NECKLACES AND BRACELETS WITH KEEPERS" and was assigned Application No. 10/623,641.

Pandora is aware that your client, Chamilia, LLC, is making, using, offering to sell, or selling necklaces and bracelets in the United States which appear to utilize substantially the same construction and perform the same function as Pandora's patent pending for its necklaces and bracelets.

PLEASE BE ADVISED that Pandora's patent application was published by the U.S. Patent and Trademark Office on July 29, 2004, as Publication No. US 2004/0144131-A1.



1904-2004
Duane Morris
100th Anniversary

James G. Goggin
August 18, 2004
Page 2

Enclosed is a copy of the U.S. Patent Application Publication issued by the U.S. Patent and Trademark Office in connection with the above-referenced application.

PLEASE BE FURTHER ADVISED that Pandora has invested significant effort and expense in the research, development and patenting and the creation of the distinctive and creative elements of the aforementioned necklaces and bracelets, and considers the patent application and other intellectual property covering such products to be an important and highly valuable asset. Pandora, therefore, has significant business interests in protecting the proprietary technology covered by its published U.S. Patent application and other intellectual property rights. As a matter of company policy, Pandora vigorously defends and protects its intellectual property rights and is prepared to take all appropriate actions to ensure that its valuable intellectual property rights remain protected and uninfringed.

YOU ARE HEREBY GIVEN ACTUAL NOTICE OF PANDORA'S PUBLISHED APPLICATION. Recent amendments to the patent laws create an additional right of a patent, namely, a "provisional" right to compensation. *See generally* 35 U.S.C. § 154(d). The right is to "obtain a reasonable royalty" for a period beginning on the date of the patent application's publication and ending on the date of the patent's issuance. 35 U.S.C. § 154(d)(1). The royalty right extends to "any person" who had actual notice of the published patent application and who commits the acts that would otherwise constitute infringement of a patent, that is, making, using, or offering for sale the invention as claimed in the published patent application or importing such an invention into the United States. 35 U.S.C. § 154(d)(1)(A)(B).

YOU ARE HEREBY ADVISED that any manufacture, sale or offering for sale of necklaces and bracelets that substantially utilize the same construction and perform the same function as Pandora's published patent application for its necklaces and bracelets gives rise to provisional rights under the patent laws of the United States.

We are also aware of the action commenced in the U.S. District Court for the Southern District of New York by Chamilia, LLC against our clients. We understand that service of process was made after business hours on August 17, 2004. You are advised to communicate with our clients only through its counsel.

Very truly yours,

William R. Hansen

GGM/
Enclosure

US 20040144131A1

(19) **United States**

(12) **Patent Application Publication**    (10) Pub. No.: US 2004/0144131 A1

Enevoldsen    (43) Pub. Date:    Jul. 29, 2004

---

(54) NECKLACES AND BRACELETS WITH KEEPERS

(76) Inventor: **Per A. Enevoldsen**, Roederovre (DK)

Correspondence Address:
**Samuel W. Apicelli, Esquire**
**Duane Morris LLP**
**305 North Front Street**
**P.O. Box 1003**
**Harrisburg, PA 17108-1003 (US)**

(21) Appl. No.:    10/623,641

(22) Filed:    Jul. 21, 2003

**Publication Classification**

(51) Int. Cl.⁷ ..................................... A44C 5/00

(52) U.S. Cl. ......................................... 63/3; 63/3.1

(57)    **ABSTRACT**

This invention is a necklace or bracelet with provisions to prevent the bunching of baubles, bangles and beads which are strung on the necklace or bracelet. Bunching is prevented by keepers which are removably attached to bands fixed at intervals on the strands of the necklaces or bracelets. Two types of keepers are disclosed, one of which has internal threads which interact with a threaded bands, and one which uses a clamshell structure to secure the keeper on a band. The keepers may have a variety of shapes for decorative effects, such as cylindrical, spherical, cubical, or pyramid-shaped.





FIG. 1

Patent Application Publication    Jul. 29, 2004   Sheet 2 of 6       US 2004/0144131 A1



FIG. 2



FIG. 3A



FIG. 3B



FIG. 4



FIG. 5



FIG. 6A



FIG. 6B



FIG. 7A



FIG. 7B



FIG. 8A

FIG. 8B

Case 7:04-cv-06017-KMK    Document 29    Filed 07/15/2005    Page 22 of 58



FIG. **9**A



FIG. **9**B



FIG. 10A



FIG. 10B



FIG. 11A



FIG. 11B

US 2004/0144131 A1

Jul. 29, 2004

1

# NECKLACES AND BRACELETS WITH KEEPERS

## CROSS-REFERENCE TO RELATED APPLICATIONS

[0001]  Not Applicable.

## STATEMENT REGARDING FEDERALLY SPONSORED RESEARCH OR DEVELOPMENT

[0002]  Not Applicable.

[0003]  Reference to "Microfiche appendix."

[0004]  Not Applicable.

## BACKGROUND OF THE INVENTION

[0005]  1. Field of the Invention

[0006]  This invention pertains to necklaces and bracelets with decorative baubles, bangles, and beads.

[0007]  2. Description of Related Art Including Information Disclosed Under 37 CFR 1.97 and 37 CFR 1.98

[0008]  A popular type of necklace includes a flexible strand to which a number of beads are retained by being strung on the strand a lumen in the bead or a loop attached to the bead. Beads often are purely decorative and come in, a variety of colors and shapes and often have embedded decorative elements such as stones. In addition, beads often have symbolic meaning to the wearer and represent descendents or important events. Necklaces having a plurality of beads often suffer from "bunching", the tendency of all of the beads to collect in a single group at the bottom of the necklace rather than remain in the desirable more even distribution about the length of the necklace. The invention of this patent application prevents bunching.

[0009]  U.S. Pat. No. 3,983,716 discloses a jewelry lock in which the ends of strand have attached extensions. The extensions may be secured by a jewelry lock having the external shape of a bead. It includes two hinged hemispheric cups with notches which accommodate hitches attached to the ends of a bead chain, thereby securing the ends.

[0010]  U.S. Pat. No. 4,530,221 discloses a necklace attachment for shortening the length of a string of pearls. The attachment engulfs and attaches together two pearls which are in adjacent portions of a strand of pearls. Another embodiment engulfs one pearl and may be used to attach decorative elements to the strand.

[0011]  U.S. Pat. No. 4,562,704 discloses a latch for a chain having a male and female element. Removable designer elements are strung over the compressed male element and are retained by the female element and uncompressed male element. There are no provisions for preventing the movement of elements on the chain.

[0012]  U.S. Pat. No. 4,907,322 discloses a pearl necklace with a stainless steel wire which is secured by a retainer having a setscrew. The pearls are separated by elastic rings.

[0013]  U.S. Pat. No. 5,279,132 discloses a holding device which prevents the movement of a body adornment suspended from a chain. This avoids the tendency of the clasp to walk-around or creep from the back to the front of the wearer's body. The adornment is affixed to the wearer's skin or clothing using a double-sided adhesive, spray adhesive, or brush on adhesive.

[0014]  U.S. Pat. No. 6,449,810 discloses a stopper for jewelry strands. The stopper is strung on one or two strands and secured in place by two rubber rings, one above and one below the strand or strands. The stopper is used to adjust the length of a flexible strand.

[0015]  None of the discovered prior art provides the advantages of the present invention, that of decorative keepers which retain beads on a necklace in a desirable distribution and prevent bunching.

## BRIEF SUMMARY OF THE INVENTION

[0016]  A necklace comprising a strand having two ends and a hook component attached to each end of the strand, the hook components capable of interaction with reversible attachment of the ends together. At least one band is fixedly attached to the strand, two or more beads, each bead having a bore of diameter greater than the diameter of the band and greater than the diameter of the hook component attached to one end of the strand, thereby allowing the stringing of the beads on the strand. Finally, there is at least one keeper having an outside diameter greater than the bore of the bead, the keeper capable of interacting with the band with reversible attachment of the band and keeper, thereby restricting the movement of the beads on the strand.

[0017]  The objective of this invention is to provide a necklace with beads and keepers in which the beads do not bunch.

[0018]  Another objective of this invention is to provide a necklace with beads and removable keepers so the distribution of the beads on the necklace can be modified by the necklace wearer.

[0019]  Another objective of this invention is to provide a necklace with beads and keepers with a threaded keeper or a hinged keeper.

[0020]  Another objective of this invention is to provide a necklace with beads and keepers with keepers in decorative shapes which add to the decorative effect of the necklace.

[0021]  Another objective of this invention is to provide a necklace with beads and keepers with keepers of cylindrical, spherical, cubical or pyramid shapes.

