LATHROP & GAGE L.C.
William R. Hansen (WH-9446)
Gianfranco G. Mitrione (GM-8168)
Bridget A. Short (BS-4191)
230 Park Avenue, Suite 1847
New York, New York 10169
(212) 850-6220 (tel)
(212) 850-6221 (fax)

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X
CHAMILIA, LLC,                                : Civil Action No.:
                                              : 04 CV 06017 (KMK)
                        Plaintiff,            :
                                              :
        -against-                             : ECF CASE
                                              :
PANDORA JEWELRY, LLC,                         :
                                              :
                        Defendant.            :
----------------------------------------------------------------X

### SUPPLEMENTAL DECLARATION OF MICHAEL LUND PETERSEN IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MICHAEL LUND PETERSEN does hereby declare:

1.  I submit this supplemental declaration in support of defendant's motion for summary judgment. I understand that my original declaration dated January 12, 2005 is also submitted to the Court.

2.  I am a principal and Sales Director of Pandora Jewelry, LLC ("Pandora Jewelry") and an officer of Pandora Smykker USA Aps, ("Pandora Smykker") (collectively, "Pandora"). Pandora Jewelry is a wholly owned subsidiary of Pandora Smykker, which has its headquarters in Copenhagen, in the Kingdom of Denmark. Our offices in the United States of America are in Columbia, Maryland, which is located near the District of Columbia. I am a Danish citizen. I am familiar with the English language and use it in the business conducted in the U.S. and around the

world. I have read this in the English language and believe it truly represents the facts as I know them.

3. I have personal knowledge of the facts stated herein.

4. Since the filing of Pandora's patent application in July, 2003 entitled "NECKLACES AND BRACELETS WITH KEEPERS," assigned Application No. 10/623,641, Pandora has consistently maintained that it has a "patent pending" for the method by which the jewelry beads, clips and spacers are fastened to the bracelets and necklaces.

5. The plaintiff in this case, Chamilia LLC, was notified by letter dated August 26, 2003 in which we demanded that it cease infringing Pandora's copyrighted jewelry designs that Pandora had a "nonprovisional U.S. Patent Application which protects the functional aspects of the necklaces and bracelets" manufactured and sold by Pandora. See Exhibit G attached to my Declaration dated January 12, 2005.

6. Once the patent application was filed, Pandora began using the legend "patent pending" on all of its promotional and advertising materials used in connection with the distribution and sale of the Pandora jewelry line. See Exhibit D attached to my Declaration dated January 12, 2005. Pandora has continued to provide notice to the public that it has a "patent pending" by creating and distributing promotional and advertising materials bearing the legend "patent pending." For example, print advertising promoting Pandora's jewelry products and bearing the legend "patent pending" has run in national magazines featuring articles and information concerning fashion and accessories, including jewelry products, such as InStyle Magazine, Glamour Magazine, Teen Vogue, American Idol Magazine and Lou Lou Magazine. Below is a representative list of magazines and the dates of circulation which featured or will feature a Pandora advertisement promoting the PANDORA Mark and jewelry products: InStyle Magazine – November 2004, March 2005, August

and November 2005; Glamour Magazine – February, March, and September 2005; American Idol Magazine – January and February 2005; Lou Lou Magazine – April and June 2005; Teen Vogue - March and April 2005; and Modern Jeweler – April and May 2005. Copies of these advertisements are attached hereto as Exhibit L.

7. Furthermore, well before Chamilia initiated this lawsuit against Pandora, Pandora has received unsolicited media attention in which Pandora's "patent pending" was clearly mentioned. For example, in late 2003, Gift Beat magazine, which features articles and an online message board concerning accessories, gifts and crafts, featured an article about Pandora and its jewelry products and clearly stated that Pandora "has a patent-pending on its bracelet design." See Exhibit K attached to the Declaration of Jody Henderson dated January 12, 2005 for a copy of the Gift Beat article.

8. None of Pandora's promotional and advertising materials appearing in the marketplace or any of the unsolicited media coverage remotely suggests that Pandora owns an issued patent. To the contrary, Pandora has made every effort to make it clear in the marketplace that it has a "patent pending" or "patent application" for its jewelry product and has never patent rights in an issued U.S. patent.

9. In fact, shortly after Pandora's patent application had been published by the U.S. Patent and Trademark Office on July 29, 2004, as Publication No. US 2004/0144131-A1, at my request, our counsel notified manufacturers with lines of jewelry which manufacture and sell necklaces and bracelets in the United States which appear to utilize substantially the same construction and perform the same function as Pandora's patent pending for its necklaces and bracelets of Pandora's published patent application. The manufacturers who received notice by letter that Pandora's patent application had been published included Chamilia, as well as, AMORINI INC. of Novato, California; BIAGI JEWELRY of Oldsmar, Florida; PASHA JEWELRY of Manhattan

3

Beach, California; PUKA CREATIONS of San Francisco, California; ZO BRANDS, LLC of Fort Lauderdale, Florida; and ZOPPINI, LLC of Fort Lauderdale, Florida. See Exhibit F attached to my Declaration dated January 12, 2005 for a copy of the "patent pending" publication notice to Chamilia.

