IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X

CHAMILIA, LLC,                          :     Civil Action No.:
                                        :     04 CV 06017 (KMK)
          Plaintiff,            :
                                        :
  -against-                           :     ECF CASE
                                        :
PANDORA JEWELRY, LLC,                   :
                                        :
          Defendant.            :

-------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

LATHROP & GAGE L.C.
William R. Hansen (WH-9446)
Gianfranco G. Mitrione (GM-8168)
Bridget A. Short (BS-4191)
230 Park Avenue, Suite 1847
New York, New York 10169
(212) 850-6220 (tel)
(212) 850-6221 (fax)

Attorneys for Defendant

Of counsel:
Travis W. McCallon
LATHROP & GAGE L.C.
Kansas City, Missouri

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...................................................................................................1

FACTS.........................................................................................................................................2

ARGUMENT...............................................................................................................................2

    A.    THE STANDARD FOR SUMMARY JUDGMENT...................................2

    B.    CHAMILIA'S UNFAIR COMPETITION CLAIM/FALSE
        ADVERTISING UNDER THE LANHAM ACT FAILS ...........................4

        1.    Chamilia Cannot Sustain Any Proof of False or Misleading
            Statements by Pandora.......................................................................4

        2.    Chamilia Fails to Show Sufficient "Advertising or
            Promotion"..........................................................................................6

        3.    Pandora's "Terms and Conditions Letters" Do Not Support
            Chamilia's Claim ...............................................................................9

    C.    CHAMILIA FAILS TO SUSTAIN ITS COMMON LAW
        UNFAIR COMPETITION CLAIM ............................................................9

    D.    CHAMILIA'S FALSE PATENT MARKING CLAIM SHOULD
        BE DISMISSED ........................................................................................10

    E.    CHAMILIA'S SLANDER OF TITLE CLAIM DERSERVES
        DISMISSAL ...............................................................................................12

    F.    CHAMILIA'S DEFAMATION CLAIM FAILS ON ALL POINTS ........13

        1.    New York Statutory Privilege to Communicate Allows
            Dismissal As A Matter of Law ........................................................13

        2.    New York's Common Law Privilege Supports Pandora's
            Motion ...............................................................................................14

        3.    Chamilia Has No Admissible Evidence of Publication of
            Statements Other Than Those Protected by Privilege...................15

        4.    Chamilia Has No Evidence of "Fault" on the Part of
            Pandora .............................................................................................15

        5.    Chamilia Has Shown No Special Damage Required To
            Escape Summary Judgment..............................................................16

G.  CHAMILIA'S CLAIM OF DISPARAGEMENT FAILS ........................ 17

    1.  There Is No "Malice" Established ................................. 18

    2.  There Is No Proof of Special Damages ......................... 19

H.  THE CLAIM FOR TORTIOUS INTERFERENCE SHOULD BE DISMISSED ........................................................................... 19

    1.  Chamilia Offers No Admissible Evidence of Pandora's Intent ................................................................................ 20

    2.  Chamilia Has Failed to Identify Any Specific Loss ...................... 21

    3.  Chamilia Fails to Show "Dishonest, Unfair or Improper Means" ........................................................................... 22

I.  CHAMILIA'S DECLARATORY JUDGMENT IS NOT RIPE .............. 23

CONCLUSION .................................................................................................. 24

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

Accent Designs, Inc. v. Jan Jewelry Designs, Inc.,
827 F. Supp. 957 (S.D.N.Y. 1993) ...........................................................................8, 11, 12

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ................................................................................................................3

Blank v. Pollack,
916 F. Supp. 165 (N.D.N.Y. 1996)......................................................................................10

Borthwick v. First Georgetown Securities, Inc.,
892 F.2d 178 (2d Cir. 1989) ...................................................................................................3

Boule v. Hutton,
320 F. Supp. 2d 132 (S.D.N.Y. 2004) .................................................................................10

Carvel Corp. v. Noonan,
350 F.3d 6 (2d Cir. 2003) .....................................................................................................20

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) ................................................................................................................3

County Vanlines, Inc. v. Experian Info. Solutions, Inc.,
317 F. Supp. 2d 383 (S.D.N.Y. 2004) .................................................................................18

Dillon v. City of New York,
261 A.D.2d 34 (1st Dep't 1999)............................................................................................13

Dister v. Continental Group, Inc.,
859 F.2d 1108 (2d Cir. 1998) ...............................................................................................21

Drug Research Corp. v. Curtis Publishing. Co.,
7 N.Y.2d 435 (N.Y. 1960) .....................................................................................................19

El Greco Leather Prods. Co. v. Shoe World, Inc.,
623 F. Supp. 1038 (E.D.N.Y. 1985) ...............................................................10, 14, 17, 20

Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,
314 F.3d 48 (2d Cir. 2002) .........................................................................................6, 7, 8, 17

Fashion Boutique of Short Hills, Inc. v. Fendi USA. Inc.,
942 F. Supp. 209 (S.D.N.Y. 1996) ..................................................................................7, 16

Fowles v. Bowen,
30 N.Y. 20 (N.Y. 1864)..........................................................................................................18

GAF Bldg. Materials Corp. v. Elk Corp.,
90 F.3d 479 (Fed. Cir. 1996) ...................................................................24

H. Sand & Co. v. Airtemp Corp.,
934 F.2d 450 (2d Cir. 1991) ...........................................................4, 7, 16

Jeffreys v. Rossi,
275 F. Supp. 2d 463 (S.D.N.Y. 2003) ........................................................9

Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v.
Smithkline Beecham Corp.,
960 F.2d 294 (2d Cir. 1992) ......................................................................6

Kasachkoff v. City of New York,
107 A.D.2d 130 (1st Dep't 1985)..............................................................18

Kasada, Inc. v. Access Capital, Inc.,
2004 U.S. Dist. LEXIS 25257 (S.D.N.Y. Dec. 10, 2004) ...........................passim

Kirby v. Wildenstein,
784 F. Supp. 1112 (S.D.N.Y. 1992) .........................................................19

Knight v. U.S. Fire Ins. Co.,
804 F.2d 9 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987)........................3, 4

Liberman v. Gelstein,
80 N.Y.2d 429 (N.Y. 1992) ...............................................................14, 18

Licata & Co. v. Goldberg,
812 F. Supp. 403 (S.D.N.Y. 1993) ...........................................................7

Lurzer GMBH v. Am. Showcase, Inc.,
73 F. Supp. 2d 327 (S.D.N.Y. 1998) ......................................................9, 10

