UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHAMILIA, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PANDORA JEWELRY, LLC, )<br>)<br>Defendant. ) | Civil No.: 04-CV-06017 (KMK) |

### DECLARATION OF DONNA-RENEE CARLOS

Pursuant to 28 U.S.C. § 1746, Donna-Renee Carlos declares as follows:

1.  I am the owner of Carlos Italian Charm Shop, 12401 Folsom Boulevard, #223, Rancho Cordova, California. I have personal knowledge of the matters described in this declaration.

2.  I have carried Chamilia jewelry since August 2003.

3.  In February 2004, I spoke by phone to Pandora's president, Michael Lund, and agreed to carry Pandora jewelry. As a result of this conversation, Carlos Italian Charm Shop purchased a "starter pack" from Pandora consisting of approximately $5000 worth of jewelry and various promotional materials.

4.  Shortly after Carlos Italian Charm Shop started selling Pandora, I received a series of calls from Mr. Lund. Even though I had never agreed to sell Pandora on an exclusive basis, Mr. Lund was very angry that my store was advertising both Chamilia and Pandora on its web site. From March through May, Mr. Lund called the store on an almost-daily basis, often three or four times a day. I personally spoke to him about five times during this period. I also spoke on several occasions to Pandora's sales representative, Stephen Glueck. Mr. Lund in

Carlos Decl., p.1

CHAMILIA0253

particular was so aggressive and persistent that I eventually had no choice but to tell them that I would no longer accept calls from Pandora.

5.   In the course of the calls I have just described, Mr. Lund told me that Pandora had a patent, and that the Chamilia people were "counterfeiters" who had stolen his patent. When, in response, I asked Mr. Lund for information and clarification about the status of Pandora's "patent," he avoided the issue and moved on to other matters.

6.   Mr. Lund also told me during these calls that I could not sell Pandora if I also sold Chamilia. He insisted that I return the Pandora merchandise I had purchased from the company. Since I had already invested money promoting the Pandora product, I told him I would return it only if Pandora paid full retail price for the merchandise. Pandora refused to do this.

7.   After May 2004, when I told Mr. Lund to stop calling my store, I did not hear from him for a while. But on the morning of August 16, 2004, I received a message on my answering machine from Mr. Lund stating as follows:

> Hi Donna. This is Michael Lund with Pandora Jewelry. I am the President. I need to talk to you about something. Could you please give me a call before my lawyer sends you a letter? I just want to talk to you myself in regards to the Chamilia you're selling. Cause now our patent application that has been publicized and you are selling something that violates my patent and therefore I can sue you for your profits and legal expenses. So please give me a call so maybe we can clear this up in a good fashion. I hope I can talk to you today. My number is 4103090213. Thank you very much. Bye bye.

8.   On the day I received Mr. Lund's message, I mailed and faxed him the letter attached to this declaration as Exhibit A. In my letter, I quoted Mr. Lund's message word for word and made the following request: "As you indicated that your patent now affords you the position to sue us, we will need a copy of the approved patent so we can isolate our legal grounds." Mr. Lund never responded to my letter.

CHAMILIA0254

9. On or about August 19, 2004, I received the letter attached as Exhibit B to this declaration from Pandora's attorney, William R. Hansen of DuaneMorris, advising that Pandora's patent application had been published. The letter also included the following statement: "Pandora is now aware that Carlos Italian Charm Shop is offering to sell or selling necklaces and bracelets in the United States which appear to utilize substantially the same construction and perform the same function as Pandora's patent pending for its necklaces and bracelets." Given my contacts with Mr. Lund over the past several months, I understood this to refer to Chamilia jewelry.

10. Attached as Exhibit C to this declaration is a letter, dated September 16, 2004, that I received from Pandora. This letter purports to set forth Pandora's "Terms and Condition[s]" and requests that I accept these terms and conditions by signing and returning the letter. Among other things, the letter includes the following term: "As a customer of the Pandora Brand of jewelry products, you agree not to sell any other brand of modifiable jewelry which may appear to utilize substantially the same construction and perform the same function as described in Pandora's patent application."

11. As I had never agreed to any of the "terms and conditions" in the September 16 letter when I placed my initial order for Pandora merchandise, I did not sign the letter.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 20th, 2005.

Donna-Renee Carlos

Carlos Decl., p.3

CHAMILIA0255