IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
CHAMILIA, LLC,                          :    Civil Action No.:
                                        :    04 CV 06017 (KMK)
                    Plaintiff,          :
                                        :
         -against-                      :    ECF CASE
                                        :
PANDORA JEWELRY, LLC,                   :
                                        :
                                        :
                    Defendant.          :
---------------------------------------------------------X

# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LATHROP & GAGE L.C.
William R. Hansen (WH-9446)
Gianfranco G. Mitrione (GM-8168)
Bridget A. Short (BS-4191)
230 Park Avenue, Suite 1847
New York, New York  10169
(212) 850-6220 (tel)
(212) 850-6221 (fax)

**Attorneys for Defendant**

Defendant Pandora Jewelry, LLC ("Pandora"), by its attorneys, hereby submits its Reply to Plaintiff Chamilia, LLC's ("Chamilia") Opposition to Summary Judgment.

## PRELIMINARY STATEMENT

When put to its proof in this Summary Judgment Motion, Chamilia's case is revealed for what it has always been: a strike suit aimed at a competitor. For each alleged claim, starting with the two federal counts for Lanham Act unfair competition and false patent marking, Chamilia's case has no visible means of support. Summary judgment cannot be defeated by a collection of conclusions unsupported by admissible evidence. Yet that is the sole content of Chamilia's opposition.

The declarations of Chamilia's counsel, James Goggin, concerning the offer for sale of Pandora jewelry products exemplify the total lack of candor by Chamilia.[1] The "conclusion" drawn by Mr. Goggin that Pandora knew its "patent" was invalid because sales were made in the U.S. more than a year before the application was filed is false. Simply put, no evidence supports this "conclusion" based upon archived internet files which themselves support a contrary position.

As set forth in the instant reply and in the Rule 56(e) motion to strike Chamilia's evidentiary submissions submitted herewith, summary judgment must be granted.

## ARGUMENT

Pursuant to Rule 56(e), Fed. R. Civ. P., Pandora has met its initial burden of production. Now, the burden shifts to the non-moving party, Chamilia, to come forward with specific facts demonstrating the existence of "genuine" issues of material fact; to defeat a summary judgment motion the non-moving party "must do more than simply

---

[1] Such evidence of patent invalidity under 35 U.S.C. § 102(b) is not even relevant since no patent has yet issued and no claim of patent infringement has been asserted. See GAF Bldg. Materials Corp. v. Elk Corp., 90 F.3d 479, 483 (Fed. Cir. 1996).

show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Mere denials or conclusory statements do not raise a genuine issue of material fact." Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004); see also, Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.), cert. denied, 474 U.S. 829 (1985). At each turn, Chamilia has failed to allege any "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary Judgment has long been a valuable tool for piercing conclusory allegations and disposing of unsupportable claims prior to trial. See, e.g., American Mfrs. Mut. Ins. Co. v. American Broadcasting -- Paramount Theatres, Inc., 388 F.2d 272, 278-79 (2d Cir. 1967); Dressler v. MV Sandpiper, 331 F.2d 130, 132 (2d Cir. 1964). A tool's which application could not be more appropriate than in the instant action.

### A. Chamilia's Federal and State Unfair Competition Claims Fail

Since Chamilia has utterly failed to offer admissible evidence of dissemination of false statements to any third parties, let alone evidence of the kind of "widespread dissemination" required by federal law, its unfair competition claims under the Lanham Act and under New York law cannot survive summary judgment. See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 57 (2d Cir. 2002) ("Fashion Boutique II").

In its memorandum of law, Chamilia unsuccessfully distinguishes the prevailing authority in the Second Circuit pertaining to its Lanham Act claim and maintains, without sufficient admissible evidence, that Pandora has engaged in a "widespread and coordinated campaign to deceive retailers." Fashion Boutique II, 314 F.3d at 57; see also Chamilia Opp. Memo. p.10. In Fashion Boutique II, the Second Circuit held that twenty-

2

seven oral statements by the defendant concerning the "fake," "bogus," or inferior nature of that plaintiff's merchandise and service, in a potential marketplace of thousands of customers, did not constitute sufficient commercial advertising or promotion to establish a Lanham Act disparagement claim and survive summary judgment. Id. at 58. It appears that Chamilia relies on declarations submitted by three of its retailers[2] who quote alleged disparaging statements made by Pandora's representatives to support its claim that Pandora engaged in a deceptive "widespread and coordinated campaign." The three retailers cited by Chamilia who allegedly received communications containing disparaging remarks are an insufficient number to establish "commercial advertising or promotion," under the Lanham Act. Furthermore, the instances relied upon by Chamilia remain far short of the twenty-seven oral communications the court in Fashion Boutique II found to be insufficient to overcome summary judgment. In the end, Chamilia fails to adduce evidence of "widespread dissemination" of disparaging statements. See Fashion Boutique II, 314 F.3d at 57.

