IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
CHAMILIA, LLC,                          :     Civil Action No.:
                                        :     04 CV 06017 (KMK)
        Plaintiff,               :
                                        :
-against-                               :     ECF CASE
                                        :
PANDORA JEWELRY, LLC,                   :
                                        :
        Defendant.               :
---------------------------------------------------------X

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO STRIKE INADMISSIBLE EVIDENCE
OFFERED BY PLAINTIFF IN OPPOSITION TO
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

LATHROP & GAGE L.C.
**William R. Hansen (WH-9446)
Gianfranco G. Mitrione (GM-8168)
Bridget A. Short (BS-4191)
230 Park Avenue, Suite 1847
New York, New York 10169
(212) 850-6220 (tel)
(212) 850-6221 (fax)**

**Attorneys for Defendant**

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT .................................................................................................................. 2

    A.    The Strigent Requirements of Rule 56(e) Affidavits ................................... 2

    B.    Failure to Comply with Rule 56(e) Requirements Warrants the Striking of the Declaration of Jeffrey Julkowski ........................................ 3

    C.    Each of Chamilia's Three Declarations by Its Counsel Contains Portions Which Utterly Disregard Rule 56(e) and Thus, Should Be Stricken ........................................................................................................ 7

            1.    The Supplemental Goggin Declaration dated August 16, 2005 and Second Supplemental Goggin Declaration Dated August 22, 2005 Are Untimely and Thus Should Not Be Considered ........................................................................................ 8

            2.    In the Alternative, If Chamilia's Late Submissions Are Not Stricken for Procedural Defects, the Court Should Nonetheless Strike the Inadmissible Portions of the Goggin Declarations for Their Failure to Comply with the Requirements of Rule 56(e) ............................................................. 8

CONCLUSION ............................................................................................................ 12

# TABLE OF AUTHORITIES

**CASES**                                                                                                                        **PAGE**

Bellsouth Telecomms. v. W.R. Grace & Co.,
77 F.3d 603 (2d Cir. 1996) .......................................................................................... 8

Carnrite v. Granada Hosp. Group, Inc.,
175 F.R.D. 439 (W.D.N.Y. 1997) .............................................................................. 10

Friedel v. Madison,
832 F.2d 965 (7th Cir. 1987) ...................................................................................... 7

GAF Bldg. Materials Corp. v. Elk Corp.,
90 F.3d 479 (Fed. Cir. 1996) ..................................................................................... 10

H. Sand & Co. v. Airtemp Corp.,
934 F.2d 450 (2d Cir. 1991) ................................................................................ 2, 3, 7

Patterson v. County of Oneida,
375 F.3d 206 (2d Cir. 2004) ...................................................................................... 2, 3

Randell v. United States,
64 F.3d 101 (2d Cir. 1995) ....................................................................................... 10

Sarno v. Douglas Elliman-Gibbons & Ives, Inc.,
183 F.3d 155 (2d Cir. 1999) ...................................................................................... 3, 6

Schwapp v. Town of Avon,
118 F.3d 106 (2d Cir. 1997) ....................................................................................... 3

United States v. Alessi,
599 F.2d 513 (2d Cir. 1979) ...................................................................................... 3, 9

United States SBA v. Citibank, N.A.,
1997 U.S. Dist. LEXIS 1080 (S.D.N.Y. Feb. 4, 1997) ................................................. 6

Weeks v. ARA Services,
869 F. Supp. 194 (S.D.N.Y. 1994) ............................................................................. 3

**STATUTES**

35 U.S.C. § 102(b) .................................................................................................... 10

Fed. R. Civ. P. 56(e) ............................................................................................ passim

## OTHER AUTHORITIES

Fed. R. Evid. 801(c) ............................................................................................................. 5, 6

Fed. R. Evid. 802 ..................................................................................................................... 4

Defendant, Pandora Jewelry LLC ("Pandora"), by its counsel, hereby submits a motion to strike inadmissible evidence offered by Plaintiff, Chamilia LLC ("Chamilia"), in opposition to Pandora's motion for summary judgment.

