UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHAMILIA, LLC,  ) | |
| ) | Civil Action No.:  04-CV-06017 (KMK) |
| Plaintiff,  ) | |
| ) | |
| v.  ) | **ECF CASE** |
| ) | |
| PANDORA JEWELRY, LLC,  ) | |
| ) | |
| Defendant.  ) | |

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE**

Plaintiff Chamilia submits the following memorandum of law in opposition to Defendant's Motion to Strike Inadmissible Evidence Offered by Plaintiff in Opposition to Defendant's Motion for Summary Judgment and in response to the arguments set forth in defendant's memorandum in support thereof (Docket No. 67) (the "Motion to Strike").

**I.    The Court Should Deny Pandora's Motion To Strike Paragraph Four of the Julkowski Affidavit**

Before turning to the specific portion of the Julkowski Affidavit challenged by Chamilia, it bears pausing to note what Pandora does not challenge.  Pandora does not (nor could it) question the admissibility of the Sales Summary attached as Exhibit A to the Julkowski Affidavit, a classic business record.  As Chamilia explained in its memorandum in opposition to Pandora's summary judgment motion, the Sales Summary itself shows that many customers stopped doing business with Chamilia, and in many cases returned merchandise, right around the time Pandora's misinformation campaign against Chamilia peaked.  Quite apart from the challenged portion of Mr. Julkowski's affidavit, this timing (along with the abundant evidence of Pandora's misleading statements to and intimidation of potential and actual Chamilia customers) supports a

reasonable inference that Pandora's improper tactics cost Chamilia customers, as does other record evidence cited by Chamilia in opposition to summary judgment. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Docket No. 54) at 5-6, 10-11.[1]

Turning to paragraph 4 of the Julkowski Affidavit (the target of Pandora's motion), it is not hearsay.[2] Mr. Julkowski does not repeat the statement of another; and the fact that he, as the president of Chamilia, may have formed his understanding in part from information provided by others does not render his testimony as to that understanding "hearsay." One federal appeals court made this very point in overturning a ruling grounded on reasoning similar to that which Pandora offers here. In *Agfa-Gevaert, A.G. v. A.B. Dick Co.*, the district court had excluded statements by the plaintiff's expert and its board of directors on the ground that "these statements were based on what the expert and the directors had been told by customers and engineers and were therefore hearsay." 879 F.2d 1518, 1523 (7th Cir. 1989). The Seventh Circuit rejected this analysis:

---

[1] In support of its opposition to Pandora's summary judgment motion, Chamilia submitted an Opposing Statement of Material Facts and Statement of Additional Material Facts (Docket No. 55). As its title suggests, Chamilia's statement not only responded to the numbered paragraphs in Pandora's statement of material facts but also, as permitted by Local Civil Rule 56.1, set forth additional material facts, supported by record citations, in paragraphs 104 through 152. Other than its Motion to Strike, Pandora has neither replied directly to Chamilia's additional facts nor challenged the evidence cited therein.

[2] Mr. Julkowski notes that the attached Sales Summary has refreshed his memory with respect to Chamilia customers who declined to purchase merchandise based on Pandora's statements. This is entirely appropriate. While Pandora attempts to make something of Mr. Julkowski's "failure" at his deposition to recall all the customers listed in his affidavit, any such failure was attributable to Pandora, which waited until late in the discovery period to serve document requests and thus deposed Mr. Julkowski without the benefit of Chamilia's document production. (Mr. Julkowski's deposition took place on May 12, 2005. Pandora's document requests were not served until April 13, 2005, and therefore Chamilia's responses were not due until the final day of discovery, after Mr. Julkowski's deposition.)

> Knowledge acquired through others may still be personal knowledge within the meaning of Fed. R. Evid. 602, rather than hearsay, which is the repetition of a statement made by someone else—a statement offered on the authority of the out-of-court declarant and not vouched for as to truth by the actual witness. Such a statement is different from a statement of personal knowledge merely based, as most knowledge is based, on information obtained from other people.