[0022]  A final objective is to provide a necklace with beads and keepers which can be manufactured inexpensively and without adverse effects on the environment.

## BRIEF DESCRIPTION OF THE SEVERAL VIEWS OF THE DRAWING

[0023]  FIG. 1 is a plan view of the necklace of this invention.

[0024]  FIG. 2 is a cross-sectional view of the threaded keeper.

[0025]  FIG. 3A is a perspective view of the hinged keeper in the open position.

[0026]  FIG. 3B is a plan view of the hinged keeper in the closed position.

2

[0027] FIG. 4 is a plan view of the necklace with the keepers and beads in cross section taken along the plane of the necklace.

[0028] FIG. 5 shows the necklace without beads and without keepers.

[0029] FIG. 6A is a front view of a spherical threaded keeper.

[0030] FIG. 6B is a side view of a spherical threaded keeper.

[0031] FIG. 7A is a front view of a spherical hinged keeper.

[0032] FIG. 7B is a side view of a spherical hinged keeper.

[0033] FIG. 8A is a front view of a cubical threaded keeper.

[0034] FIG. 8B is a side view of a cubical threaded keeper.

[0035] FIG. 9A is a front view of a cubical hinged keeper.

[0036] FIG. 9B is a side view of a cubical hinged keeper.

[0037] FIG. 10A is a front view of a pyramid-shaped threaded keeper.

[0038] FIG. 10B is a side view of a pyramid-shaped threaded keeper.

[0039] FIG. 11A is a front view of a pyramid-shaped hinged keeper.

[0040] FIG. 11B is a side view of a pyramid-shaped hinged keeper.

## DETAILED DESCRIPTION OF THE INVENTION

[0041] In this patent application body adornments such as necklaces, bracelets, anklets, waist chains are termed "necklaces". Flexible chains, wire cables, bands, filaments, cords, strings, which are a component of the necklaces are termed "strands". Baubles, bangles, pendants, trinkets, and beads which are strung on a strand are termed "beads".

[0042] FIG. 1 shows a necklace 10 of this invention. The ends of the strand 60 may be connected by the interaction of a loop connector 12 with a hook connector 15. The loop connector 12 is comprised of a cylindrical loop threaded end 13 which is fixed to a first end 62 of the strand 60. A loop connector loop 14 is connected to the loop threaded end 13. Loop connector loop 14 is connected to the loop threaded end 13. The loop connector 12 outer diameter 22 is small enough to allow passage of the threaded connector 30 bore (not visible in FIG. 1) and bead 70 bore (not visible in FIG. 1) over the loop connector 12, thereby allowing stringing of the threaded keeper 30 and bead 70 over the strand 60. The hook connector 15 is comprised of a hook threaded end 16 which is fixed to a second end 64 of the strand 60. A hook connector ring 17 is attached to the hook threaded end 16. A hook connector hook 18 is connected to the hook connector ring 17. Visible on the hook connector hook 18 is the movable hook connector latch 19 and the hook connector latch handle 20. Any suitable connectors which enable the connection of the first and second ends of the strand may be used provided that at least

one connector has a diameter small enough to allow the passage over that connector of beads 70 and threaded keepers 30.

[0043] Beads 70 having a cylindrical bore (not visible in FIG. 1) are strung on the strand 60 and are free to slide back and forth on the strand. The movement of beads 70 is restrained by a threaded keeper 30 and a hinged keeper 40. The keepers are removably fixed on bands (not visible in FIG. 1) which are fixedly attached to the strand 60.

[0044] The function of the threaded keeper 30 and hinged keeper 40 is to restrain the free movement of the beads 70 on the strand 60, thereby preventing bunching and keeping the beads in a desirable distribution on the necklace.

[0045] The threaded keeper 30 has a distinctive ornamental pattern 38 on the outer surface. The hinged keeper 40 has a distinctive ornamental pattern 48 on the outer surface which is easily distinguished from the ornamental pattern 38 of the threaded keeper 30. The distinct ornamental patterns allow the necklace wearer to easily distinguish between the threaded and hinged keepers when the necklace is being assembled or in use.

[0046] The beads 70 have a cylindrical bore (not visible in FIG. 1) which is large enough to pass over the loop connector 12. Any desirable number and type of beads may be used. Any desirable number of bands can be fixed on the strand and any desired number of threaded keepers and or hinged keepers may be used with the necklace.

[0047] FIG. 2 is a cross sectional view of the threaded keeper 30 taken along line 2-2 in FIG. 1. Visible in FIG. 2 is the threaded keeper bore 32 which is of adequate size to pass over a threaded band (not visible in FIG. 2) and over at least one of the connectors, (12 and 15 in FIG. 1). The interior of the bore 32 is threaded 34 with a thread capable of interaction with and passage over the threaded keeper (not visible in FIG. 2) and the threaded portion of at least one of the connectors by rotation. Alternatively, the threaded keeper is mounted on and retained by the threaded band or threaded portion of at least one of the connectors when it is not rotated. The threaded keeper decoration 38 in the example in FIG. 2 is grooves which encompass the circumference of the cylindrical threaded connector 30. The outer dimension, in this example, the diameter of the threaded keeper 36, is larger than the bore of the beads (not shown in FIG. 2). Fixation of the threaded keeper 30 on a threaded band therefore restricts the movement of the beads on the strand and prevents bunching of the beads on the strand.

[0048] Although the threaded keeper 30 shown in FIGS. 1 and 2 is cylindrical, threaded keepers may be spherical, or have the shape of any geometric solid having three dimensions, providing the threaded bore and outer dimension has the characteristics described above.

[0049] FIG. 3A is a perspective view of the hinged keeper 40 in the open position. The hinged keeper 40 is comprised of a left shell 42 and a right shell 43 which are linked together by a hinge 44. The left shell 42 is comprised of a front wall 47 having a hemispheric front wall notch 41, a back wall 52 having a hemispheric back wall notch 51, a web 49 connecting the front wall 47 and back wall 52, and a top wall 50 which covers the U-shaped structure formed by the ends of the front wall 47, web 49 and back wall 52. The hemispheric front and back wall notches 41 and 51, respec-

tively, have a diameter slightly larger than one half the diameter of the strand. The right shell 43 is a mirror image of left shell 42 except that the right shell has a friction latch 45 connected to the right shell top wall. The friction latch 45 interacts with the left shell top wall 50 when the hinged keeper 40 is in the closed position and reversibly retains the hinged keeper 40 in the closed position. The hinged keeper decoration element 48 on the outer surface of the hinged keeper is shown in FIG. 3A.

[0050]  FIG. 3B is a plan view of the hinged keeper 40 in the closed position. Visible in FIG. 3B is the left shell 42, hinge 44, right shell 43, and hinged keeper decoration element 48. The hinged keeper 40 is retained in the closed position by the friction latch 45. The user can open the closed hinged keeper by inserting two fingernails into the junction between the left shell and right shell at the friction latch. When the hinged keeper is in the closed position, the left shell hemispheric front wall notch 41 and the right shell hemispheric front wall notch 52 together form a hinged keeper bore 53 having a diameter which is slightly larger than the diameter of the strand but smaller than the diameter of a band (not shown in FIG. 3B). The outer dimension of the hinged keeper, in this example, the diameter of the hinged keeper when closed 46, is larger than the bore of the beads (not shown in FIG. 2). Closure of the hinged keeper 40 on a band, threaded or unthreaded, which is attached to a strand, therefore restricts the movement of beads on the strand and prevents bunching of the beads.

[0051]  Although the hinged keeper 40 shown in FIGS. 1, 3A and 3B is cylindrical, hinged keepers may be spherical, or have the shape of any geometric solid having three dimensions, providing bore and outer dimension have the characteristics described above.

[0052]  FIG. 4 is a plan view of the necklace with the keepers and beads in cross section taken along the plane of the necklace. Visible in FIG. 4 are the strand 60, loop connector 12, and hook connector 15. A threaded band 71 having threads 72 on the outer surface is shown fixed to the strand 60. The diameter and thread dimensions of the threaded band 70 are suitable for the threaded fixation of the threaded keeper 30 by its threads 34. The bore 32 of the threaded keeper 30 is large enough to enable the threaded keeper to be moved over the threaded band 71 by rotation of the threaded keeper 30. The bore 32 of the threaded keeper 30 is large enough to allow passage of the threaded keeper 30 over an unthreaded band 76. A hinged keeper 40 is shown in FIG. 4 in the closed position closed over an unthreaded keeper 76. The bore 53 of the hinged keeper 40 is small enough to prevent movement of the hinged keeper 40 when the hinged keeper 40 is closed over an unthreaded band 76. Also shown in FIG. 4 are beads 70 which are strung on the strand 60. The bores 78 of the beads 70 are large enough to allow movement of the beads 70 over at least one of the connectors 12 and 15, over the threaded bands 71, and over the unthreaded bands 76. The bores 78 of the beads 70 are not large enough to allow passage over the threaded keepers 30 and hinged keepers 40 when they are attached to the threaded bands 71 and unthreaded bands 76, respectively.