10. I also instructed our counsel to notify numerous distributors and retailers across the United States of Pandora's published patent application which were distributing and selling lines of jewelry, including, necklaces and bracelets which appear to utilize substantially the same construction and perform the same function as Pandora's patent pending for its necklaces and bracelets. I understand that a copy of the letters sent to the manufacturers identified above and many distributors and retailers in the U.S. were produced to Chamilia during the discovery phase of this case.

11. One of the retail customers that received notice that Pandora's patent application was published is a store named Carlos Italian Charm Shop in Rancho Cordova, California. Carlos Italian Charm Shop was a customer of Pandora in early 2004. When Carlos Italian Charm Shop could not reach an agreement with Pandora as to exclusivity, Pandora decided not to continue supplying the store with Pandora jewelry products.

12. Shortly after the patent application was published, on August 16, 2004, I telephoned Donna Renee Carlos of Carlos Italian Charm Shop and left her a voice mail message to inform her that Pandora's patent application had been published and that the jewelry products she was selling could expose her to monetary damages.

13. I never informed Ms. Carlos that Pandora owned a patent. In fact, I invited Ms. Carlos to telephone me back so that we could discuss the matter further and clear up any misunderstanding. Instead, on the same day, Ms. Carlos sent me a fax requesting information concerning any patent rights. As requested, on August 18, 2005, Pandora's counsel sent a letter to Carlos Italian Charm

Shop providing notice that Pandora's patent application had been published. Attached to the August 18, 2005 letter was a copy of the U.S. Patent Application Publication issued by the U.S. Patent and Trademark Office relating to Pandora's patent application. Attached as Exhibit M is a copy of the August 18, 2005 letter to Carlos Italian Charm Shop.

14. I understand that Chamilia has informed the Court that Pandora's "Terms and Conditions" agreements with its retailer customers are "part of a scheme to disparage Chamilia" and an attempt to compete with Chamilia. This is not so. Pandora adopted the "Terms and Conditions" agreements to further its own lawful business objectives.

15. Pandora adopted the "Terms and Conditions" agreements in order to control the integrity and quality of its products in which it has invested so much time, money and resources. By this agreement, Pandora does not allow its retail customers who sell the Pandora line of jewelry products to also sell jewelry products manufactured by the companies referenced in paragraph 9 above, as well as other companies which manufacture and sell jewelry products that appear to utilize substantially the same construction and perform the same function as described in Pandora's published patent application.

16. The reasons for Pandora's implementation of the "Terms and Conditions" agreements with its retail customers are numerous and none include a "scheme to disparage" Chamilia. First of all, since most of the competitors' jewelry products at issue here are not branded, Pandora's exclusivity agreements prevents retailers from advertising the Pandora name and its unique jewelry products in order to sell a highly similar and incompatible competing jewelry product manufactured by one of the companies identified in paragraph 9 above.

17. Also, to protect the integrity of our Pandora's product warranty, which does not cover defects or malfunctions resulting from a customer threading or using a competing company's jewelry

product on a Pandora jewelry chain, we require our retail customer to only carry Pandora jewelry products. Pandora has received a massive amount of complaints from customers that jewelry beads, spacers or clips manufactured and sold by other jewelry companies have gotten stuck or jammed on a Pandora jewelry chain. We do not offer refunds or replace the Pandora jewelry products returned by consumers whose Pandora jewelry chain has been damaged by the use of a competitor's jewelry bead, spacer or clip. The customers are informed that such use by them voids the Pandora products warranty. We work hard to make sure that Pandora consumers use Pandora beads, spacers and clips and remain happy.

18. The exclusivity requested of our retail customers was also, in part, established to balance the territorial exclusivity provided to our retail customers. By agreeing to carry Pandora jewelry products exclusively, retailers receive Pandora's commitment to not open another retail store in that territory.

19. In March of this year, a Pandora sales representative on the West Coast, Steve Glueck, received quite a few complaints from his retail store customers that Chamilia sales representatives approached their stores in an intimidating manner. I am told that the Chamilia sales representatives were telling several of Pandora's retail customers, which exclusively sell the Pandora line of jewelry products in accordance with Pandora's "Terms and Conditions" agreement, that they were "stupid" for not also purchasing Chamilia's jewelry products and selling those alongside the Pandora products in their stores since other retail locations were doing the same.

20. In an effort to address Pandora's retail customers' concerns and to remind the retail customers to adhere to Pandora's "Terms and Conditions" agreement, I authorized Mr. Glueck to send a letter dated April 12, 2005 to all of his Pandora retail accounts on the West Coast.

I DECLARE under penalty of perjury that the foregoing is true and correct.

Dated: Miami, Florida
July 15, 2005

_____
Michael Lund Petersen

NYDOCS 9384v1