Markowitz v. Republic Bank of New York,
651 F.2d 825 (2d Cir. 1981) ...............................................................12, 13

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574 (1986) ...............................................................................3

McSherry v. Natl. Blue Print Div. of Natl. Reprographics, Inc.,
1982 U.S. Dist. LEXIS 17044 (S.D.N.Y. Dec. 27, 1982) ...............................14

Mead Johnson & Co. v. Abbott Lab.,
201 F.3d 883 (7th Cir. 2000) .....................................................................6

Meiri v. Dacon,
759 F.2d 989 (2d Cir. 1985) ...................................................................21

Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.,
614 F.2d 832 (2d Cir. 1980) ...................................................................................22

NYC Mgmt. Group Inc. v. Brown-Miller,
2004 U.S. Dist. Lexis 8652 (S.D.N.Y. May 14, 2004)..................................22, 23

Patterson v. County of Oneida,
375 F.3d 206 (2d Cir. 2004) ...................................................................................4

Prof'l Sound Servs., Inc. v. Guzzi,
349 F.Supp.2d 722 (S.D.N.Y. 2004) .......................................................................7

Resource Developers, Inc. v. Statue of Liberty-Ellis Island Foundation, Inc.,
926 F.2d 134 (2d Cir. 1991) ...................................................................................3

Shapiro v. Health Ins. Plan of Greater New York,
7 N.Y.2d 56 (N.Y. 1959) ......................................................................................18

Stillman v. Ford,
22 N.Y.2d 48 (N.Y. 1968) ....................................................................................14

Strapex Corp. v. Metaverpa N.V.,
607 F. Supp. 1047 (S.D.N.Y. 1985) ......................................................................22

Stukuls v. State,
42 N.Y.2d 272 (N.Y. 1977) ..................................................................................18

Turner Construction Co. v. Seaboard Surety Co.,
98 A.D.2d 88 (1st Dep't 1983)...............................................................................23

Western World Ins. Co. v. Stack Oil, Inc.,
922 F.2d 118 (2d Cir. 1990) .....................................................................3, 8, 15, 16

Wolf St. Supermkts v. McPartland,
108 A.D.2d 25 (4th Dep't 1985) ............................................................................17

**STATUTES**

15 U.S.C. § 1125(a) ................................................................................................4

15 U.S.C. § 1125(a)(1)(B) ......................................................................................6

28 U.S.C. § 2201 ..................................................................................................24

35 U.S.C. § 154(d)(1)(A)(B) ...................................................................................5

35 U.S.C. § 292 ..............................................................................................10, 12

35 U.S.C. § 292 (a) and (b)...................................................................................10

Fed. R. Civ. P. 56 ................................................................................................... 1

Fed. R. Civ. P. 56(c) .............................................................................................. 2

Fed. R. Civ. P. 56(e) ........................................................................................... 3, 4

Fed. R. Civ. P. Local Rule 56.1 ............................................................................. 2

N.Y. Civ. Rights L. § 74 (Consol. 2004) ........................................................ 13, 17

## OTHER AUTHORITIES

Fed. R. Evid. 801 ................................................................................................ 21

Chisum on Patents, vol. 8, § 21.02[1][d][iii] (2003) .......................................... 24

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition vol. 4, §
27:110 (West 2004) ............................................................................................ 17

Defendant, Pandora Jewelry, LLC ("Pandora"), by its attorneys, hereby submits the memorandum in support of its motion for summary judgment under Fed. R. Civ. P. 56 against the claims asserted by plaintiff, Chamilia, LLC ("Chamilia").

## PRELIMINARY STATEMENT

In its complaint, Chamilia has presented to this Court nothing more than an ill-disguised strike suit designed solely to harass its competitor, Pandora. The federal claims of unfair competition and false patent marking fail to present any basis to continue the action under the prevailing authority. The supplemental state law claims of "slander of title," "defamation," "product disparagement" and "tortuous interference," all fail as a matter of law since Chamilia cannot sustain its burden to present genuine issues of material fact relating to the points of required proof. Finally, the declaratory judgment claim also fails since it seeks to adjudicate a patent that has not yet issued.

Chamilia's claims also belie Chamilia's own history of predatory commercial conduct. Chamilia and Pandora have been before this Court before when Pandora obtained a temporary restraining order against Chamilia's blatant copyright infringement of Pandora's copyrighted unique and distinctive jewelry designs. Pandora Smykker USA Aps and Pandora Jewelry LLC v. Chamilia LLC, 03 Civ. 7587 (Judge Sprizzo). Chamilia entered into a permanent injunction and paid Pandora damages in a Consent Judgment entered November 25, 2003. Chamilia's present litigation hurls baseless charges against Pandora which tortures the law to even state a claim.

The Court urged the parties to wait on summary judgment until discovery was complete. This is now the case. Despite depositions, document production and submission of "declarations," Chamilia fails totally to sustain even one claim. The Court has given Chamilia every opportunity to find evidence to support their conclusory

allegations and claims. Chamilia has not and cannot present evidence sufficient to establish genuine issues of material fact to avoid summary judgment on any of its claims.

Pandora's motion should be granted in all respects and an order should be granted dismissing Chamilia's complaint.

## FACTS

Accompanying this memorandum is Pandora's Statement of Facts for which there is no genuine issues as required by Local Rule 56.1. The Statement sets forth the facts and cites to the record compiled in the case. This record is also submitted herewith the Declaration and Supplemental Declaration of Michael Lund Petersen dated January 12, 2005 and July 15, 2005 respectively; Declaration and Supplemental Declaration of Steve Glueck dated January 12, 2005 and July 15, 2005 respectively; Declaration of Knud Hostrup dated January 13, 2005; Declaration of Jody Henderson dated January 12, 2005; Declarations of Richard R. Harrington and Calleen S. Wickard dated July 15, 2005. These supporting declarations and the declarations of Gianfranco G. Mitrione, Esq. dated January 14, 2005 and July 15, 2005, attach the exhibits and deposition transcripts upon which Pandora relies in this motion for summary judgment.

For brevity's sake, this memorandum incorporates by reference the foregoing facts and will cite to them in the following Argument where pertinent.

## ARGUMENT

### A.    THE STANDARD FOR SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking

summary judgment "always bears the initial responsibility of informing the district court of the basis of its motion" and identifying facts that it believes "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly discharged this responsibility, the burden then shifts to the nonmoving party which must go beyond the pleadings to "'set forth specific facts showing that there is a genuine issue for trial.'" Resource Developers, Inc. v. Statue of Liberty-Ellis Island Foundation, Inc., 926 F.2d 134, 139 (2d Cir. 1991), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); see also Fed. R. Civ. P. 56(e).