In support of its claim that Pandora engaged in a "pattern of deception" with the intent to mislead retailers, Chamilia suggests that Pandora made false statements to Chamilia's representatives, described Chamilia as a "knock-off company," and made misrepresentations about Pandora's pending patent application. First of all, any dissemination of information regarding Chamilia's present "knock-off" of Pandora's "original" jewelry products are accurate statements of fact which are neither false nor misleading rendering them not actionable under the Lanham Act or under state law. See Pandora Smykker, 03 Civ. 7587; see also Mitrione Decl. ¶5 and Petersen Decl. ¶¶14 and

---

[2] None of these declarants have stopped selling Chamilia products at retail. See Calleen S. Wickard Declaration ¶6; Richard R. Harrington Declaration ¶¶5-7; and Dep. Tr. of Julkowski, p. 189, lines 3-8; see also Mitrione Second Decl., Ex. V.

3

17. Further, any statements made by Pandora concerning its "patent pending" are accurate since Pandora is in fact the owner of a pending patent application filed on July 21, 2003 in the United States Patent and Trademark Office (hereinafter "Patent Pending"). Chamilia's claim that there is "strong evidence" that Pandora knew from the outset that its patent application was improper is absurd. Chamilia relies on the declaration of its counsel, James G. Goggin, dated August 15, 2005 and Mr. Goggin's late filed supplemental declaration dated August 16, 2005 to support its accusation that Pandora entered the U.S. market more than one year before filing its patent application and, thus, rendering its patent application "improper." In his supplemental declaration, Mr. Goggin attached an affidavit from Molly Bragg, Office Manager of the Internet Archive company, and copies of three (3) archived web site pages from a salon named Looks LLC, in support of his statement that Pandora's jewelry products were "offered for sale in the United States no later than June 2002." See Goggin Decl. ¶3 and Goggin Supp. Decl. ¶2. When viewing the second and third web pages attached to Molly Bragg's affidavit, the only pages that refer to Pandora's jewelry products, the URL's assigned by Internet Archive read, in relevant part, "20020804131342" and "20020806002151." Ms. Bragg's affidavit informs the Court that the Looks LLC archived pages which refer to Pandora's jewelry products, namely, pages 2 and 3 only, are dated August 4 and August 6, 2002 respectively– not June 1, 2002 as Mr. Goggin informed the Court in his supplemental declaration.[3]

---

[3] By letter dated August 19, 2005, Pandora's counsel provided Chamilia with an opportunity to withdraw Mr. Goggin's "Supplemental Declaration" which stated falsely that the Bragg Affidavit "... is submitted as additional authentication of Exhibit B attached to my first declaration, which consists of true and correct copies of selected pages from the web site of LOOKS, LLC as it existed on June 1, 2002." Mr. Goggin refused to withdraw his supplemental declaration and filed a Second Supplemental Declaration on August 22, 2005 in which he "concluded" in the face of the URL assigned by the Internet Archive company to each web page, that "the fact that if you start from a homepage date [sic] June 1, 2002 and are immediately linked to a page showing products and then from that page to a page showing jewelry products

4

Therefore, paragraph 3 of Mr. Goggin's first declaration and paragraph 2 of his first supplemental declaration are unsupported by the materials attached to Ms. Bragg's affidavit. Looking not to Mr. Goggin's "conclusion" but to Mr. Bragg's affidavit, it is revealed that due to the peculiar manner of Wayback operation, this search has retrieved the home page of Looks LLC (www.looksllc.com) as it existed on June 1, 2002, but linked to web pages (pages 2 and 3) that can only be found as of August 4, 2002 and August 6, 2002 respectively. Therefore, August 4 and 6, 2002 are the only dates which arguably were an offer for sale – clearly within one year of the patent application's filing date of July 21, 2003. Chamilia offers the Court no relevant evidence to support the June, 2002 offer-for-sale date which is the premise of Mr. Goggin's "conclusion."