## PRELIMINARY STATEMENT

At the last opportunity to reveal the factual basis of its claims and to save its case from dismissal on summary judgment, Chamilia principally offers one declaration from a Chamilia representative, founded on inadmissible hearsay and unsubstantiated conclusions, and three declarations from its attorneys, riddled with unsupported conclusions and legal argument. In so doing, Chamilia flagrantly disregards the requirements of Rule 56(e) which requires supporting affidavits to be based on personal knowledge and state facts admissible in evidence. Short of citing case law, the declarations from James G. Goggin, attorney for Chamilia, attempt to reiterate Chamilia's legal and philosophical conclusions on the "validity" of Pandora's pending patent and to offer Mr. Goggin's unfounded legal opinion and interpretation of printouts from an Internet Archive company, commonly referred to as "The Wayback Machine". The Declaration of Jeff Julkowski, President of Chamilia, is equally defective, lacking in personal knowledge and fraught with inadmissible hearsay.

To the extent the declarations contain legal argument, unsupported conclusions, inadmissible hearsay and include information outside the declarant's personal knowledge, those portions should not be considered by the Court on this motion, but rather should be stricken from the record.

## ARGUMENT

A.    The Stringent Requirements of Rule 56(e) Affidavits

An affidavit submitted in opposition to summary judgment must comply with the requirements of Rule 56(e) of the Federal Rules of Civil Procedure, which states in pertinent part that such affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); see Patterson v. County of Oneida, 375 F. 3d 206, 219 (2d Cir. 2004). "[W]hen a motion for summary judgment is made and supported as provided in this rule, . . . the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Patterson, 375 F.3d at 219. The requirement set forth in Rule 56(e) that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit "also means that an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." Id.; see also H. Sand & Co. v. Airtemp Corp., 934 F.2d 450, 454-55 (2d Cir. 1991)(hearsay assertion that would not be admissible if testified to at trial is not competent material for a Rule 56 affidavit). Pandora respectfully requests that paragraph 4 of the Declaration of Jeffrey Julkowski, paragraph 3 of the Declaration of James G. Goggin, paragraph 2 of the Supplemental Declaration of James G. Goggin and the entirety of the Second Supplemental Declaration of James G. Goggin be stricken for containing inadmissible hearsay, legal arguments, generalized conclusory statements and information which is not attributable to the declarant's personal knowledge.

B.  Failure to Comply with Rule 56(e) Requirements Warrants the Striking of the Declaration of Jeffrey Julkowski

In support of its opposition to Pandora's motion for summary judgment, the only declaration from a Chamilia representative Chamilia offers contains inadmissible hearsay and unsupported conclusions. When portions of a declaration do not comply with Rule 56(e), the court is "free to disregard the inadmissible paragraphs," and strike portions of a declaration which are not made upon the declarant's personal knowledge, contain inadmissible hearsay or make generalized or conclusory statements. United States v. Alessi, 599 F.2d 513, 515 (2d Cir. 1979) (citation omitted); see, also, Weeks v. ARA Services, 869 F. Supp. 194, 196 (S.D.N.Y. 1994)(generalized and conclusory affidavits are insufficient to withstand defendant's motion for summary judgment); H. Sand & Co., 934 F.2d at 454-55.

The "information" contained in paragraph 4 of the Declaration of Jeffrey Julkowski (hereinafter "Julkowski Declaration") amounts to nothing more than speculation and hearsay and thus should be stricken. See Patterson, 375 F.3d at 219 ("Rule 56(e)'s requirement . . . means that an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."); Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999) (holding that statements as to what affiant "was told" was hearsay that "did not constitute competent evidence" and thus could not be considered in opposition to motion for summary judgment); see also Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997) (bald assertions not based on personal knowledge were properly ignored by district court in granting summary judgment).