*Id.* These observations apply with equal force to Pandora's argument in this case.

In any event, as the deposition excerpt quoted by Pandora shows, Mr. Julkowski's understanding as to why customers stopped buying from Chamilia derives at least in part from conversations he had with customers. *See* Motion to Strike at 6. Even assuming *arguendo* that paragraph 4 of Mr. Julkowski's affidavit could be read implicitly to repeat these conversations (and thus implicitly to include "out-of-court" statements), any such statements—customers' explanations of why they returned or declined to order Chamilia merchandise—would be admissible under Fed. R. Evid. 803(3) as statements of the customers' "then existing state of mind."[3]

## II. The Court Should Deny Pandora's Motion To Strike With Respect To The Goggin Affidavits

Pandora expends considerable effort in its request to have stricken specific statements that Chamilia has already clarified and, to the extent appropriate, corrected. It would appear, therefore, that Pandora has another object in mind: not merely to have the specific statements stricken but to distract from certain facts Pandora finds inconvenient.

By way of background, Pandora claimed in support of its summary judgment motion that it "entered the United States market" in *October* 2002. *See* Pandora's Statement of Undisputed Facts (Docket No. 52) ¶ 4. There does not appear to be any dispute that this statement was false, as the web pages attached as Exhibit B to the First

---

[3] And, of course, to the extent the paragraph could be read implicitly to repeat statements by Pandora representatives, any such statements are admissible under Fed. R. Evid. 801(d)(2).

3

Goggin Declaration demonstrate. (Notably, Pandora does not challenge the authenticity or admissibility of these web pages, which show that Pandora jewelry was in fact offered for sale several months earlier.)

The web pages attached to the First Goggin Declaration were retrieved using the "Wayback Machine" feature of the Internet Archive web site, which maintains an "Internet library" of web pages in existence as of particular dates. The attached pages consisted of an introductory "home page" for a Columbia, Maryland salon called Looks, LLC, and two "linked" pages. Because these pages had been retrieved by selecting the Internet Archive's June 1, 2002 entry for the Looks, LLC web site, and because the June 1, 2002 homepage linked directly to the two subsequent pages, the First Goggin Declaration mistakenly concluded that the subsequent pages also dated from June 1, 2002.

Chamilia filed the First Goggin Declaration along with its summary judgment opposition on August 15, 2005. The next day, it filed the First Supplemental Goggin Declaration, which reiterated the mistaken conclusion that all of the pages in Exhibit B to the First Goggin Declaration dated from June 2002. The First Supplemental Goggin Declaration attached an affidavit received that day (August 16) from the Internet Archive's office manager, Molly Bragg, which explained how the "Wayback Machine" operated.

Thereafter, as noted in the Motion to Strike, counsel for Pandora advised Chamilia's counsel that, based on the Bragg Affidavit's explanation concerning the Internet Archive's assignment of URLs (or web site addresses), it appeared that the second and third pages attached as Exhibit B to the First Goggin Declaration had in fact

4

been archived in August 2002, rather than June 2002. Accordingly, Chamilia promptly submitted the Second Supplemental Goggin Declaration, which explained why the previous Goggin Declarations had concluded that the Looks, LLC web pages were all from June 2002; it also acknowledged that, based on the pages' URLs (accurately set forth in the First Goggin Declaration), the second and third pages from the Looks, LLC web site dated from August 2002.[4]

In short, with respect to the statement that the second and third pages of Exhibit B to the First Goggin Declaration were copies of Looks, LLC web pages as they existed on June 1, 2002 or that these pages, in and of themselves, demonstrated that Pandora offered its jewelry for sale by June 2002, Chamilia has acknowledged that any such assertion was in error and has explained the reasons for the error. Thus, to the extent Pandora's motion to strike challenges these specific statements, it is largely moot.