[0053]  FIG. 5 shows the necklace without beads and without keepers. Visible in FIG. 5 are the strand 60, loop connector 12, and hook connector 15. A threaded band 71 having threads 72 on the outer surface is shown fixed to the

strand 60. The diameter and thread dimensions of the threaded band 70 are suitable for the threaded fixation of the threaded keeper 30 by its threads 34. The bore 32 of the threaded keeper is large enough to pass over the threaded keeper if the threaded keeper is manually rotated against the threaded band. A threaded keeper may be moved over a threaded band by rotating the threaded keeper against a threaded band thereby engaging the band and keeper threads and then disengaging the band and keeper threads. An unthreaded band 76 is shown fixed to the strand. The bore 53 of the hinged keeper is smaller than the diameter of the band. A hinged keeper 40 may be removably fixed to either an unthreaded or threaded band. A band, threaded or unthreaded, is fixed to the strand preferably by compression on the strand, by interaction with the links of a chain, or by adhesive, or any other suitable means of fixation of a band on a strand.

[0054]  The diameter the threaded band is larger than the bore of the threaded and hinged keepers, thus preventing the movement of a threaded keeper past a threaded band unless the threaded keeper is rotated into engagement of the band and keeper threads, and preventing the movement of a closed hinged keeper past a threaded band. The diameter of an unthreaded band is large enough to prevent the movement of a closed hinged keeper past an unthreaded band but small enough to allow the movement of a threaded keeper past the unthreaded band.

[0055]  FIG. 6A is a front view of a spherical threaded keeper 100. The threaded keeper bore 132 is oriented at either end of the front view of the spherical threaded keeper 100.

[0056]  FIG. 6B is a side view of a spherical threaded keeper 100. The bore 132 is visible in the side of the spherical threaded keeper 100.

[0057]  FIG. 7A is a front view of a spherical hinged keeper 200. The hinged keeper bore 253 is oriented at either end of the front view of the spherical threaded keeper 200. The intersection 290 between the upper and lower shells is shown in FIG. 7A.

[0058]  FIG. 7B is a side view of a spherical hinged keeper 200. The bore 253 is visible between the upper and lower shells and the intersection 290 between the upper and lower shells and the hinge 644 connecting the upper and lower shells are shown in FIG. 7B.

[0059]  FIG. 8A is a front view of a cubical threaded keeper 300. The threaded keeper bore 332 is oriented at either end of the front view of the spherical threaded keeper 300.

[0060]  FIG. 8B is a side view of a cubical threaded keeper 300. The bore 332 is visible in the side of the cubical threaded keeper 300.

[0061]  FIG. 9A is a front view of a cubical hinged keeper 400. The hinged keeper bore 453 is oriented at either end of the front view of the spherical threaded keeper 400. The intersection 490 between the upper and lower shells is shown in FIG. 9A.

[0062]  FIG. 9B is a side view of a cubical hinged keeper 400. The bore 453 is visible between the upper and lower shells and the intersection 490 between the upper and lower

4

shells shells and the hinge **444** connecting the upper and lower shells are shown in FIG. 9B.

[0063] FIG. 10A is a front view of a pyramid-shaped threaded keeper **500**. The threaded keeper bore **532** is oriented at either end of the front view of the pyramid-shaped threaded keeper **500**.

[0064] FIG. 10B is a side view of a pyramid-shaped threaded keeper **500**. The bore **532** is visible in the side of the pyramid-shaped threaded keeper **500**.

[0065] FIG. 11A is a front view of a pyramid-shaped hinged keeper **600**. The hinged keeper bore **653** is oriented at either end of the front view of the pyramid-shaped threaded keeper **600**.

[0066] FIG. 11B is a side view of a pyramid-shaped hinged keeper **600**. The bore **653** is visible between the upper and lower shells and the intersection **690** between the upper and lower shells and the hinge **644** connecting the upper and lower shells are shown in FIG. 7B.

[0067] In use, the wearer strings beads and one or more threaded keepers on a strand having one or more threaded bands. The order of the beads and keepers is chosen in order to provide the desired distribution of beads on the necklace. The use of a hinged keeper provides additional flexibility for the wearer, as the hinged connector can be attached after the beads and the threaded keeper have been strung. The arrangement of beads and keepers may be altered by simply restringing the components on the strand.

[0068] Any suitable strong, flexible material may be used for the strand, or rigid material may be used in the form of a chain. A preferred material of construction is silver. Other suitable materials include bronze, steel, copper, plastic, and silk. Any suitable strong, hard material may be used for construction of the bands. A preferred material of construction is silver. Other suitable materials include stainless steel, copper, and plastic. Any suitable strong, hard material may be used for the keepers. A preferred material of construction is silver. Other suitable materials include bronze, steel, copper, and plastic.

[0069] It will be apparent to those skilled in the art that the examples and embodiments described herein are by way of illustration and not of limitation, and that other examples may be used without departing from the spirit and scope of the present invention, as set forth in the appended claims.

I claim:

1. A necklace comprising:

a strand having two ends,

a hook component attached to each end of the strand,

the hook components capable of interaction with reversible attachment of the ends together,

at least one band fixedly attached to the strand,

two or more beads,

each bead having a bore of diameter greater than the diameter of the band and greater than the diameter of the hook component attached to one end of the strand, thereby allowing the stringing of the bead on the strand, and

at least one keeper having a bore and an outside diameter greater than the bore of the bead,

the keeper capable of interacting with the band with reversible attachment of the band and keeper, thereby restricting the movement of the bead on the strand.

2. The necklace of claim 1 wherein the bore of the keeper is threaded on its surface and the band is threaded on its external surface, the threaded surfaces of the keeper and band capable of interaction, thereby reversibly fixing the threaded keeper on the strand.

3. The necklace of claim 1 wherein the keeper comprises two hollow sections hinged together, each section having two walls, each wall having a notch, each notch of depth approximating one half the diameter of the strand, the sections and the band capable of interaction by the hinged keeper engulfing the band, thereby reversibly fixing the hinged keeper on the strand.

4. The necklace of claim 3 wherein the sections are reversibly secured in a closed position by a latch attached to one section.

5. The necklace of claim 1 further comprising at least one threaded keeper and at least one hinged keeper.

6. The necklace of claim 5 wherein the threaded keeper and the hinged keeper further comprise decorative elements.

7. The necklace of claim 6 wherein the decorative element of the threaded keep differs from the decorative element of the hinged keeper.

8. The necklace of claim 2 wherein the threaded keeper has any three-dimension geometric shape.

9. The necklace of claim 3 wherein the hinged keeper has any three-dimension geometric shape.

10. The necklace of claim 2 wherein the threaded keeper has a cylindrical, spherical, cubic, or pyramid shape.

11. The necklace of claim 3 wherein the threaded keeper has a cylindrical, spherical, cubic, or pyramid shape.

12. The process of reversibly restricting the movement of beads on a strand, wherein the beads have bores and are strung on a strand by their bores, and a band having an external diameter less than the diameter of the bead bores is fixed on the strand, comprising the step:

a. attaching to the band a keeper having an external diameter greater than the bead bores.

13. The process of claim 12 wherein the band has an external thread and the keeper has a threaded bore, the keeper attached to the band by the steps comprising:

a. threading the keeper onto the strand,

b. bringing the keeper and the band into contact, and

c. rotating the keeper, thereby engaging the band and keeper threads and attaching the keeper to the band.

14. The process of claim 12 wherein the keeper has two hollow sections hinged together comprising the step:

a. positioning the hinged keeper over a band, and

b. closing the hinged keeper over the band, thereby attaching the keeper to the band.

*  *  *  *  *



DUANE MORRIS LLP
380 LEXINGTON AVENUE
NEW YORK, NY 10168
PHONE: 212.692.1000
FAX: 212.692.1020

# FACSIMILE TRANSMITTAL SHEET

**TO:** James G. Goggin, Esq.

**FIRM/COMPANY:** Verrill & Dana LLP

**FACSIMILE NUMBER:** 207.774.7499

**CONFIRMATION TELEPHONE:** 207.774.4000

**FROM:** William R. Hansen, Esq.

**DIRECT DIAL:** 212.692.1011

**DATE:** August 17, 2004

**USER NUMBER:**

**FILE NUMBER:** Y1776-00001

**TOTAL # OF PAGES:** 14
(INCLUDING COVERSHEET)

**MESSAGE:**

**NOTE:** Original will not follow

CONFIDENTIALITY NOTICE

THIS FACSIMILE TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL AND IS INTENDED ONLY FOR THE REVIEW OF THE PARTY TO WHOM IT IS ADDRESSED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY TELEPHONE THE SENDER ABOVE TO ARRANGE FOR ITS RETURN, AND IT SHALL NOT CONSTITUTE WAIVER OF THE ATTORNEY-CLIENT PRIVILEGE.