There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor. Anderson, 477 U.S. at 249-50. Indeed, summary judgment is still fully appropriate when the evidence is insufficient to support the non-moving party's case. Celotex, 477 U.S. at 317, 325-26 (1986). Summary judgment may also be granted when the opposing party fails to establish an element essential to that party's case and on which that party would bear the burden of proof at trial. Id. at 321.

To defeat a motion for summary judgment, Chamilia must show more than a "scintilla of evidence," Anderson, 477 U.S. at 252, and more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A party cannot "'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,'" or defeat the motion through "'mere speculation or conjecture.'" Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990), citing Borthwick v. First Georgetown Securities, Inc., 892 F.2d 178, 181 (2d Cir. 1989) and Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir.

1986), cert. denied, 480 U.S. 932 (1987).  To that end, any "affidavits submitted in support of or in opposition to a summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).  The requirement set forth in Rule 56(e) that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit "also means that an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."  Id. at 219; see also H. Sand & Co. v. Airtemp Corp., 934 F.2d 450, 454-55 (2d Cir. 1991) (hearsay assertion that would not be admissible if testified to at trial is not competent material for a Rule 56 affidavit).

As set forth below, summary judgment is appropriate for each claim averred by Chamilia against Pandora.

## B.    CHAMILIA'S UNFAIR COMPETITION CLAIM/FALSE ADVERTISING UNDER THE LANHAM ACT FAILS

### 1.    Chamilia Cannot Sustain Any Proof of False or Misleading Statements by Pandora

Chamilia alleges that Pandora has falsely represented to consumers: (1) that it owned patent rights violated by Chamilia's jewelry product; (2) that Chamilia's products are inferior and "knock-offs"; and (3) that the products sold by Pandora are the "original."  Chamilia's unfair competition claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), lacks merit and cannot survive summary judgment.

Chamilia's complaint, deposition testimony and documents produced during discovery fail to support any allegation that Pandora falsely disparaged Chamilia or its products.  As to Chamilia's claim that Pandora falsely represented that it owned patent

rights violated by Chamilia, Pandora is in fact the owner of a patent pending in the United States Patent and Trademark Office assigned Application No. 10/623,641 and published on July 29, 2004 under Publication No. US 2004/0144131-Al (hereinafter "Patent Pending"). See Declaration of Michael Lund Petersen dated January 12, 2005 ¶¶ 8-10 (hereinafter "Petersen Decl. ¶ ___"). Pandora has put several manufacturers and retailers on notice of the potential for damages from the date of publication pursuant to 35 U.S.C. § 154(d)(1)(A)(B). See id. at ¶ 11. In addition, Chamilia identifies four Pandora representatives that allegedly made disparaging statements all of whom deny they ever stated that Pandora owns any United States patent rights or that it would sue on the basis of any existing patent rights. See Peterson Decl. ¶ 18; Declaration of Steve Glueck dated January 12, 2005 ¶¶ 9 and 11 (hereinafter "Glueck Decl. ¶ ___"); Declaration of Jody Henderson dated January 12, 2005 ¶ 6 (hereinafter "Henderson Decl. ¶ ___"); and Declaration of Knud Hostrup dated January 13, 2005 ¶ 9 (hereinafter "Hostrup Decl. ¶ ___"). Similarly, Pandora's representatives have never threatened to "shut down" Chamilia based on any patent rights and have never stated that Chamilia was having financial problems. See Peterson Decl. ¶ 18; Glueck Decl. ¶ 11. Because the only statements made by Pandora pertained to its patent application, its statements were true and cannot form the basis for a Lanham Act violation.

Moreover, although Chamilia alleges that Pandora has falsely represented that Chamilia's products are "knock-offs," the previous action between these parties— Chamilia accepted a judgment which, inter alia, compensated Pandora for the damages caused by Chamilia's infringement of Pandora's registered copyrights—determined that Chamilia's products are in fact "knock-offs," and Pandora's products are the "original."

See Pandora Smykker, 03 Civ. 7587; see also Declaration of Gianfranco G. Mitrione, Esq. dated January 14, 2005 ¶ 5 (hereinafter "Mitrione Decl. ¶ ___") and Petersen Decl. ¶¶ 14 and 17.  Further, Chamilia's products copied the system first used by Pandora to string jewelry beads, spacers, and clips.  Such copies of an original are known in the industry and to the public generally as "knock-offs."  See Petersen Decl. ¶¶ 14 and 17; Hostrup Decl. ¶ 6 and Mitrione Decl. ¶ 5.  Any dissemination of information regarding Chamilia's present "knock-off" of Pandora's "original" jewelry products are accurate statements of fact which are neither false nor misleading making them not actionable under the Lanham Act.  Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp., 960 F.2d 294, 297 (2d Cir. 1992); see also, Mead Johnson & Co. v. Abbott Lab., 201 F.3d 883, 886-87 (7th Cir. 2000).

     2.    Chamilia Fails to Show Sufficient "Advertising or Promotion"

Even if the Court accepts Chamilia's claim that Pandora falsely represented the nature of both parties' products, Chamilia still has not adduced evidence necessary to sustain an unfair competition claim under the Lanham Act.  Statements such as those allegedly made by Pandora, even if, arguendo, considered to be false, do not qualify as "commercial advertising or promotion," needed to prove any cause of action for false advertising under the Lanham Act.  See 15 U.S.C. § 1125(a)(1)(B) (2000) (providing a cause of action for misrepresentation "in commercial advertising or promotion").  The Second Circuit has held that in order to qualify as "commercial advertising or promotion," the contested representations must be 1) commercial speech, 2) for the purpose of influencing consumers to buy defendant's goods or services, and 3) disseminated sufficiently to the relevant purchasing public.  Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 56-58 (2d Cir. 2002) ("Fashion Boutique II").