In further support of its claim that Pandora engaged in a "scheme to mislead retailers," Chamilia cites to Pandora's Terms and Condition letter agreements with its retailers which includes a provision that its retailers carry Pandora jewelry products exclusively. With no evidence to support this claim, Chamilia argues the undisputed fact that Pandora formulated its legal exclusivity policy to control the quality of its jewelry products, to avoid warranty issues with customers, to prevent the passing off of competitor's goods as if they were Pandora's and to balance the retail territorial exclusivity Pandora provides its customers. See Petersen Supp. Decl. ¶¶15-18. Therefore, Pandora adopted this policy to protect its legitimate business interests and the interests of consumers. See id. Chamilia offers not evidence to support its argument that is was part of a "scheme to mislead retailers."

---

that those are links that would have existed as of June 1, 2002." See Goggin Second Supplemental Decl. ¶5.

5

In support of its claim that Chamilia suffered damages as a result of alleged statements made by Pandora, Chamilia identifies "multiple former customers who abruptly ceased purchasing from Chamilia."[4] See Chamilia Mem. p. 10; Julkowsky Decl. ¶4. Chamilia's assertions concerning alleged damages are merely conclusory statements unsupported by admissible evidence. Chamilia has failed to produce a single statement from a retailer testifying that it ceased purchasing products from Chamilia as a result of statements made by Pandora – not one. On this point, it is undisputed that Michele Vogel (West End Gallery), Dawn Moore (Highlands West Gift Gallery) and Donna-Renee Carlos (Carlos Italian Charm Shop), who submitted declarations in this case, remain customers of Chamilia. See Calleen S. Wickard Declaration ¶6; Richard R. Harrington Declaration ¶¶5-7; and Dep. Tr. of Julkowski, p. 189, lines 3-8; see also Mitrione Second Decl., Ex. V.

### B.  Chamilia's Patent Law Claim Fails

While Pandora fully briefed Chamilia's false patent marking claim under 35 U.S.C. § 292 with citations to the instant record and relevant case law, Chamilia, in its opposition memorandum of law, ignores them. Indeed, Chamilia only mentions its own claim under Section 292 in a parenthetical comment concerning a decision rendered by the Northern District Court of Ohio and buried in a footnote on page 11 of its brief. Chamilia Opp. Mem. pp. 8 and 11. In fact, in the only case cited by Chamilia in support of this claim, Sadler-Cisar, Inc. v. Commercial Sales Network, Inc., 786 F. Supp. 1287,

---

[4] In support of its opposition, Chamilia submitted a declaration by its president, Jeffrey Julkowsky, who identified a number of customers who he "understand[s]" have decided not to purchase products from Chamilia as a result of alleged statements made by Pandora. In a motion filed simultaneously with this reply memorandum, Pandora seeks to strike paragraph 4 of the Declaration of Jeffrey Julkowski, paragraph 3 of the Declaration of James G. Goggin, paragraph 2 of the Supplemental Declaration of James G. Goggin and the entirety of the Second Supplemental Declaration of James G. Goggin for containing inadmissible hearsay, legal arguments, generalized conclusory statements and information which is not attributable to the declarant's personal knowledge.

1296 (N.D. Ohio 1991), the defendants were found liable for false marking since they marked their product with the designation "patent pending" and offered it for sale when, in fact, there was no patent application pending. Here, the undisputed evidence is contrary to the facts in Sadler-Cisar: Pandora does in fact own a patent application pending in the U.S. Patent and Trademark Office for its jewelry product. See Petersen Decl. ¶8; Hostrup Decl. ¶7; and Henderson Decl. ¶6. Furthermore, since the filing of the application, Pandora has used the permitted legend "patent pending" in the marketplace and in publications designed to advertise, promote and sell its product covered by the pending patent application. See Petersen Decl. ¶9 and Ex D; see also Petersen Suppl. Decl. ¶6, Ex. L; Hostrup Decl. ¶7; Mitrione Second Suppl. Decl, Ex. U, Julkowski Dep. Tr. at 355.