In paragraph four, Jeffrey Julkowski, president of Chamilia, attempts to identify twenty retailers who, he "understands," "have declined to continue purchasing Chamilia merchandise as a result of Pandora's threats regarding its supposed patent rights." See Julkowski Decl., ¶ 4. Rather than directly state that these retailers have declined to continue purchasing Chamilia merchandise as a result of Pandora's threats, Mr. Julkowski carefully chooses the word "understand" to preface his conclusory allegations - a red flag that the information he is providing is not from his personal knowledge, but rather is based on hearsay. Chamilia offers nothing to explain or support Mr. Julkowski's "understanding," but rather expects the Court to credit his conclusions as fact.

Looking behind the bald conclusions, the Julkowski Declaration does not present any admissible evidence which establishes that any customer has refused to purchase Chamilia jewelry products or has canceled orders for Chamilia jewelry products as a result of statements made by Pandora, whether false or not. None of the retailers Mr. Julkowski recites has submitted a declaration substantiating his conclusory allegations that they have declined to purchase Chamilia merchandise based on threats made by Pandora. There are no letters, emails, faxes or any other type of written communication of record from them, or any other retailers, stating a refusal to continue purchasing Chamilia merchandise because of <u>anything</u> Pandora may have done or said. Therefore, without this documentary or testimonial evidence to establish the basis for Mr. Julkowski's "understanding," paragraph 4 of the Julkowski Declaration is mere speculation. Such testimony would not be admissible at trial and thus should be stricken. Fed. R. Civ. P. 56(e); Fed. R. Evid. 802.

According to his declaration, from a review of a "Sales Summary", Mr. Julkowski claims to be able to refresh his recollection, which incidentally failed him at the time of his deposition over three months ago, and identify retailers he claims Chamilia lost as a result of "threats" by Pandora. See Julkowski Decl., ¶ 4. However, Mr. Julkowski fails to describe in even the most general terms what in, or about, the "Sales Summary" reveals that these retailers are customers Chamilia has lost as a result of Pandora's alleged threats. A review of the "Sales Summary" attached to the Julkowski Declaration as Exhibit A reveals it is nothing more than Chamilia's "Sales by Customer Summary" dated January 1, 2004 through May 1, 2005. There are no contemporaneous interlineations or comments regarding customer decisions to purchase or not purchase Chamilia jewelry products; the document merely consists of lines of names and numbers. Again, the Julkowski Declaration fails to identify any facts upon which Mr. Julkowski bases his conclusion that Chamilia has lost customers because of statements made by Pandora.

The "information" presented in paragraph 4 of the Julkowski Declaration is unreliable, unauthenticated hearsay that would not be admissible at trial under the Federal Rules of Evidence. "Hearsay is a statement, other than made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Although, Mr. Julkowski states that "the facts set forth in [his] declaration are based on [his] personal knowledge," (see Julkowski Decl., ¶ 1) his deposition testimony indicates otherwise. During his deposition, when unable to recall a complete list of customers Chamilia allegedly lost as a result of statements made by Pandora, Mr. Julkowski was asked what document he could "go back and look at" to determine which customers were lost, to which he responded:

A. "<u>Talk</u> to [his] sales reps who know their accounts and have been <u>told</u> by them that we are no longer ordering from Chamilia. We won't order from Chamilia because they're going to be out of business." (emphasis added)

Q. And what document would that be? Is there a document?

A. Sales reps, sales reps lost orders, sales reps canceled orders.[1]

Q. Do you maintain a list of customers that you lost as a result of actions or statements made by Pandora?

A. I know of the ones that I've had conversations with.

<u>See</u> Julkowski Dep. Tr., pp. 262-64, attached as Exhibit A to the Declaration of Gianfranco G. Mitrione.