But Pandora's aim in its motion to strike appears to go beyond this specific issue. Pandora appears to be attempting to deflect attention from certain key facts, and from the inferences that flow from those facts. Based on the record, we cannot know for certain whether or not Looks, LLC's web site as of June 2002 also included links to Pandora jewelry. The June 2002 home page has a link for "products," but the linked pages

---

[4] There seems to be some confusion on Pandora's part regarding the purpose and import of the Second Supplemental Goggin Declaration. *See* Motion to Strike at 11 ("Mr. Goggin incredulously maintains that his conclusion from reading the URL assigned by the Internet Archive . . . that all pages in Exhibit B 'would have existed as of June 1, 2002,' was a plausible and accurate one."). In fact, the Second Supplemental Goggin Declaration acknowledges that the URLs for pages 2 and 3 of Exhibit B to the First Goggin Declaration "show[]" that the pages are from August 2002. *See* Second Supplemental Goggin Declaration ¶¶ 3-4. It then goes on, in the past tense, to explain why Mr. Goggin "concluded" in his earlier affidavits that those links "would have existed as of June 1, 2002." Pandora's true complaint seems to be that Chamilia did not accede to Pandora's demand that Chamilia withdraw the Goggin declarations in their entirety. But, as Pandora has implicitly conceded by moving to strike only paragraph 3 of the First Goggin Declaration, there was no reason for Chamilia to do so, and it was entirely appropriate instead for Chamilia to submit a second supplemental declaration clarifying and correcting these specific portions of the earlier declarations.

5

apparently were not archived as of that date. (The Bragg Affidavit explains that the URL assigned to a web page reflects the date on which it was archived; further, "[i]f a visitor clicks on a link on an archived page, the Wayback Machine will serve the archived file with the closest available date to the originally requested page." Bragg Aff. ¶ 3.) The web pages attached to the First Goggin Declaration do show, however, that Looks, LLC offered Pandora jewelry for sale, and exhibited Pandora jewelry on its web site, no later than August 2002.

Yet, as noted, Pandora claimed in support of its motion for summary judgment, based on the affidavit of Michael Lund Petersen, that Pandora did not enter the U.S. market until October 2002. Pandora Statement of Undisputed Material Facts ¶ 4 (citing Petersen Decl. ¶ 7). It seems logical to conclude that Pandora concealed its earlier sale of jewelry through the Looks, LLC salon because it believed this information to be damaging to its interests. One obvious way this information could be damaging to Pandora's interests would be if it rendered Pandora ineligible for a patent. Accordingly, while the web pages attached to the First Goggin Declaration do not by themselves demonstrate that Pandora had entered the U.S. market by June 2002 (*i.e.*, more than a year before it filed its patent application), they do, when combined with Pandora's misstatement on this point, support at least a plausible inference that it had done so.[5]

---

[5] Finally, it is difficult to understand why Pandora seeks to have the First Supplemental and Second Supplemental Goggin Declarations stricken as untimely. As has already been explained, the Second Supplemental Declaration, quite appropriately, corrects the date attribution about which Pandora complains. And the web pages attached, via the Bragg Affidavit, to the First Supplemental Declaration are already exhibits to the First Goggin Declaration. In any event, whether to consider these affidavits would seem to be a matter for the Court's discretion.

## CONCLUSION

For the foregoing reasons, Chamilia respectfully requests that the Court deny Pandora's motion to strike.

Dated: September 19, 2005

                                           Respectfully submitted,

                                           /s/ *James G. Goggin*
                                           James G. Goggin (*pro hac vice*)
                                           Dylan Smith (DS 6740)

                                           VERRILL DANA, LLP
                                           One Portland Square
                                           P.O. Box 586
                                           Portland, ME  04112
                                           (207) 774-4000
                                           (207) 774-7499 (fax)

                                           Attorneys for Plaintiff Chamilia, LLC

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 19, 2005, I electronically filed Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Strike with the Clerk of Court using the CM/ECF system, which will send notification of such filing(s) to the following: William R. Hansen, Esq. and Gianfranco G. Mitrione, Esq.

                                                                /s/ *Dylan Smith*
                                                               Dylan Smith

VERRILL DANA, LLP
One Portland Square
P.O. Box 486
Portland, ME 04112-0586
(207) 774-4000