**If there is a problem with this transmission, please call us as soon as possible at 212.692.1000.**

```
**************************
***   ACTIVITY REPORT   ***
**************************
```

| ST. TIME | DESTINATION TEL/ID | NO. | MODE | | PGS. | RESULT | |
|---|---|---|---|---|---|---|---|
| *08/16 12:56 | 4295#99999#00092#12159791020 | 2100 | TRANSMIT | ECM | 6 | OK | 01'46 |
| *08/16 13:57 | 3987#931865#00001#16107389988# | 2101 | TRANSMIT | ECM | 7 | OK | 02'04 |
| *08/16 14:35 | 4295#931026#00002#16192961050 | 2102 | TRANSMIT | ECM | 10 | OK | 03'04 |
| *08/16 15:36 | | 5984 | AUTO RX | ECM | 3 | OK | 01'42 |
| *08/16 15:39 | 4297#931825#00002#14107456342 | 5985 | AUTO RX | ECM | 1 | OK | 00'49 |
| *08/16 16:52 | 4295#931676#00001#12122132385 | 2103 | TRANSMIT | ECM | 6 | OK | 03'09 |
| *08/16 16:56 | 4295#931676#00001#19042460659 | 2104 | TRANSMIT | ECM | 6 | OK | 02'06 |
| *08/16 17:06 | | 2105 | TRANSMIT | ECM | 6 | OK | 01'43 |
| *08/16 20:27 | | 5986 | AUTO RX | ECM | 1 | OK | 00'57 |
| *08/16 22:17 | 6807#99999#00091#011442078225817# | 2106 | TRANSMIT | | 0 | NG | 00'00 |
| *08/16 22:22 | 99999#00091#011442078225817# | 2107 | TRANSMIT | | 0 | 0 #0018 NG | 00'00 |
| *08/16 22:32 | 3799#99999#00091#011442078225817# | 2108 | TRANSMIT | | 0 | 0 #0018 NG | 00'00 |
| *08/16 22:43 | 3799#99999#00091#011442078225817# | 2109 | TRANSMIT | | 0 | 0 #0018 NG | 00'00 |
| *08/16 22:49 | 3985#99999#00091#011442078225817 | 2110 | TRANSMIT | | 0 | 0 #0018 NG | 00'00 |
| *08/17 08:51 | | 5987 | AUTO RX | ECM | 1 | 0 #0018 OK | 00'48 |
| *08/17 10:08 | | 5988 | AUTO RX | ECM | 4 | OK | 02'09 |
| *08/17 10:22 | | 5989 | AUTO RX | ECM | 2 | OK | 01'15 |
| *08/17 10:47 | 3985#99999#00091#011442078225817 | 2111 | TRANSMIT | | 0 | 0 #0018 NG | 00'00 |
| *08/17 11:12 | 4295#931759#00001#12123026141 | 2112 | TRANSMIT | ECM | 5 | OK | 02'01 |
| *08/17 11:28 | | 5990 | AUTO RX | ECM | 2 | OK | 01'15 |
| *08/17 11:33 | 4297#931080#00066#14107456342 | 2113 | TRANSMIT | ECM | 4 | OK | 02'16 |
| *08/17 11:36 | 212 533 6359 | 5991 | AUTO RX | ECM | 4 | OK | 02'00 |
| *08/17 11:46 | 4297#931080#00066#14107456342 | 2114 | TRANSMIT | ECM | 3 | OK | 01'37 |
| *08/17 11:59 | | 5992 | AUTO RX | ECM | 1 | OK | 00'21 |
| *08/17 14:56 | | 5993 | AUTO RX | ECM | 8 | OK | 03'56 |
| *08/17 15:17 | 4297#931917#00002#011498941969191 | 2115 | TRANSMIT | | 0 | NG | 00'00 |
| *08/17 15:19 | 4297#931719#00002#00002#011498941969191 | 2116 | TRANSMIT | | 0 | 0 STOP NG | 00'00 |
| 08/17 15:22 | 4297#931316#00001#011498941969191 | 2117 | TRANSMIT | | 0 | 0 STOP | |
| 08/17 15:27 | 4295#931047#00003#01181332146358 | 2118 | TRANSMIT | ECM | 4 | OK | 01'51 |
| 08/17 15:33 | 4295#931020#00001#19734515014 | 2119 | TRANSMIT | ECM | 2 | OK | 00'53 |
| 08/17 15:35 | 4295#931020#00001#12018636307 | 2120 | TRANSMIT | ECM | 3 | OK | 01'06 |
| 08/17 16:57 | | 5994 | AUTO RX | ECM | 3 | OK | 00'56 |
| 08/17 19:53 | 4103090250 | 5995 | AUTO RX | ECM | 3 | OK | 01'42 |
| 08/17 19:57 | 4103090250 | 5996 | AUTO RX | ECM | 21 | OK | 03'40 |
| 08/17 20:04 | 4103090250 | 5997 | AUTO RX | ECM | 2 | OK | 00'35 |
| 08/17 22:50 | 4103090250 | 5998 | AUTO RX | ECM | 21 | OK | 04'22 |
| 08/18 08:46 | 01 53 20 14 91 | 5999 | MEMORY RX | ECM | 4 | OK | 00'52 |
| 08/18 09:24 | 4297#931776#00001#12077747499 | 2121 | TRANSMIT | ECM | 1 | OK | 00'20 |
| 08/18 09:53 | 01 53 20 14 91 | 6000 | AUTO RX | ECM | 14 | OK | 06'00 |
| 08/18 10:06 | 6 | 2122 | TRANSMIT | | 2 | OK | 00'37 |
| | | | | | 0 | NG STOP | 00'00 |

**EXHIBIT G**

# William S. Ramsey, P.C.
## INTELLECTUAL PROPERTY LEGAL COUNSEL

5253 Even Star Place
Columbia, MD 21044

www.williamramseylaw.com

Phone 410-740-2225
Fax 410-730-9467

August 26, 2003

Chamilia LLC
64-09 Booth Street
Second Floor
Rego Park, NY 11374

By Certified Mail

Re:    **CEASE AND DESIST DEMAND**
       **Our Client's Property: PANDORA Necklaces and Bracelets**

Dear Sir or Madam:

William S. Ramsey, P.C., represents Pandora Jewelry LLC, 10015 Old Columbia Road, Suite B-215, Columbia, MD 21046 (PANDORA). As you may know, PANDORA is a manufacturer and purveyor of jewelry, in particular, necklaces and bracelets which incorporate, among other elements, keepers which interact with bands fixed to the strands, and which prevent the bunching of beads strung on the necklace or bracelet. PANDORA has filed a nonprovisional U.S. Patent Application which protects the functional aspects of the necklaces and bracelets. In addition, PANDORA owns trademark and copyright rights in their necklaces and bracelets.

PANDORA is now aware that Chamilia LLC, a business operating out of 64-09 Booth Street, Second Floor, Rego Park, NY 11374 (CHAMILIA) is making, using, offering to sell, or selling necklaces and bracelets in the United States which appear to utilize substantially the same construction and perform substantially the same functions as PANDORA'S patent applied for necklaces and bracelets.

In addition, CAMILIA'S necklaces and bracelets appear to so closely resemble PANDORA'S products as to cause the likelihood of confusion concerning the origin of CAMILIA'S products and thereby raises the possibility of infringement of PANDORA'S trademarks.

In addition, CHAMILIA'S necklaces and bracelets appear to be substantially similar to copyright protected aspects of PANDORA'S products. Since access to

1

PANDORA'S products has been established by widespread public sale, the possibility of infringement of PANDORA'S copyrights is also raised.

In addition, CHAMILIA actions may be actionable under the following causes of action: unfair competition under federal and state law, false designation of origin, and false advertising, which can result in statutory and punitive damages, lost profits, and costs thereof.

You should be aware that PANDORA has invested significant effort and expense in the research, development and patenting and the creation of distinctive and creative elements of these necklaces and bracelets, and considers the patent application and other intellectual property covering such products to be an important and highly valuable asset. PANDORA accordingly has significant business interests in protecting the proprietary technology covered by this U.S. Patent application and other intellectual property rights. As a matter of principle and policy, therefore, PANDORA vigorously defends and protects its intellectual property rights and is quite willing and committed to pursuing any and all infringements of these rights to the fullest extent possible.