> Thus, the touchstone of whether a defendant's actions may be considered 'commercial advertising or promotion' under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market. Proof of widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement. <u>Thus, businesses harmed by isolated disparaging statements do not have redress under the Lanham Act; they must seek redress under state-law causes of action.</u>

<u>Id.</u> at 57 (emphasis added). In <u>Fashion Boutique II</u>, the Second Circuit held that twenty-seven oral statements by the defendant concerning the "fake," "bogus," or inferior nature of that plaintiff's merchandise and service, in a potential marketplace of thousands of customers, did not constitute sufficient commercial advertising or promotion to establish a Lanham Act disparagement claim and survive summary judgment. <u>Id.</u> at 58; <u>see</u> <u>Prof'l Sound Servs., Inc. v. Guzzi</u>, 349 F.Supp.2d 722, 729 (S.D.N.Y. 2004) (finding that evidence of one customer out of thirty-six or more having heard a disparaging statement is not sufficient to overcome summary judgment); <u>Licata & Co. v. Goldberg</u>, 812 F. Supp. 403, 409 (S.D.N.Y. 1993) (noting that the plain meaning of the Lanham Act "reflects a legislative judgment that for the statute to apply, the questioned advertising or statements, and not merely the underlying commercial activity, must be disseminated in commerce - i.e., not be purely local").

Chamilia's only support for the number of retail customers who allegedly heard disparaging statements made by Pandora is classic inadmissible hearsay and should not be considered by the court as evidence.[1] <u>See</u> <u>H. Sand & Co.</u>, 934 F.2d at 454-55 (holding that a hearsay assertion that would not be admissible at trial is insufficient to oppose a

---

[1]    For the same reason, Chamilia's reference elsewhere to "customers who have indicated a reluctance to purchase products from Plaintiff" is inadmissible and does not suffice to prove dissemination. In addition, this Court and the Second Circuit have held that testimony or evidence of "rumors" regarding the quality of a plaintiff's goods should not be considered on a motion for summary judgment. <u>See</u> <u>Fashion Boutique v. Fendi USA, Inc.</u>, 942 F. Supp. 209, 215 (S.D.N.Y. 1996) ("<u>Fashion Boutique I</u>").

motion for summary judgment). Because Chamilia cannot rely on "mere speculation or conjecture" here, its unproven assertion that "Defendant has made statements to Plaintiff's customers and potential customers" does not suffice. See Western World, 922 F.2d at 121. The only possibly admissible testimony of allegedly disparaging comments by Pandora comes from three of Chamilia's retailers produced after the close of discovery who quote statements made by Pandora's representatives. Yet, none of these declarants have stopped selling Chamilia products at retail. See Calleen S. Wickard Declaration ¶6; Richard R. Harrington Declaration ¶¶5-7; and Dep. Tr. of Julkowski, p. 189, lines 3-8. Chamilia has not set forth any facts proving that any alleged statements by Pandora actually damaged Chamilia. See Accent Designs v. Jan Jewelry Designs, 827 F. Supp. 957, 965 (S.D.N.Y. 1993) (noting that a claim of unfair competition "is not actionable absent proof that any such allegedly false claims caused actual damage to the plaintiff").

Even if viewed in the best of light for Chamilia, these three retailers who allegedly received communications containing disparaging remarks are an insufficient number to establish "commercial advertising or promotion," in a Lanham Act claim especially given the parties' large potential marketplace. Lisa Whirlow, National Sales Manager of Chamilia, testified that Chamilia has approximately 700, 800 retail outlet customers. See Dep. Tr. of Whirlow, 146, lines 8-10. Should the Court consider every specific instance of false representation Chamilia asserts, including those inadmissible as hearsay, Chamilia remains far short of the twenty-seven oral communications the court in Fashion Boutique II found to be insufficient to overcome summary judgment. Chamilia fails to adduce evidence of "widespread dissemination" of disparaging statements. See Fashion Boutique II, 314 F. 3d at 57.

3.    Pandora's "Terms and Conditions Letters" Do Not Support Chamilia's
       Claim

Although not alleged in its Complaint, Chamilia has now asserted to the Court

that Pandora's "Terms and Conditions Letters" with its retailers are "part of a scheme" to

disparage Chamilia and thereby unfairly compete with Chamilia. See copy of James

Goggin's letter to the Court dated June 9, 2005 attached as Ex. T. Pandora's agreements

with its retailers to carry Pandora jewelry products exclusively do not create an unlawful

act. See attached to Ex. N, a copy of Pandora's Terms and Conditions Letter. Yet again,

Chamilia bases its fanciful theory on nothing but pure conjecture and its unsupported

allegations to "connect the dots." This Court has instructed in cases such as this: "when

evidence is so contradictory and fanciful that it cannot be believed by a reasonable

person, it may be disregarded." Jeffreys v. Rossi, 275 F. Supp. 2d 463, 476 (S.D.N.Y.

2003). It is undisputed that Pandora formulated its exclusivity policy to control the

quality of its jewelry products, to avoid warranty issues with customers, to prevent the

passing off of competitor's goods as if they were Pandora's and to balance the territorial

exclusivity Pandora provides its customers. See Petersen Supp. Decl. ¶¶15-18. Chamilia

is but one of many competitors of Pandora. See Petersen Supp. Decl. ¶9. Therefore,

Pandora adopted this policy to protect its legitimate business interests and the interests of

consumers rather than as part of a disparagement scheme as concocted by Chamilia. See

id.

C.    **CHAMILIA FAILS TO SUSTAIN ITS COMMON LAW UNFAIR
       COMPETITION CLAIM**

The standard for setting forth a claim of unfair competition under New York law

and the standard for setting forth a claim under section 43(a) of the Lanham Act are

"almost indistinguishable." Lurzer GMBH v. American Showcase, Inc., 73 F. Supp. 2d

327, 331 (S.D.N.Y. 1998). If Chamilia relies upon the same facts to support its state

common law unfair competition claim as it relies upon to support all of its state law

disparagement-related claims, it should be dismissed as well. Chamilia's state law unfair

competition claim is then nothing more than a product or business disparagement claim.

See Boule v. Hutton, 320 F. Supp. 2d 132, 138-39 (S.D.N.Y. 2004) (treating plaintiffs'

unfair competition claims as disparagement claims). See El Greco Leather Products Co.

v. Shoe World, Inc., 623 F. Supp. 1038, 1044 (E.D.N.Y. 1985) (dismissing unfair

competition claim because it was redundant to claims for disparagement and tortious

interference). As such, Chamilia's unfair competition claim is redundant to its federal

unfair competition claim or its other state law claims, and, therefore, should be dismissed

for the same reasons as those claims, as discussed herein.