### C.  Chamilia's Amalgam of State Law Claims All Fail

There are no genuine issues for trial on Chamilia's remaining common law claims. Chamilia relies on Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Publ'g Inc., 8 F. Supp.2d 357, 361 (S.D.N.Y. 1998) in which this Court applied New Jersey law in support of its decision to deny plaintiff's motion to dismiss the defendant's counterclaim for slander of title. Even if the Court determines that a claim for slander of title may apply to "intangible intellectual property" as suggested by Chamilia, Chamilia has still not come forward with any evidence of special damages or evidence of any malice or bad faith on the part of Pandora. See Markowitz v. Republic Nat'l Bank, 651 F. 2d 825, 828 (2d Cir. 1981).

Disparagement-related claims require the publication of information to a third party. Thus, as Pandora set forth in its memorandum of law, in order to bring a

7

disparagement-related claim properly, Chamilia must identify certain specific facts regarding the recipient(s) and effect(s) of alleged disparaging statements. For example, "[c]ourts considering product disparagement claims have . . . grant[ed] <u>motions to dismiss</u> or for <u>summary judgment</u> for failure to <u>allege</u> special damages with the requisite specificity." <u>Kirby v. Wildenstein</u>, 784 F. Supp. 1112, 1116 (S.D.N.Y. 1992) (emphases added). Similarly, this court has dismissed defamation and disparagement claims for a failure to allege with particularity to whom the defendant published disparaging remarks. <u>See</u> <u>Kasada, Inc. v. Access Capital, Inc.</u>, 2004 U.S. Dist. LEXIS 25257 at **47-52, 57 (S.D.N.Y. Dec. 14, 2004). This court has also dismissed tortious interference claims for a failure to allege with particularity the business relations the plaintiff claims the defendant prevented from going forward. <u>See id.</u> at *63-64.

Chamilia next argues in another evasion that the products at issue here are not the same as the products at issue in the prior action between the parties, and thus have not been judicially determined to be of lesser quality. This argument intentionally misses the point. Regardless of the outcome of the prior action, Pandora's characterization of Chamilia's jewelry products as "knock-offs" is not false.[5] By definition, the jewelry products Chamilia manufactures and sells are copies, or "knock-offs," of Pandora's products, which were first to arrive in the marketplace. <u>See</u> Mitrione Decl. ¶ 5. Further, as Pandora noted in its memorandum of law, Chamilia's products utilizing its copy of the system used first by Pandora to string jewelry beads, spacers, and clips are known in the industry and to the public as "knock-offs." <u>See</u> Def.'s Mem. for S.J. at p. 6; Petersen Decl. ¶17; Hostrup Decl. ¶6; Mitrione Decl. ¶5. Thus, regardless of the outcome of the

---

[5] Pandora has a privilege to communicate the result of that action to customers, however. <u>See</u> Def.'s Mem. at pp. 13-14.

8

prior action, any dissemination of information regarding Chamilia's second comer "knock-off" products are accurate statements of fact and are not actionable. See Johnson & Johnson * Merck Pharms. Co. v. Smithkline Beecham Corp., 960 F.2d 294, 297 (2d Cir. 1992).

## CONCLUSION

Pandora has demonstrated that there is no genuine issue as to any material facts as to plaintiff's claims and, therefore, Pandora is entitled to the entry of summary judgment in its favor against Chamilia on each and every claim in its Complaint.

Dated: New York, New York
September 2, 2005

        Respectfully submitted,

        LATHROP & GAGE L.C.

        By: _____s/William R. Hansen_____
            William R. Hansen (WH-9446)
            Gianfranco G. Mitrione (GM-8168)
            Bridget A. Short (BS-4191)
            230 Park Avenue, Suite 1847
            New York, New York 10169
            (212) 850-6220 (tel)
            (212) 850-6221 (fax)

        Attorneys for Defendant
        Pandora Jewelry, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of September, 2005, I electronically filed defendant's Reply Memorandum of Law in Support of Its Motion for Summary Judgment and the Second Supplemental Declaration of Gianfranco G. Mitrione with the Clerk of the Court by using the CM/ECF system with notice of case activity generated and sent electronically to the following:

> James G. Goggin
> VERRILL DANA, LLP
> One Portland Square
> Portland, Maine 04112

> s/Gianfranco G. Mitrione
> *An Attorney for Defendant*
> *Pandora Jewelry, LLC*

NYDOCS 9840v1