As this testimony indicates, Mr. Julkowski is unable to point to documentary evidence that Chamilia has lost any customers as a result of anything Pandora did or said. Instead, his testimony resorts to hearsay by recounting out of court conversations he has had with retail customers and, even worse, recounting conversations he has had with sales representatives who have had conversations with retail customers. Either way, Chamilia is offering the information in paragraph 4 of the Julkowski Declaration to prove the truth of the matter asserted, namely that Chamilia has lost the twenty identified customers as a result of threats made by Pandora; as such those portions of the Julkowski Declaration are inadmissible hearsay and should be stricken. Fed. R. Evid. 801(c) and 802; <u>see, e.g.</u>, <u>Sarno</u>, 183 F.3d at 160; <u>United States SBA v. Citibank, N.A.</u>, 1997 U.S. Dist. LEXIS 1080 at *10-11 (S.D.N.Y. Feb. 4, 1997) (striking affidavit where affiant

---

[1] Despite Mr. Julkowski's testimony that documents consisting of "sales reps lost orders" and "sales reps canceled orders" exist, Chamilia did not produce any "lost" or "canceled" orders in discovery.

6

made "no attempt to specify which assertions [were] based on [personal] knowledge or how he obtained such knowledge.").

Mr. Julkowski's careful choice of the word "understand" in reciting his list of allegedly lost customers should not go unnoticed. Nor should Chamilia's failure to provide any documentary or testimony evidence from any retailer to support Mr. Julkowski's unfounded conclusions that threats made by Pandora caused customers to decline to continue purchasing Chamilia merchandise. Mr. Julkowski offers no specific facts to support his "understanding" that retailers have declined to continue purchasing Chamilia merchandise as a result of Pandora's threats. Thus, paragraph 4 of the Julkowski Declaration is classic inadmissible hearsay that should not be considered by the Court as evidence. See H. Sand & Co., 934 F.2d at 454-55 (holding that a hearsay assertion that would not be admissible at trial is insufficient to oppose a motion for summary judgment).

C.  Each of Chamilia's Three Declarations by Its Counsel Contains Portions Which Utterly Disregard Rule 56(e) and Thus, Should Be Stricken.

Chamilia has chosen to use the three Goggin Declarations as another vehicle to present its baseless conclusory allegations relating to Pandora's patent pending. Courts have cautioned that "[t]he use of affidavits by counsel is in certain carefully confined situations undoubtedly appropriate, but it is a tactic fraught with peril, and counsel must remember that the requirements of Rule 56(e) are set out in mandatory terms and the failure to comply with those requirements makes the proposed evidence inadmissible during the consideration of the summary judgment motion." Friedel v. Madison, 832 F.2d 965, 970 (7th Cir. 1987). Paragraph 3 of the Goggin Declaration, paragraph 2 of the Supplemental Goggin Declaration and the entirety of the Second Supplemental Goggin

7

Declaration contain legal arguments, generalized conclusory statements and information which is not attributable to Mr. Goggin's personal knowledge; therefore, Pandora respectfully requests that the Court strike the inadmissible portions.

1. The Supplemental Goggin Declaration dated August 16, 2005 and Second Supplemental Goggin Declaration dated August 22, 2005 Are Untimely and Thus Should Not Be Considered

Before addressing the substantive defects in Chamilia's submission, Pandora moves to strike as untimely the Supplemental Goggin Declaration and exhibits thereto and the Second Supplemental Goggin Declaration. The deadline for Chamilia to file its opposition to Pandora's motion for summary judgment was August 15, 2005. Chamilia filed the Supplemental Goggin Declaration and the Second Supplemental Goggin Declaration on August 16 and August 22, 2005 respectively, each time offering no excuse for the late submission. Chamilia has failed to respect the deadlines of this Court; and therefore, Pandora respectfully requests that the Court strike the untimely submissions in their entirety. See Scheduling Order of this Court dated June 27, 2005.

2. In the Alternative, If Chamilia's Late Submissions Are Not Stricken for Procedural Defects, the Court Should Nonetheless Strike the Inadmissible Portions of the Goggin Declarations for Their Failure to Comply with the Requirements of Rule 56(e)

Chamilia relies on three declarations of its counsel, James G. Goggin, dated August 15, 16, and 22, 2005, to support its accusation that Pandora jewelry products were offered for sale in the U.S. more than one year before filing its patent application, thus, rendering its patent application "improper." See Goggin Decl., ¶ 3. However, a declaration submitted on a motion for summary judgment is not the proper place to make legal arguments and present conclusory opinions about "facts." See Bellsouth Telecomms. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996)(conclusory

8

statements insufficient to raise a triable issue of material fact were properly disregarded); Alessi, 599 F.2d at 514-15.