Accordingly, PANDORA demands that:

(1)     CHAMILIA immediately cease and desist all commercial activity which would infringe any of PANDORA'S intellectual property rights;

(2)     CHAMILIA provide complete information as to the design and operation of the CHAMILIA necklaces and bracelets, including any drawings and system descriptions;

(3)     CHAMILIA provide a complete accounting of all necklaces and bracelets manufactured, imported, and sold, which accounting must include an identification of the customers, prices charged, and profits generated from such sales for all necklaces and bracelets made, imported, offered for sale, or sold by or on behalf of CHAMILIA, and your franchisee or affiliated entities.

Because many of the improper uses of our client's intellectual property are being used on the internet, it is our position that we are being greatly damaged every minute these uses are permitted to continue. Further, we realize that such electronic uses may be immediately removed from your website with little effort. Therefore, we demand a written response hereto that CHAMILIA confirms the above demands and has taken steps to remove the objectionable uses of our client's trademark from its website within fifteen (15) days.

Please respond to this letter within fifteen (15) days by providing your assurances that CHAMILIA: (1) discontinued the making, use, offering for sale, sale or importation of all necklaces and bracelets and components that would fall within the scope of

PANDORA'S intellectual property. As a further part of this response, I request that CHAMILIA provide the complete product, sales and other related information requested above. You should be aware that if I do not have a response from you within the requested time, PANDORA will be forced to take all actions necessary and as permitted by law to enforce its rights.

Please contact me or have your legal counsel contact me if you have any questions.

Sincerely,
WILLIAM S. RAMSEY, P.C.

William S. Ramsey
Attorney at Law

cc:
Michael Lund

CEASEAND DESIST

**EXHIBIT H**

DUANE MORRIS LLP
William R. Hansen (WH-9446)
Gianfranco G. Mitrione (GM-8618)
380 Lexington Avenue
New York, New York 10168
(212) 692-1000
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

PANDORA JEWELRY, LLC and                        :
PANDORA SMYKKER USA APS,                         :
                                                :
                          Plaintiffs,           :       Civil Action No.
                                                :       03 CIV 7587 (JES)
              -against-                          :
                                                :
CHAMILIA LLC,                                    :
                                                :
                          Defendant.            :
---------------------------------------------------------------X

## TEMPORARY RESTRAINING ORDER AND IMPOUNDMENT, AND ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION

Upon the Complaint filed herein, the Memorandum of Law in Support of Plaintiffs'

Application for a Temporary Restraining Order and Seizure, Impoundment, and Recall Orders

and Order to Show Cause for a Preliminary Injunction, the sworn declaration of Michael Lund

Petersen dated October 2, 2003, and the affidavit of William R. Hansen dated October 2, 2003

and the exhibits thereto, it is hereby:

ORDERED, that pending the formal hearing on plaintiffs' order to show cause for a

preliminary injunction, that defendants, their agents, servants, employees, attorneys and any

person acting in concert or participation with any of them, or having knowledge of this Order by

personal service or otherwise, be and are hereby restrained from copying the plaintiff's copyright

jewelry designs depicted in Exhibit A to this Order and designated by the U.S. Copyright office

with VA-1-208-549 ("PANDORA Beads"), and from:

NY\231759.1

(a)     directly or indirectly infringing plaintiffs' copyrights in the PANDORA Beads or continuing to market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop or manufacture any works derived or copied from the PANDORA Beads or to participate or assist in any such activity;

(b)     continuing to market, offer, sell, dispose of, license, transfer, exploit, advertise, reproduce, develop or manufacture any products that bear, contain or incorporate any unauthorized copy or reproduction of the copyrighted PANDORA Beads or any design substantially similar thereto or derived therefrom;

(c)     using any counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of plaintiffs' Pandora trade dress in any manner or form, on or in connection with any business, products or services, or in the marketing, advertising and promotion of same;

(d)     imitating, copying or making any unauthorized use of the Pandora trade dress or any copy, simulation, variation or imitation thereof;

(e)     making or displaying any statement or representation that is likely to lead the public or the trade to believe that defendant's goods are in any manner associated or affiliated with or approved, endorsed, licensed, sponsored, authorized or franchised by or are otherwise connected with plaintiffs;

(f)     using or authorizing any third party to use in connection with the rendering, offering, advertising, or promotion of any goods, any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices or trade dress which falsely associate such goods or services with plaintiffs or tend to do so;

(g)     diluting the distinctive quality of plaintiffs' Pandora trade dress;

(h)    engaging in any other activity constituting unfair competition with plaintiffs, or constituting an infringement of plaintiffs' Pandora trade dress, or of plaintiffs' rights therein; and

(i)    aiding, assisting or abetting any other party in doing any act prohibited by sub-paragraphs (a) through (h).

IT IS FURTHER ORDERED that the Temporary Restraining Order shall remain in effect until the Court renders a decision on the merits of the relief sought by the Order to Show Cause set forth below, or such further date as set by the Court, unless defendants, or any of them, so stipulate or have not objected to the relief requested.

IT IS FURTHER ORDERED that this Court hereby issues an order pursuant to 17 U.S.C. § 503 directed to the U.S. Marshal for the district or other law enforcement officer where articles to be seized are located, directing the Marshal or other law enforcement officer to immediately go to the premises located at 64-09 Booth Street, Second Floor, Rego Park, NY 11374.

a.    to seize, hold, and impound all catalogues and all jewelry beads bearing the infringing designs;

b.    to seize and hold, subject to the further order of this Court, all advertising and promotional material relating to

c.    to serve on the defendants and on any person in whose possession any infringing articles are found, a copy of this Impoundment Order, and of the Complaint filed in this action on September 25, 2003, and a copy of the Declarations of Michael Lund and William R. Hansen, and exhibits thereto, and on which this Order is based, a copy of the motion papers filed with the Court on October 2, 2003 and a copy of the bond in the amount ordered herein be filed on or before _____, 2003. Plaintiffs' counsel shall supply the Clerk of this Court

sufficient copies of all these papers so that the Clerk may supply them to the Marshal or other

law enforcement officer who will serve them with this Order of Impoundment and Seizure and

provide these copies to the Clerk as soon as possible after this Order is signed.

        d.      to file with this Court a proof of service or return on service indicating

who was served by whom, when service occurred and by what manner.

        e.      to attach to all seized articles a tag or label stating the fact of the seizure

and warning all persons from interfering with the seizure in any manner.

        IT IS FURTHER ORDERED, that defendants or their attorneys show cause at a motion

part of this Court to be held before the Hon. John E. Sprizzo, in Courtroom 705 of the U.S.

District Court, Foley Square, 40 Centre Street, New York, New York on the _7_ day of _October_

2003, at _11:4_ o'clock _._ .m. or as soon thereafter as counsel can be heard, why the Order of

Impoundment and Seizure pursuant to 17 U.S.C. § 503 and Rule 65 of the Federal Rules of Civil

Procedure to seize and impound all articles infringing plaintiffs' copyright and trade dress, the

Recall Order to recall immediately any and all infringing jewelry beads, which are currently in

the possession of defendants, their officers, directors, agents, servants, employees and attorneys

and all persons in active concert and participation with them, were improperly issued; and why

an order should not be issued granting a Preliminary Injunction pursuant to Rule 65 of the

Federal Rules of Civil Procedure, enjoining and restraining defendants, their officers, directors,

agents, servants, employees and attorneys and all persons in active concert and participation with

any of them preliminarily, pending the trial and determination of this action and until further

order of this Court, from, in any manner taking any action listed above in the Temporary

Restraining Order and requiring them to take all actions directed above in the Temporary

Restraining Order.

NY\231759.1

IT IS FURTHER ORDERED that service of this Order and all documents supporting the request for a Preliminary Injunction and Impoundment be made on Ira J. Levy, Esq., Goodwin, Procter, counsel for defendant at their offices at 599 Madison Avenue, New York, New York on _____ 2003 by _____ p.m. by hand delivery which will be sufficient service.

IT IS FURTHER ORDERED that plaintiff furnish a bond or surety in the sum of $ _____ which is deemed adequate security for payment of damages and costs which may be incurred by defendant if it is finally determined that the relief granted herein was improvidently granted.

*Only 10-5-03 at 5:00 PM*

IT IS FURTHER ORDERED that opposition papers, if any, be served by counsel for defendant by hand delivered to counsel for plaintiff no later than ____ p.m. on ____, 2003.

IT IS FURTHER ORDERED, that plaintiffs are given leave to amend the Complaint to name additional parties as defendants, to correct misnomers and to identify other works alleged to have been infringed by defendant.