## D.    CHAMILIA'S FALSE PATENT MARKING CLAIM SHOULD BE DISMISSED

Chamilia claims that Pandora has falsely used in advertising in connection with

the sale of its jewelry products the term "patent" in violation of 35 U.S.C. § 292, which

states, in relevant part, "whoever . . . uses in advertising in connection with any

unpatented article, the word "patent" or any word or number importing that the same is

patented, for the purpose of deceiving the public . . . shall be fined not more than $500 for

every such offense . . . and . . . any person may sue for the penalty." See 35 U.S.C. § 292

(a) and (b). Since the statute is penal in nature, it must be strictly construed, and Courts

have held that an intent to deceive will not be inferred where the facts show "no more

than that the erroneous patent marking was the result of mistake or inadvertence." Blank

v. Pollack, 916 F. Supp. 165, 173 (N.D.N.Y. 1996).

In order to state a claim under the statute, Chamilia must prove (1) that the statements are a form of advertising medium falling within the meaning of the statute; and (2) that Pandora intended to deceive the public. <u>See</u> <u>Accent Designs</u>, 827 F. Supp. at 968. In the instant case, Chamilia's failure to present any documents showing any mismarking, relying instead on alleged statements made by Pandora representatives to Chamilia's customers or potential customers, warrants a complete dismissal of Chamilia's claim:

> [i]f every word and clause in the statute is to be given effect, the expression 'uses in advertising' cannot refer to any and all documents by which the word 'patent' is brought to the attention of the public; it can only refer to use of the word 'patent' in publications which are designed to promote the allegedly unpatented product, namely, advertisements. Thus the phrase 'uses in advertising' limits the kinds of the documents covered by the statute. Any other construction would render the words 'uses in advertising' surplusage.

<u>Id.</u> at 968-69.

The undisputed evidence is to the contrary: Pandora does in fact own a patent application pending in the U.S. Patent and Trademark Office for its jewelry product. <u>See</u> Petersen Decl. ¶ 8; Hostrup Decl. ¶ 7; and Henderson Decl. ¶ 6. Since the filing of the application, Pandora has used the permitted legend "patent pending" in the marketplace and in publications designed to promote its product covered by the pending patent application. <u>See</u> Petersen Decl. ¶ 9 and Ex D; <u>see</u> <u>also</u> Petersen Suppl. Decl. ¶ 6, Ex. L; Hostrup Decl. ¶ 7. For example, Pandora's advertisement in <u>InStyle</u> magazine, its brochures, and product displays all clearly indicate that there is a "patent pending" covering the jewelry products depicted in the promotional piece. Chamilia itself has been aware of the patent pending since late August 2003 when Pandora's then counsel advised Chamilia that Pandora had filed a "nonprovisional U.S. Patent Application which protects

the functional aspects of the necklaces and bracelets." See Petersen Decl. ¶ 19 and

Exhibit G. Pandora's patent application was published on July 29, 2004. See Petersen

Supp. Decl. ¶ 9. Pandora, through its counsel, notified manufacturers, including

Chamilia, distributors and retailers with lines of jewelry which appear to utilize

substantially the same construction and perform the same function as Pandora's patent

pending for its necklaces and bracelets of Pandora's published patent application. See id.

at ¶¶ 9-10.

Nothing in the alleged statements made by Pandora's representatives meets the

statute's "uses in advertising" requirement. Accent Designs, 827 F. Supp. at 68-69.

Pandora's use of the words "patent pending" and "patent application" in the marketplace

and on its advertising and promotional materials do not violate the statute in view of the

pending patent application. Chamilia has not established the essential elements of its

claim under 35 U.S.C. § 292; and, therefore, Chamilia's claim cannot withstand summary

judgment.

## E.    CHAMILIA'S SLANDER OF TITLE CLAIM DERSERVES DISMISSAL

Chamilia tortures the common law doctrine of slander of title to cobble together a

claim against Pandora. As a matter of law, Chamilia must show that there has been a

malicious publication of false allegations concerning the title to its property causing

special damages. Markowitz v. Republic Nat'l Bank, 651 F. 825, 829 (2d Cir. 1981).

A defendant, however, who asserts a claim against property in good faith "under an

honest impression of its truth" will not be penalized in damages. Id. In this case,

Chamilia has failed to identify any specific "title to property" which is recognizable

under the law as meriting protection leaving Pandora to rank speculation. As it now

clearly consistent throughout this case, Chamilia has no evidence to establish the

requisite "malice" on the part of Pandora. The existence of Pandora's Patent Pending and Chamilia's past infringing conduct taken against Pandora's intellectual property rights, allows Pandora's representatives to have been "under an honest impression of truth" when referring to Chamilia's products. Markowitz, 651 F. 2d at 829. Even if a "property" was identified, Chamilia has no evidence of any malice or bad faith on the part of Pandora. Chamilia's slander of title claim under the common law of New York should be dismissed as a matter of law.

**F.    CHAMILIA'S DEFAMATION CLAIM FAILS ON ALL POINTS**

Chamilia has failed to prove any of the points required: (1) a false; (2) defamatory statement of fact concerning Chamilia; (3) published by Pandora to a third party; (4) fault on the part of Pandora; and (5) special damages or actionability per se. See Kasada, Inc. v. Access Capital, Inc., 2004 U.S. Dist. LEXIS 25257, at **54-55 (S.D.N.Y. Dec. 10, 2004); Dillon v. City of New York, 261 A.D.2d 34, 38 (1st Dept. 1999). Even if the Court finds that there is a genuine issue of material fact on what was said, the claim fails since Pandora has a privilege to make certain statements regarding Chamilia. Finally, Chamilia has utterly failed to establish "special damages" to make complete its claim for defamation.

1.    New York Statutory Privilege to Communicate Allows Dismissal As A Matter of Law

The New York law recognizes that Pandora has a privilege to communicate with its customers regarding Chamilia's past business practices and the "knock-off" character of Chamilia's products. "A civil action cannot be maintained against any person, firm or corporation for the publication of a fair and true report of any judicial proceeding . . . ." N.Y. Civ. Rights L. § 74 (Consol. 2004). Pandora is fully entitled to inform its customers

of the nature and outcome of the previous action between these parties.  See El Greco

Leather, 623 F. Supp. 1038 at 1043-44 (dismissing defendant's counterclaim for

defamation regarding its products and business practices on the basis of statutory

privilege).

      2.      New York's Common Law Privilege Supports Pandora's Motion

      New York law also recognize a common interest privilege, which protects

"communication[s] made by one person to another upon a subject in which both have an

interest." Liberman v. Gelstein, 80 N.Y.2d 429, 437 (N.Y. 1992) (quoting Stillman v.