By his first declaration dated August 15, 2005 (hereinafter "First Goggin Declaration"), among other exhibits, Mr. Goggin attached as Exhibit B copies of three purportedly archived web site pages from a beauty salon named Looks LLC which he explains were "retrieved using the Internet Archive web site (www.archive.org)." In paragraph 3 of the First Goggin Declaration, Mr. Goggin attests that Exhibit B contains "true and correct copies of selected pages from the web site of LOOKS, LLC as it existed on June 1, 2002" and that "these web pages demonstrate that Pandora jewelry was offered for sale in the United States no later than June 2002." See Goggin Decl., ¶ 3.

In his Supplemental Declaration filed the next day, August 16, 2005 (hereinafter "First Supplemental Goggin Declaration"), Mr. Goggin attached an affidavit from Molly Bragg, Office Manager of the Internet Archive, and another copy of the three archived web site pages from a salon named Looks LLC. In paragraph 2 of the First Supplemental Goggin Declaration, Mr. Goggin reiterates that Exhibit B contains "true and correct copies of selected pages from the web site of LOOKS, LLC as it existed on June 1, 2002." See Goggin Supp. Decl., ¶ 2. Mr. Goggin's personal evaluation of and conclusions drawn from Chamilia's Exhibit B are not only without factual support, but are directly contradicted by the Affidavit of Molly Bragg that Chamilia itself has submitted.

Rather than serving as a means to introduce exhibits already made part of the record, the Goggin Declarations present legal arguments and mischaracterize facts. A declaration submitted by a party's attorney which contains unsupported assertions is

inadequate to defeat a motion for summary judgment. Randell v. United States, 64 F.3d 101, 109 (2d Cir. 1995); see also Carnrite v. Granada Hosp. Group, Inc., 175 F.R.D. 439, 448-49 (W.D.N.Y. 1997) (court struck affidavit of plaintiff's counsel because affidavit discussed facts not within counsel's personal knowledge). Mr. Goggin's statement that the printouts from the Looks LLC web pages "demonstrate that Pandora jewelry was offered for sale in the United States no later than June 2002" is solely Mr. Goggin's misinterpretation and mischaracterization of purported "evidence."[2]

As explained clearly in the Affidavit of Ms. Bragg, the Internet Archive assigns a URL to each page retrieved from its archive of web pages. See Bragg Aff., ¶ 5. The URL is found on the bottom of the printed page and contains the date on which the web page was created (as assigned by the Internet Archive). Id. Mr. Goggin himself lists the URLs for each of the three pages from the Looks LLC archived web pages in his first declaration . See Goggin Decl., ¶ 3. When viewing the second and third web pages attached to Molly Bragg's affidavit, where the Pandora products are referenced, the URLs assigned by Internet Archive read, in relevant part, "20020804131342" and "20020806002151" respectively. Ms. Bragg's Affidavit explains that the date that a particular page was created can be determined, for example, as follows: the first four numbers in the URL indicate the year "**2002**0806002151", the next two the month "2002**08**06002151," and the next two, the day "200208**06**002151." See Bragg Aff., ¶ 5. The remaining digits refer to the time code assigned to the web page in "hh:mm:ss.", i.e. "20020806**002151**" is 12:21 a.m. and 51 seconds. Id. Therefore, the Looks LLC

---

[2] The importance of the date relates to Chamilia's assertion that any resulting U.S. patent Pandora may obtain would be invalid due to sale in the U.S. one year prior to the July 21, 2003 filing date. This is both untrue and irrelevant. Such evidence of patent invalidity under 35 U.S.C. § 102(b) is not relevant since no patent has yet issued and no claim of patent infringement has been asserted. See GAF Bldg. Materials Corp. v. Elk Corp., 90 F.3d 479, 483 (Fed. Cir. 1996).

archived pages which refer to Pandora's jewelry products, namely, pages 2 and 3 only, are dated August 4, 2002 and August 6, 2002 respectively – not June 1, 2002 as Mr. Goggin has misinformed the Court in his First Declaration and First Supplemental Declaration.