IT IS FURTHER ORDERED, that the parties on behalf of whom the order is being issued, are authorized under the supervision and with the assistance of the U.S. Marshal, to take all necessary steps to secure and impound the following property:

    (a)    all infringing beads which infringe the plaintiffs' copyright attached hereto as Exhibit A and

    (b)    all advertising and promotional material relating to the infringing beads held by the defendant that may be found on the premises located at 64-09 Booth Street, Second Floor, Rego Park, NY 11374, including breaking open, entering and searching for said property and placing it with an appropriate storage facility; and it if further

ORDERED that anyone interfering with the execution of this Order is subject to arrest by the United States Marshal and/or his or her representative; and it is further

ORDERED that Pandora, on whose behalf the court issues this Order, will account completely for all property impounded pursuant to this order and shall compile a written inventory of all such property and shall provide a copy to the U.S. Marshal, who shall include such a copy with his return to the court; and it is further

ORDERED that Pandora, on whose behalf the Court issues this Order, will act as substitute custodian of any and all property seized pursuant to this Order and shall hold harmless the U.S. Marshals Service and its employees from any and all claims, asserted in any court or tribunal, arising from any acts, incidents, or occurrences in connection with the seizure and possession of the defendant property, including any third-party claims.

Dated: New York, New York
October 2, 2003

6: 00 P. M

_____
United States District Judge

**EXHIBIT I**

**Complaint against Chamilia LLC**

**03 CV 7587 (JES) (S.D.N.Y.)**

AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

**SOUTHERN** _____ **DISTRICT OF** _____ **NEW YORK**

PANDORA JEWELRY, LLC and
PANDORA SMYKKER USA APS,

        Plaintiffs,

        **V.**

CHAMILIA LLC,

        Defendant.

### SUMMONS IN A CIVIL CASE

CASE NUMBER:

03 CV 7587
(JES)
Sprizzo

TO: (Name and address of defendant)

    Chamilia LLC
    64-09 Booth Street, Second Floor
    Rego Park, New York 11374

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

    William R. Hansen, Esq.
    DUANE MORRIS LLP
    380 Lexington Avenue
    New York, New York 10168

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

**J. MICHAEL McMAHON**

_____
CLERK

_Jessica Rosa_
(BY) DEPUTY CLERK

SEP. 2 5 2003

_____
DATE

DUANE MORRIS LLP
William R. Hansen (WH-9446)
Gianfranco G. Mitrione (GM-8618)
380 Lexington Avenue
New York, New York  10168
(212) 692-1000
Attorneys for Plaintiffs



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------
PANDORA JEWELRY, LLC and
PANDORA SMYKKER USA APS,

                Plaintiffs,

     -against-

CHAMILIA LLC,

             Defendant.
------------------------------------------------------------X

**03 CV 7587**

**COMPLAINT**

**JUDGE SPRIZZO**

       Plaintiffs, Pandora Jewelry, LLC and Pandora Smykker USA Aps, by their undersigned

attorneys, Duane Morris LLP, for their Complaint allege as follows:

<u>**SUBSTANCE OF THE ACTION**</u>

     1.     This is an action for copyright infringement, trade dress infringement, unfair

competition, false designation of origin, statutory anti-dilution and unfair competition, common

law unfair competition, deceptive trade practices, dilution, tarnishment and injury to business

reputation under the laws of the State of New York.  Plaintiffs bring this action based on

defendant's unauthorized manufacture, promotion, distribution and sale of jewelry beads, which

provides the basis for plaintiffs' claims for copyright infringement under the Copyright Act of

1976, 17 U.S.C. § 101 <u>et seq.</u>, for federal trade dress infringement, unfair competition and false

designation of origin under Section 43(a) of the Trademark Act of 1946 (the "Lanham Act"), 15

U.S.C. § 1125(a) and for substantial and related claims of unfair competition, deceptive trade practices, dilution, tarnishment and injury to business reputation under the laws of the State of New York. Plaintiffs seek injunctive relief and damages.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction under Section 39 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1121, and original jurisdiction under Sections 1338(a) and 1338(b) of the Judicial Code, 28 U.S.C. § 1338(a) and § 1338(b), and under principles of supplementary jurisdiction, 28 U.S.C. § 1367. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) in that the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs and the parties are citizens of different states. Venue properly lies in this District under Sections 1391(b) and (c) and 1400(a) of the Judicial Code, 28 U.S.C. § 1391(b), § 1391(c) and § 1400(a) because defendant does business in and/or has substantial contacts with and/or may be found in the Southern District of New York, and a substantial portion of the events at issue have arisen and/or will arise in this judicial district.

## PARTIES

3.     Plaintiff, Pandora Jewelry, LLC ("Pandora"), is a limited liability company duly organized and existing under the laws of Maryland with offices at 10015 Old Columbia Road, Suite B-245, Columbia, Maryland 21046. Plaintiff, Pandora Smykker USA Aps ("Pandora Smykker"), is a holding company duly organized and existing under the laws of the Kingdom of Denmark with offices at Vedbaek Strandvej 488, Copenhagen, Denmark, DK-2950. Pandora is a wholly owned subsidiary of Pandora Smykker and is the exclusive distributor of the PANDORA Beads in North America. Plaintiffs do substantial business in this District. Plaintiffs are referred collectively hereinafter as "Pandora" or "plaintiffs."

4.      Upon information and belief, defendant, Chamilia LLC ("Chamilia") is a company duly organized and existing under the laws of New York, having its principal place of business at 64-09 Booth Street, Second Floor, Rego Park, New York 11374. Defendant does substantial business in this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

A.    Plaintiffs' Activities

5.      Pandora is a leading designer and retailer of jewelry in Northern Europe with extensive sales made into the United States and in this District. Specifically, Pandora is engaged in the business of creating, manufacturing, marketing, distributing and selling custom designed bracelets and necklaces featuring sterling silver and 14-karat gold jewelry beads.

6.      With regard to the specialty bracelets, necklaces and beads, Pandora is a recognized leader in creating jewelry designs which are original and novel and particularly appealing to customers and potential customers who appreciate elegant and valuable jewelry which are inspired by a distinctive Scandinavian style and design developed by Pandora.

7.      Since long prior to the acts of defendant complained of herein, Pandora has sold and continues to sell its finished goods employing these original and distinctive jewelry designs to retailers and consumers in Northern Europe and in the United States and in this District. As a result of the public's acceptance of these designs of superior skill and distinctive styling, Pandora's products are much sought after by such retailers and their customers and jewelry aficionados who look for elegance and style in their necklaces and bracelets strung with silver and 14-karat gold jewelry beads.

8.      Since long prior to the acts of defendant complained of herein, Pandora has sold and continues to sell its beaded necklaces and bracelets in a distinctive trade dress. Plaintiffs'

trade dress consists of the distinctive combination of beads linked together with highly original distinctive jewelry creating a recognizable and unique combination of colors and designs. Annexed hereto as Exhibit 1 is a printout of plaintiff's catalog of silver and 14-karat gold jewelry showing plaintiffs' trade dress.

9.    In Denmark, in 1999, plaintiff Pandora Smykker designed and created original jewelry designs, comprising jewelry beads, spacers, necklaces and bracelets, entitled Pandora Beads (hereinafter "PANDORA Beads"). The said work was created by Pandora Smykker and is copyrightable subject matter under the laws of the Kingdom of Denmark and the United States. The said work was published in Denmark in February 1, 2000 and is protected against unauthorized copying by the laws of the Kingdom of Denmark. Products bearing the jewelry designs have been sold in the United States since November, 2002. Annexed hereto as Exhibit 2 is a copy of the PANDORA Beads copyrighted designs used on the silver and 14-karat jewelry offered for sale and sold by Pandora.

10.    Pandora is currently and at all relevant times has been the sole proprietor of all right, title and interest in and to the copyright in the PANDORA Beads. Pandora has produced and distributed the PANDORA Beads in strict conformity with the provisions of the Danish copyright law and the Copyright Act of 1976 and all other laws governing copyright.

11.    Pandora operates a website at the domain name address www.pandora-jewelry.com, which serves to advertise and promote its custom jewelry featuring the PANDORA Beads designs. Annexed hereto as Exhibit 3 is a print-out of plaintiffs' web site located at www.pandora-jewelry.com.

B.    Defendant' Unlawful Activities

    12.    Upon information and belief, defendant manufactures, distributes and sells custom jewelry products throughout the United States.  According to its website located at www.chamilia.com, Chamilia, for over three decades, has been selling jewelry using silver and 14-karat gold handmade by jewelry craftsmen.

    13.    Prior to the acts complained of herein, Defendant had been designated by Pandora to distribute Pandora's genuine products in the U.S. and did so commencing in November, 2002.

    14.    Upon information and belief, among the products manufactured, distributed and sold by defendant are silver and 14-karat gold beads threaded onto necklaces and bracelets.