Ford, 22 N.Y.2d 48, 53 (N.Y. 1968)).  Such a privilege recognizes that "the public

interest is served by shielding certain communications, though possibly defamatory, from

litigation, rather than risk stifling them altogether." Liberman, 80 N.Y.2d at 437.  New

York law further recognize a privilege in situations where the communicator offers

information in order to protect a business interest.  See McSherry v. National Blue Print

Div. of Natl. Reprographics, Inc., 1982 U.S. Dist. LEXIS 17044, at **1-2 (S.D.N.Y. Dec.

27, 1982) (finding business interest privilege where the communicator and the recipient

have a business relationship). Given Chamilia's admitted past copyright infringement and

the importance of Pandora's business relationships with its retailer customers, Pandora's

statements to its customers find protection by common law privilege, in addition to

statutory privilege.  Squarely within the business interest privilege is a letter sent

exclusively to Pandora customers by Steve Glueck, a Pandora sales representative.

Mr. Glueck's letter was to respond to Pandora customers' concerns and correct the falsity

of information provided to them by Chamilia that "'all the Pandora accounts' were

carrying Chamilia alongside Pandora." See Glueck Supp. Decl. ¶¶ 4-6, 8 and Ex. N.  The

letter also explained the nature of commercial pressure exerted by Chamilia in the

marketplace which was expressed in the colorful opinion of Mr. Glueck that Chamilia is

a "knock-off" company and Chamilia's pressure on Pandora' customers to sell Chamilia

jewelry products alongside Pandora's are "strong arm" sales tactics. See id. at ¶¶ 4-7.

Under any inquiry, Pandora's statements regarding the "knock-off" or "inferior"

character of Chamilia and its products and characterization of Chamilia's business style

as "strong arm" do not provide an actionable basis for a defamation claim.

> 3.  Chamilia Has No Admissible Evidence of Publication of Statements Other
>     Than Those Protected by Privilege

Moreover, Chamilia has not offered any admissible evidence that creates a

genuine issue for trial regarding the publication of any statements to third parties other

than those protected by privilege. Just as with its Lanham Act claim, Chamilia's

supposed evidence concerning Pandora's publication of statements to third parties is

either inadmissible hearsay or mere conclusory allegations. This Court has held that it is

insufficient for a plaintiff to assert only that a defendant published allegedly defamatory

statements to "plaintiffs' customers and others in the industry." See Kasada Inc., 2004

U.S. Dist. LEXIS 25257, at **47-52, 57 (dismissing plaintiffs' complaint). Further, all

disparaging statements about Chamilia allegedly made by Mr. Glueck and Mr. Petersen

to Ms. Whirlow are equally not actionable because Ms. Whirlow, as National Sales

Manager of Chamilia, is not a "third party" as defined by the law. Id. at ** 54-55.

> 4.  Chamilia Has No Evidence of "Fault" on the Part of Pandora

Chamilia has not established the existence of any fault on the part of Pandora.

Chamilia has set forth nothing more than mere allegations that Pandora acted with intent

and with reckless disregard for the truth of its statements. To escape summary judgment,

Chamilia must produce more than "mere speculation or conjecture" here. See Western

World, 922 F.2d at 121. The only evidentiary support Chamilia offers to establish it was injured by Pandora's statements is inadmissible hearsay provided through the deposition testimony of Chamilia's President, Chamilia's National Sales Manager and one of the top sales representative of Chamilia. All three individuals claim that Pandora made "defamatory" statements about Chamilia to Chamilia's customers, but neither Chamilia's President nor top sales representative offer any testimony that they were present when these statements were allegedly made and Chamilia's National Sales Manager outright admits that she is only repeating what retailers told her Pandora representatives allegedly said. See, e.g. Dep. Tr. of Whirlow, p. 234, lines 17-25, p. 235, line 17; p. 215 lines, 12-15; p. 202, lines 8-25, p. 203, lines 1-20. Chamilia cannot rely upon hearsay statements in order to create a genuine issue for trial. Fed. R. Civ. P. 56(e); See H. Sand & Co., 934 F. 2d at 454-55. Indeed, this Court and the Second Circuit have held that testimony or evidence of "rumors" regarding the quality of a plaintiff's goods should not be considered on a motion for summary judgment. See Fashion Boutique I, 942 F. Supp. at 215.

> 5.    Chamilia Has Shown No Special Damage Required To Escape Summary Judgment

Chamilia has not offered any admissible evidence that any customer refused to purchase Chamilia jewelry products or has canceled orders for Chamilia jewelry products as a result of statements made by Pandora. Chamilia has not produced any written communication from any of its customers, be it letter, fax or email, indicating a discontinuance of the sale of Chamilia jewelry products as a result of any statement made by Pandora representatives. Indeed, Ms. Whirlow, Chamilia's National Sales Manager, testified that she has not received any such communication either from a customer

directly or through a sales representative. See Dep. Tr. of Whirlow, p. 202, lines 8-25, p.

203, lines 1-20. The record is completely devoid of any damage or injury suffered by

Chamilia. Even if the Court treats Pandora's alleged statements as defamation per se,

Chamilia must still prove its entitlement to actual damages. "The amount of general

damages 'must be supported by competent evidence concerning the injury.'" Fashion

Boutique II, 314 F.3d at 59 (quoting Wolf Street Supermkts. v. McPartland, 108 A.D.2d

25, 32 (4th Dep't 1985). Chamilia has not offered any admissible evidence supporting its

claim of injury and to damages as a result of Pandora's alleged statements and thus, its

claim for defamation should be dismissed.

**G.    CHAMILIA'S CLAIM OF DISPARAGEMENT FAILS**

To prevail on its state law product disparagement claim, Chamilia must prove

each element:  1) a false statement; 2) published by Pandora to a third party; 3) malice on

the part of Pandora; and 4) special damages. See Kasada, Inc., 2004 U.S. Dist. LEXIS

25257 at **50-51. Chamilia relies on the same tired alleged statements here as it does to

support all of its other claims. The product disparagement claim fails as well. See El

Greco, 623 F. Supp. at 1044 (holding that New York's statutory privilege regarding

judicial proceedings, N.Y. Civ. Rights L. § 74, "applies equally to defamation and trade

libel suits"); J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition vol.

4, § 27:110 (West 2004) ("A conditional privilege specially crafted as a defense to a

disparagement claim is the 'competitor's comparison' privilege. This gives a seller a

privilege to make an unfavorable comparison of the quality of its own goods or services

with the corresponding quality of a competitor's goods or services . . . .").