Contrary to Mr. Goggin's statement in paragraph 3 of the First Goggin Declaration, pages 2 and 3 of the web pages contained in Exhibit B do not "demonstrate that Pandora jewelry was offered for sale in the United States no later than June 2002," and are not "true and correct copies of the LOOKS LLC website as it existed on June 1, 2002." These erroneous conclusions of "fact" by Mr. Goggin found in paragraph 3 of the First Goggin Declaration and paragraph 2 of the First Supplemental Goggin Declaration should be stricken.

As though Chamilia had not offered enough baseless opinion testimony from its attorney, Chamilia submitted yet a third declaration from Mr. Goggin on August 22, 2005 (hereinafter "Second Supplemental Goggin Declaration"). The Second Supplemental Declaration came on the heels of a letter sent by Pandora's counsel to Chamilia which pointed out to Chamilia Mr. Goggin's erroneous conclusions and requested that Chamilia voluntarily withdraw Mr. Goggin's First Declaration and First Supplemental Declaration on this basis. Chamilia ignored Pandora's counsel's request and answered with the Second Supplemental Goggin Declaration, in which, rather than clarifying his glaring error, Mr. Goggin incredulously maintains that his conclusion from reading the URL assigned by the Internet Archive to the archived files of Looks LLC that all pages in Exhibit B "would have existed as of June 1, 2002," was a plausible and accurate one. He states in his Second Supplemental Declaration's that he "<u>concluded</u> from the fact that if

11

you start from a homepage date [sic] June 1, 2002 and are immediately linked to a page showing products and then from that page to a page showing jewelry products that those are links that would have existed as of June 1, 2002." See Goggin Second Supp. Decl. ¶5 (emphasis added). The Second Supplemental Goggin Declaration ignores plain facts in Ms. Bragg's Affidavit in order to float baseless conclusions. These are not facts which would be admissible in evidence. The Second Supplemental Goggin Declaration should be stricken in its entirety.

## CONCLUSION

Pandora respectfully requests that paragraph 4 of the Declaration of Jeffrey Julkowski, paragraph 3 of the Declaration of James G. Goggin, paragraph 2 of the Supplemental Declaration of James G. Goggin and the entirety of the Second Supplemental Declaration of James G. Goggin be stricken for containing inadmissible hearsay, legal arguments, generalized conclusory statements and information which is not attributable to the declarant's personal knowledge and thereby failing to comply with Rule 56(e).

Dated: New York, New York
September 2, 2005

                Respectfully submitted,

                LATHROP & GAGE L.C.

                By: _____s/William R. Hansen_____
                    William R. Hansen (WH-9446)
                    Gianfranco G. Mitrione (GM-8168)
                    Bridget A. Short (BS-4191)
                    230 Park Avenue, Suite 1847
                    New York, New York 10169
                    (212) 850-6220 (tel)
                    (212) 850-6221 (fax)

                Attorneys for Defendant
                Pandora Jewelry, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of September, 2005, I electronically filed the Notice of Motion, the Declaration of Gianfranco G. Mitrione dated September 2, 2005, and Defendant's Memorandum of Law in Support of Defendant's Motion to Strike Inadmissible Evidence Offered by Plaintiff in Opposition to Defendant's Motion for Summary Judgment with the Clerk of the Court by using the CM/ECF system with notice of case activity generated and sent electronically to the following:

James G. Goggin

VERRILL DANA, LLP
One Portland Square
Portland, Maine 04112

                                       s/Gianfranco G. Mitrione
                                       *An Attorney for Defendant*
                                       *Pandora Jewelry, LLC*