    15.    Upon information and belief, after the creation and publication of plaintiffs' PANDORA Beads, and with full knowledge of their ownership, the defendant knowingly and willfully copied plaintiffs' PANDORA Beads jewelry designs in their entirety and applied them to silver and 14-karat gold beads.  Annexed hereto as Exhibit 4 is a color print-out of defendant's catalog copying plaintiffs' PANDORA Beads.  Specifically, the following Item Numbers are accused of infringing the exclusive rights of plaintiff to the copying, use and sale of the PANDORA Beads:

| Item No. | Item No. | Item No. | Item No. | Item No. | Item No. | Item No. |
|----------|----------|----------|----------|----------|----------|----------|
| G-1 | G-13 | H-1 | I-1 | J-1 | J-13 | L-1 |
| G-2 | G-14 | H-2 | I-2 | J-2 | K-1 | L-2 |
| G-3 | G-15 | H-3 | I-3 | J-3 | K-2 | L-3 |
| G-4 | G-16 | H-4 | I-4 | J-4 | K-3 | L-4 |
| G-5 | G-17 | H-5 | I-5 | J-5 | K-4 | L-5 |
| G-6 | G-18 | H-6 | I-6 | J-6 | K-5 | L-6 |
| G-7 | G-19 | H-7 | I-7 | J-7 | K-6 | L-7 |
| G-8 | G-20 | H-8 | I-8 | J-8 | K-7 | L-8 |
| G-9 | G-21 | H-9 | I-9 | J-9 | K-8 | |
| G-10 | G-22 | H-10 | I-10 | J-10 | K-9 | |
| G-11 | G-24 | H-11 | I-11 | J-11 | K-10 | |
| G-12 | G-27 | H-12 | I-12 | J-12 | K-11 | |

16.     Upon information and belief, defendant advertises and markets its infringing silver and 14-karat gold beads through the use of its website located at www.chamilia.com. Annexed hereto as Exhibit 5 is a print-out from defendant's website showing that defendant's products are copies of plaintiffs' PANDORA Beads and are using plaintiffs' trade dress.

17.     Upon information and belief, that since at least as early as August 23, 2003, defendant has been reproducing, distributing, promoting and offering for sale illegal and unauthorized copies of the PANDORA Beads.

18.     Upon learning of defendant's copying of the PANDORA Beads, on August 26, 2003, plaintiffs' patent counsel, William S. Ramsey, PH.D, sent a letter to defendant demanding, in relevant part, that it cease infringing plaintiffs' PANDORA Beads and trade dress.  A copy of that letter is annexed hereto as Exhibit 6.

19.     After defendant advised Dr. Ramsey that its attorney would call him, defendant's attorney never called and defendant has not ceased copying plaintiffs' PANDORA Beads and infringing plaintiffs' trade dress.

20.     Despite being put on notice of the strength of plaintiffs' rights and goodwill in their original and novel jewelry designs, upon information and belief, defendant continues to expand its distribution of products copying plaintiffs' PANDORA Beads and trade dress in the United States.

21.     Upon information and belief, defendant copied the PANDORA Beads for the specific purposes of infringing plaintiffs' copyrights and selling illegal and unauthorized copies of the PANDORA Beads.

22.     Upon information and belief, defendant is attempting to pass its products off as if they were plaintiffs' jewelry products in a manner calculated to deceive plaintiffs' customers and

members of the general public, in that defendant has copied the design of plaintiffs' silver and 14-karat gold beads of the PANDORA beads in an effort to make defendant's infringing products confusingly similar to plaintiffs'.

23.    The natural, probable and foreseeable result of defendant's wrongful conduct has deprived and will continue to deprive plaintiffs of the benefits of selling plaintiffs' PANDORA Beads and its other products, to deprive plaintiffs of goodwill, and to injure plaintiffs' relations with present and prospective customers.

24.    Upon information and belief, plaintiffs have lost and will continue to lose substantial revenues from the sale of the PANDORA Beads and other products and will sustain damage as a result of defendant's wrongful conduct and defendant's production and sale of these infringing products.  Defendant's wrongful conduct has also deprived and will continue to deprive plaintiffs of opportunities for expanding its goodwill.

25.    Upon information and belief, that unless enjoined by this Court, defendant intends to continue its course of conduct and to wrongfully use, infringe upon, sell and otherwise profit from plaintiffs' PANDORA Beads and works derived from it.  As a direct and proximate result of the acts of defendant alleged above, plaintiffs have already suffered irreparable damage and have sustained lost profits.  Plaintiffs have no adequate remedy at law to redress all of the injuries that defendant has caused and intends to cause by its conduct.  Plaintiffs will continue to suffer irreparable damage and sustain lost profits until defendant's actions alleged above are enjoined by this Court.

**FIRST CLAIM FOR RELIEF**
**COPYRIGHT INFRINGEMENT (17 U.S.C. § 101 et seq.)**

26.    Plaintiffs reallege paragraphs 1 through 25 above and incorporate them by reference as if fully set forth herein.

27.     As provided in the <u>Berne Convention</u>, which both the U.S.A. and the Kingdom of Denmark are signators, Pandora is the owner of copyrights obtained under Danish law which are recognized as copyrighted subject matter under U.S. Copyright Law permitting the claim to be filed under 17 U.S.C. § 411(a).

28.     The PANDORA Beads were introduced by Pandora at least as early as 1999 in Denmark and have been used to produce plaintiffs' silver and 14-karat gold jewelry beads and sold since that time.

29.     The PANDORA Beads were first published in Denmark on February 1, 2000. The PANDORA Beads are original works of authorship, embodying copyrightable subject matter, subject to the full protection of the United States copyright laws. Pandora is currently and at all relevant times has been the sole and exclusive owner of all right, title and interest in and to the copyright in the PANDORA Beads.

30.     Upon information and belief, as a result of the open use, display and sales of plaintiffs' silver and 14-karat gold jewelry beads exhibiting the copyrighted PANDORA Beads designs and the striking similarity of defendant's silver and 14-karat gold jewelry beads, defendant had access to the copyrighted PANDORA Beads prior to the sale or distribution of defendant's silver and 14-karat gold jewelry beads.

31.     Upon information and belief, after receiving notice of plaintiffs' rights to the PANDORA Beads, defendant, without the permission or authorization of plaintiffs, began and has continued to reproduce original elements of Pandora's copyrighted PANDORA Beads and to promote and offer for sale silver and 14-karat gold jewelry beads that incorporate original elements of Pandora's copyrighted PANDORA Beads.

32.    Upon information and belief, defendant has profited from the sales of its silver and 14-karat gold jewelry beads which make use of plaintiffs' copyrighted PANDORA Beads.

33.    Upon information and belief, defendant, unless enjoined by this Court, intends to continue its course of conduct and to wrongfully use, infringe upon, distribute and otherwise profit from Pandora's copyrighted PANDORA Beads.

34.    The natural, probable and foreseeable results of defendant's wrongful conduct has deprived and continues to deprive Pandora of the rights and benefits granted to it under copyright, including the exclusive right to use, reproduce and exploit Pandora's copyrighted PANDORA Beads and to create derivative works based on those designs, to deprive Pandora of the goodwill in the copyrighted designs, and to injure Pandora's relations with present and prospective customers.

35.    By its actions as alleged above, defendant has infringed and violated Pandora's exclusive rights under copyright in violation of the Copyright Act, 17 U.S.C. § 501, by producing, distributing and selling upon the market silver and 14-karat jewelry beads that bear a design that is strikingly similar to Pandora's copyrighted PANDORA Beads, all without Pandora's authorization or consent.

36.    Upon information and belief, defendant's infringement of Pandora's copyright is willful and deliberate and defendant have profited at the expense of Pandora.

37.    Defendant's conduct has caused and will continue to cause irreparable injury to Pandora unless enjoined by this Court.  Pandora has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
## FEDERAL TRADE DRESS INFRINGEMENT (15 U.S.C. § 1125(a)(1))

38.    Plaintiffs reallege paragraphs 1 through 37 above and incorporate them by reference as if fully set forth herein.

39.    Defendant's use of a copy, variation, simulation or colorable imitation of the Pandora trade dress for its silver and 14-karat gold jewelry beads infringes plaintiffs' exclusive rights in the Pandora trade dress, is likely to cause confusion, mistake, or deception, and constitutes trade dress infringement, in violation of Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1).

40.    Defendant has used a copy, variation, simulation or colorable imitation of the trade dress of plaintiffs' silver and 14-karat gold jewelry beads with full knowledge of the extensive prior use of the Pandora trade dress by plaintiffs.