1.    There Is No "Malice" Established

Chamilia has not proven malice needed to avoid summary judgment. Chamilia

has offered only its conclusory assertion that Pandora acted with malice. But "a plaintiff

does not make the requisite showing of malice simply by conclusorly labeling the

defamation malicious." County Vanlines Inc. v. Experian Info. Solutions, Inc., 317 F.

Supp. 2d 383, 390 (S.D.N.Y. 2004). Chamilia's burden "may not be met by 'surmise,

conjecture and suspicion' . . . nor by 'mere conclusions, expressions of hope or

unsubstantiated allegations or assertions . . . .'" Id. (quoting Kasachkoff v. City of New

York, 107 A.D.2d 130, 135 (1st Dep't 1985)). Malice is not an issue for the jury if

Chamilia presents insufficient evidence. See Shapiro v. Health Ins. Plan of Greater New

York, 7 N.Y.2d 56, 61 (N.Y. 1959).

Since Chamilia has not established that Pandora acted with a "high degree of

awareness" of the probable falsity of its statements, no actual malice can be found.

Liberman, 80 N.Y.2d at 438. Further, New York law requires Chamilia to show that

malice was the "one and only" motivation for Pandora's alleged statements. Id. at 439.

The alleged statements must have been "consistent only with a desire to injure the

plaintiff to justify . . . [sending] the question of malice to the jury." Stukuls v. State, 42

N.Y.2d 272, 279 (N.Y. 1977) (quoting Fowles v. Bowen, 30 N.Y. 20, 26 (N.Y. 1864)).

Thus, a desire on Pandora's part to benefit itself, protect consumers or protect its business

interests in making any statements concerning Chamilia would preclude the existence of

malice in a disparagement claim. See Glueck Supp. Decl. ¶¶ 4-8; Petersen Supp. Decl.

¶¶ 14-20.

2.    There Is No Proof of Special Damages

Similarly, Chamilia has not proven special damages; indeed, Chamilia does not even sufficiently allege special damages in its Complaint.  The requirement that Chamilia prove special damages, or specific pecuniary losses, is strictly applied.  Kasada, Inc., 2004 U.S. Dist. LEXIS 25257 at *51.  Special damages must be "fully and accurately stated," and courts have granted summary judgment for a failure to allege and prove special damages with requisite specificity.  See Kirby v. Wildenstein, 784 F. Supp. 1112, 1116, 1118 (S.D.N.Y. 1992) (granting summary judgment where plaintiff sought damages of $250,000 and $200,000 without any precise itemization); Drug Research Corp. v. Curtis Publishing Co., 7 N.Y.2d 435, 441 (N.Y. 1960) (finding that a round damage estimation of $5,000,000 was not sufficiently proven).  Under New York law, if special damages arise from a loss of customers, as Chamilia claims, those customers must be named and be causally related to any alleged disparaging statements made by Pandora. Drug Research, 7 N.Y.2d at 441; Kirby, 784 F. Supp. at 1116.  Chamilia has not identified an amount of damages, did not retain an expert to do so, but rather seeks only "damages in an amount to be determined by the Court."  Compl. p. 11.  As noted, courts have granted summary judgment even where plaintiffs have provided more than the complete lack of evidence put forward by Chamilia.

## H.    THE CLAIM FOR TORTIOUS INTERFERENCE SHOULD BE DISMISSED

Chamilia asserts its Tortious Interference with Advantageous Relationships claim in terms of a "prospective economic advantage."  Compl. ¶ 51.  The evidentiary standard for proving tortious interference with business or prospective economic relations is more stringent than the standard for interference with contractual relations.  Kasada, Inc., 2004

U.S. Dist. LEXIS 25257 at *62. Nevertheless, Chamilia has no evidence in the record to support such a claim under either theory.

To avoid summary judgment, Chamilia must demonstrate genuine issues of fact on each point, namely that: 1) Chamilia had a business relationship with a third party; 2) Pandora knew of that relationship and intentionally interfered with it; 3) Pandora acted solely out of malice or used dishonest, unfair, or improper means; and 4) Pandora's interference caused injury to the relationship. Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir. 2003). As to the requirement of proving malice or "wrongful means," courts do not impose liability unless "the conduct is highly reprehensible." Id. at 19; see Kasada, Inc., 2004 U.S. Dist. LEXIS 25257 at **62-63 ("[T]he defendant must interfere with the business relationship directly; that is, the defendant must direct some activities towards the third party . . . ." (emphasis added)). In addition, even under a claim of interference with contractual relations, the law requires Chamilia to identify the contracts or prospective business relations that were allegedly interfered with. See Kasada, Inc., 2004 U.S. Dist. LEXIS at **64 ("Plaintiffs do not allege with any specificity the contracts it claims were breached or the business relations it claims were prevented from going forward as a result of [the defendants'] actions."). Finally, interference with prospective economic relations requires that the contract would have been entered into but for the interference. See El Greco, 623 F. Supp. at 1044 (dismissing counterclaim because defendant "failed to offer any facts which, if proved at trial, would show that [the] contract would have been entered into but for [the] interference").

    1.    Chamilia Offers No Admissible Evidence of Pandora's Intent

In cases such as this where intent is an essential element of the claim, Chamilia must offer some "concrete evidence" in its favor, and is "not entitled to a trial simply

because the determinative issue focuses upon [Pandora's] state of mind." <u>Dister v.</u>
<u>Continental Group, Inc.</u>, 859 F.2d 1108, 1114 (2d Cir. 1998). This circuit has cautioned
that "[t]he summary judgment rule would be rendered sterile . . . if the mere incantation
of intent or state of mind would operate as a talisman to defeat an otherwise valid
motion." <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2d Cir. 1985).

     Here, Chamilia offers nothing more than its own unsupported assertions. All of
Chamilia's assertions about alleged "lost profits" and "lost customers" are not supported
by any admissible evidence. Chamilia has not produced an affidavit by a retailer or any
letter, e-mail, fax or other written correspondence from a prospective retailer of
Chamilia's indicating a refusal to conduct business with Chamilia as a result of any action
taken or statement made by Pandora. <u>See</u> Dep. Tr. of Whirlow, p. 202, lines 9-25, p. 203,
lines 1-20. Rather, Chamilia has produced inadmissible hearsay testimony that certain
retailers told them that due to "Pandora's patent," "the threat of being sued for all their
profits," "Pandora' closing Chamilia down" or "confiscation of their product by Pandora"
that they sent all Chamilia product back to Chamilia or canceled orders with Chamilia.
<u>See</u> <u>e.g.</u>, Dep. Tr. of Whirlow p.70, lines 3-12, 23-25, p. 71, lines 1-2; p.72, lines 13-20,
p. 73, line 25, p. 74, lines 1-8, p. 87, lines 8-22; Dep. Tr. of Julkowski, p. 209, lines 9-12.
None of these "declarants" have offered testimony. Fed. R. Evid. 801.