41.    Defendant's conduct is causing immediate and irreparable injury to plaintiffs, and to their good will and reputation, and will continue both to damage plaintiffs and to confuse the public unless enjoined by this Court. Plaintiffs have no adequate remedy at law.

### THIRD CLAIM FOR RELIEF
### FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a)(1)(A))

42.    Plaintiffs reallege paragraphs 1 through 41 above and incorporate them by reference as if fully set forth herein.

43.    Defendant's use of a copy, variation, simulation or colorable imitation of plaintiffs' Pandora trade dress for their silver and 14-karat gold jewelry beads constitutes a false designation of origin, a false description and representation of defendant's goods and a false representation that defendant's goods and are sponsored, endorsed, licensed, authorized, or affiliated or connected with plaintiffs.

44.    Upon information and belief, defendant has used a copy, variation, simulation or colorable imitation of plaintiff's Pandora trade dress with full knowledge of the extensive prior use of the Pandora trade dress by plaintiffs.

45.     Upon information and belief, defendant has knowingly adopted and used a copy, variation, simulation or colorable imitation of plaintiffs' Pandora trade dress with full knowledge of the long and extensive prior use of the Pandora trade dress of plaintiffs.

46.     Defendant's acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

47.     Defendant's conduct has caused and will continue to cause irreparable injury to plaintiffs unless enjoined by this Court. Plaintiffs have no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF
### COMMON LAW UNFAIR COMPETITION

48.     Plaintiffs reallege paragraphs 1 through 47 above and incorporate them by reference as if fully set forth herein.

49.     Upon information and belief, defendant was aware of plaintiffs' prior use of the Pandora trade dress, and adopted and used the similar trade dress in disregard of plaintiffs' prior use and reputation. Upon information and belief, defendant's intentional use of a similar trade dress has resulted in the knowing misappropriation of and trading upon plaintiffs' goodwill and business reputation at plaintiffs' expense and at no expense to defendant. The effect of defendant's misappropriation of the goodwill symbolized by the Pandora trade dress is to unjustly enrich defendant, damage plaintiffs and confuse and/or deceive the public.

50.     Defendant's conduct constitutes unfair competition with plaintiffs, all of which has caused and will continue to cause irreparable injury to plaintiffs' good will and reputation unless enjoined by this Court. Plaintiffs have no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF
## DILUTION, TARNISHMENT AND INJURY TO BUSINESS REPUTATION
### (N.Y. General Business law § 360-1)

51.    Plaintiffs reallege paragraphs 1 through 50 above and incorporate them by reference as if fully set forth herein.

52.    Defendant's use of a copy, variation, simulation or colorable imitation of plaintiffs' Pandora trade dress has caused and will continue to cause the dilution of the distinctive quality of plaintiffs' Pandora trade dress and to injure plaintiffs' business reputation.

53.    Defendant's use of a copy, variation, simulation or colorable imitation of plaintiffs' Pandora trade dress in connection with goods not controlled or otherwise subject to plaintiffs' quality control has caused and will continue to cause dilution or and/or injury to the reputation of plaintiffs and plaintiffs' goods.

54.    By reason of the foregoing, plaintiffs are entitled to injunctive relief under New York General Business Law §360-1.

## SIXTH CLAIM FOR RELIEF
## DECEPTIVE TRADE PRACTICES (N.Y. General Business Law § 349)

55.    Plaintiffs reallege paragraphs 1 through 54 above and incorporate them by reference as if fully set forth herein.

56.    By reason of the acts and practices set forth above, defendant has and is engaged in deceptive trade practices or acts in the conduct of a business, trade or commerce, or furnishing of goods and/or services, in violation of § 349 of the New York General Business Law.

57.    The public is likely to be damaged as a result of the deceptive trade practices or acts engaged in by the defendant.

58.    Unless enjoined by the Court, defendant will continue said deceptive trade practices or acts, thereby deceiving the public and causing immediate and irreparable damage to the plaintiffs. The plaintiffs have no adequate remedy at law.

WHEREFORE, plaintiffs demand judgment as follows:

1.    Preliminarily and permanently enjoining defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with defendant, pursuant to 17 U.S.C. § 502(a) and 15 U.S.C. § 1116, from:

(a)    directly or indirectly infringing plaintiffs' copyrights in the PANDORA Beads or continuing to market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop or manufacture any works derived or copied from the PANDORA Beads or to participate or assist in any such activity;

(b)    continuing to market, offer, sell, dispose of, license, transfer, exploit, advertise, reproduce, develop or manufacture any products that bear, contain or incorporate any unauthorized copy or reproduction of the copyrighted PANDORA Beads or any design substantially similar thereto or derived therefrom;

(c)    using any counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of plaintiffs' Pandora trade dress in any manner or form, on or in connection with any business, products or services, or in the marketing, advertising and promotion of same;

(d)     imitating, copying or making any unauthorized use of the Pandora trade

dress or any copy, simulation, variation or imitation thereof;

(e)     making or displaying any statement or representation that is likely to lead

the public or the trade to believe that defendant's goods are in any manner

associated or affiliated with or approved, endorsed, licensed, sponsored,

authorized or franchised by or are otherwise connected with plaintiffs;

(f)     using or authorizing any third party to use in connection with the

rendering, offering, advertising, or promotion of any goods, any false

description, false representation, or false designation of origin, or any

marks, names, words, symbols, devices or trade dress which falsely

associate such goods or services with plaintiffs or tend to do so;

(g)     diluting the distinctive quality of plaintiffs' Pandora trade dress;

(h)     engaging in any other activity constituting unfair competition with

plaintiffs, or constituting an infringement of plaintiffs' Pandora trade

dress, or of plaintiffs' rights therein; and

(i)      aiding, assisting or abetting any other party in doing any act prohibited by

sub-paragraphs (a) through (h).

2.      Requiring defendant's infringing products including all molds and casts,

catalogues and all jewelry beads bearing the infringing designs be first, during the pendency of

this action, be impounded on such terms as this Court may deem reasonable and thereafter be

destroyed by all reasonable means pursuant to 17 U.S.C. § 503.

3.      Requiring defendant to formally abandon with prejudice any and all

applications to register any copyright consisting of, or containing, the PANDORA Beads either alone or in combination with other words and/or designs.

4.    Requiring defendant to recall immediately any and all products that feature or bear or are packaged in materials bearing any designation or mark including or incorporating the Pandora trade dress from all of their distributors, retail establishments or wholesale establishments wherever located in the U.S., and to direct all such distributors, retail establishments or wholesale establishments to cease forthwith the distribution or sale of any and all products or goods featuring or bearing any designation including or incorporating the Pandora trade dress, and to immediately remove them from public access.

5.    Directing that defendant deliver for destruction all products and goods, advertisements for such, and other related materials in its possession, or under its control, incorporating or bearing simulations, variations or colorable imitations of plaintiffs' Pandora trade dress or PANDORA Beads, used alone or in combination with other words and/or designs.

6.    Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any product or service manufactured, sold, distributed, licensed or otherwise offered, circulated or promoted by defendant is authorized by plaintiffs or related in any way to plaintiffs' products.

7.    Directing that defendant file with the Court and serve upon plaintiffs' counsel within thirty (30) days after entry of such judgment, a report in writing under oath, setting forth in detail the manner and form in which defendant has complied therewith.

8.    Awarding plaintiffs such damages as they have sustained or will sustain by reason of defendant's copyright infringement, trademark infringement, trade dress infringement, dilution and unfair competition.

9.    Awarding plaintiffs all gains, profits, property and advantages derived by defendant from such conduct; and pursuant to 15 U.S.C. § 1117, awarding plaintiffs an amount up to three times the amount of the actual damages sustained as a result of defendant's violation of the Lanham Act.

10.    Awarding plaintiffs all gains, profits, property and advantages obtained or derived by the defendant from its acts of copyright infringement or, in lieu thereof, should plaintiffs so elect, such statutory damages as the Court shall deem proper, as provided in 17 U.S.C. §504(c), including damages for willful infringement of up to $150,000 for each infringement.

11.    Awarding plaintiffs exemplary and punitive damages to deter any future willful infringement as the Court finds appropriate.

12.    Awarding plaintiffs their costs and disbursements incurred in this action, including their reasonable attorneys' fees, as provided in 17 U.S.C. § 505 and 15 U.S.C. § 1117.

13.    Awarding plaintiffs interest, including pre-judgment interest, on the foregoing sums.

Dated:  New York, New York
        September 25, 2003

Respectfully submitted,

DUANE MORRIS LLP

By:  _William R. Hansen_

William R. Hansen (WH-9446)
Gianfranco G. Mitrione (GM-8618)
380 Lexington Avenue
New York, New York  10168
(212) 692-1000

Attorneys for Plaintiffs
Pandora Jewelry, LLC and
Pandora Smykker USA Aps