     2.    Chamilia Has Failed to Identify Any Specific Loss

     Further, Chamilia has not identified any specific contractual negotiations or
expectations by Chamilia or a particular prospective business relationship with which
Pandora intentionally interfered. Equally fatal, Chamilia failed to offer any direct
testimonial or documentary evidence that establishes it would have entered into business
relationships with certain retailers in the future but for Pandora's alleged interference.

When questioned about Chamilia's prospective business opportunities, Jeff Julkowski, the President of Chamilia, and Lisa Whirlow, Chamilia's National Sales Manager, testified that Chamilia does not have a plan which shows its anticipated growth of business, does not have a plan which shows its perspective business opportunities and does not have a written plan to grow its business. Dep. Tr. of Julkowski, p. 299, lines 8-15; p. 300, lines 6-18; Dep. Tr. of Whirlow, p. 180, lines 4-7. Therefore, if Chamilia itself cannot identify prospective business opportunities, it is impossible that Pandora interfered with them.

      3.      Chamilia Fails to Show "Dishonest, Unfair or Improper Means"

Further, Chamilia has failed to marshal any competent evidence establishing dishonest, unfair or improper means by Pandora. See NYC Mgmt. Group Inc. v. Brown-Miller, 2004 U.S. Dist. Lexis 8652 *26 (S.D.N.Y. May 14, 2004) (court dismissed tortious interference with prospective economic relations where plaintiffs "pointed to no piece of evidence demonstrating malicious intent or willfulness" on the part of defendant). Chamilia has argued to the Court that Pandora's exclusivity requirement of its retailers in Pandora's Terms and Conditions letters establishes the "wrongful means" used by Pandora to intentionally interfere with prospective business opportunities of Chamilia. See Goggin letter Ex. T. However, where as here, Pandora is using lawful means to legitimately compete for business with Chamilia, no such interference can be made. See Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co., 614 F.2d 832, 838 (2d Cir. 1980) (where the defendant's interference is intended, at least in part, to advance its own competing interests, the claim will fail unless the means employed include criminal or fraudulent conduct); Strapex Corp. v. Metaverpa N.V., 607 F. Supp. 1047, 1050 (S.D.N.Y. 1985).

Under New York law, Pandora is permitted to refuse to do business with any retailer who decides not to exclusively carry its line. "It is the well settled law of this State that the refusal to maintain trade relations with any individual is an inherent right which every person may exercise lawfully, for reasons he deems sufficient or for no reasons whatever, and *it is immaterial whether such refusal is based upon reason or is the result of mere caprice, prejudice or malice.*" Turner Construction Co. v. Seaboard Surety Co., 98 A.D.2d 88, 90 (1st Dep't 1983) (emphasis added). Although Chamilia may be disappointed that retailers are choosing to exclusively carry Pandora, this disappointment, without sufficient evidence to create a genuine issue of material fact as to Pandora's wrongful actions or intent, does not present a matter for trial. See NYC Mgmt. Group, 2004 U.S.Dist Lexis 8652 at *31.

The record is devoid of any evidence of Pandora's use of unlawful means from which a jury could conclude that Pandora intentionally interfered with a prospective business opportunity of Chamilia's, any evidence identifying an existing business relationship with which Pandora is alleged to have interfered or any evidence that a business relationship of Chamilia's was injured. Accordingly, Chamilia cannot establish the essential elements of its claim for tortious interference and the Court should accordingly dismiss its claim as a matter of law.

## I.    CHAMILIA'S DECLARATORY JUDGMENT IS NOT RIPE

In its Complaint, Chamilia requests that the Court grant a declaratory judgment in favor of plaintiff that defendant is without authority to threaten plaintiff for patent infringement; that none of defendant's patents are infringed by plaintiff; and that plaintiff is not liable for infringement. See Compl. p. 14. In view of the fact that patent rights are created only upon the formal issuance of the patent; disputes concerning infringement are

automatically hypothetical before a patent issues.  GAF Bldg. Materials Corp. v. Elk Corp., 90 F.3d 479, 483 (Fed. Cir. 1996).  In GAF Building Materials, the Federal Circuit held that a declaratory judgment suit concerning noninfringement must be dismissed when the suit was filed before the patent actually issued.  See id. at 482; see also Chisum on Patents, vol. 8, § 21.02[1][d][iii] (2003).  In this case, since Pandora's patent application has not yet issued, there is no actual case or controversy between the parties and Chamilia's request for a declaratory judgment should be dismissed.  28 U.S.C. § 2201.

**CONCLUSION**

Pandora has demonstrated that there is no genuine issue as to any material facts as to plaintiff's claims and, therefore, Pandora is entitled to the entry of summary judgment in its favor against Chamilia on each and every claim in its Complaint.

Dated: New York, New York
July 15, 2005

        Respectfully submitted,

        LATHROP & GAGE L.C.

        By:___ s/William R. Hansen_____
          William R. Hansen (WH-9446)
          Gianfranco G. Mitrione (GM-8168)
          Bridget A. Short (BS-4191)
          230 Park Avenue, Suite 1847
          New York, New York 10169
          (212) 850-6220 (tel)
          (212) 850-6221 (fax)

          Attorneys for Defendant
          Pandora Jewelry, LLC

Of counsel:
Travis W. McCallon
LATHROP & GAGE L.C.
Kansas City, Missouri

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of July, I electronically filed the declarations of Gianfranco G. Mitrione (executed on January 14, 2005 and July 15, 2005), Michael Lund Petersen (executed on January 12, 2005 and July 15, 2005), Jody Henderson (executed on January 12, 2005), Steve Glueck (executed on January 12, 2005 and July 15, 2005), Knud Hostrup (executed on January 13, 2005), Richard R. Harrington (executed on July 15, 2005) and Calleen S. Wickard (executed on July 15, 2005) and the exhibits annexed thereto, the Statement of Undisputed Material Facts submitted pursuant to Rule 56.1 of the local rules, and a memorandum of law by using the CM/ECF system with the Clerk of the Court and to Plaintiff's counsel:

James G. Goggin
Dylan Smith
VERRILL DANA, LLP
P.O. Box 586
Portland, Maine 04112

s/Gianfranco G. Mitrione
*An Attorney for Defendant*
*Pandora Jewelry, LL*