

# LATHROP GAGE

WILLIAM R. HANSEN
(212)850-6225
EMAIL: WHANSEN@LATHROPGAGE.COM
WWW.LATHROPGAGE.COM

230 PARK AVENUE
SUITE 1847
NEW YORK, NY 10169
(212) 850-6220, FAX (212) 850-6221

July 28, 2006

Honorable Kenneth M. Karas
United States District Judge
United States Court House, Room 920
Southern District of New York
500 Pearl Street
New York, NY 10007

      **Re:** **Chamilia, LLC v. Pandora Jewelry, LLC**
             **Civil Action No.: 04-CV-06017 (KMK) - ECF Case**

Dear Judge Karas:

      We represent the Defendant, Pandora Jewelry, LLC, in the above case.

      As permitted by Your Honor, we herewith respond to the July 24, 2006 letter from Chamilia's counsel providing supplemental briefing on certain evidentiary points requested by Chamilia during the July 20, 2006 Hearing.

      As to the first issue, we note that Plaintiff has been unable to find any case law authority which "... itself, supports a Lanham Act violation..." for the use of the term "knock-off" used to describe a competitor's product. Defendant refers the Court to our argument on the Lanham Act Count in Chamilia's Complaint made in our briefing and at the Hearing. In particular, that the dictionary definition of "knock-off" is an admitted material fact for which there exists no genuine issue (Plaintiff's Rule 56.1 Statement, ¶ 19). Therefore, in order to prove that the use of the term "knock-off" violates the Lanham Act, Section 43(a)(1)(B) as a "false or misleading description of fact ... which misrepresents the nature, characteristics, qualities" of Plaintiff's goods, evidence must be addressed establishing that the <u>use</u> of the term is either false on its face or misleading. Pandora maintains, as argued before Your Honor, that there is no evidence in the record that the term "knock-off" is literally false or that it conveys a misleading message. Assuming <u>arguendo</u> that the term knock-off as used in the context of the April 12 Glueck letter is considered advertising under the Lanham Act (which Pandora steadfastly asserts it is not), "before a court can determine the truth or falsity of an advertisement's message, it must first determine what message was actually conveyed to the . . . audience. Consumer surveys supply such information." <u>Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.</u>, 960 F.2d 294, 298 (2d Cir. 1992). Chamilia has not submitted survey evidence or any other form of reliable consumer or market research as to the relevant consuming public's understanding of the term "knock-off." The only evidence in the record as to the meaning of the

NYDOCS 45322v2

**Change Your Expectations**.

KANSAS CITY • OVERLAND PARK • ST. LOUIS • JEFFERSON CITY • SPRINGFIELD • BOULDER • WASHINGTON D.C.* • NEW YORK
*LATHROP & GAGE DC PLLC-AFFILIATE

Honorable Kenneth M. Karas
July 28, 2006
Page 2

term "knock-off" is the undisputed dictionary definition submitted by Pandora which does not support an actionable claim under the Lanham Act.

    The next point involves the patent marking statute, 35 U.S.C. § 392. Plaintiff cites to <u>Johnston v. Textron, Inc.</u>, 579 F. Supp. 783 (D.R.I. 1984) in which a radio commercial falsely identified a product as patented, to support plaintiff's proposition that an "oral statement can violate" the statute. Defendant submits that this misses the point. The issue is whether the oral statement attributed to Defendant (not those excluded from evidence as hearsay) amount to an "advertising" required by the statute. The <u>Johnston</u> case involves a regularly used form of "advertising" i.e., radio commercials from a written script. In the present case, no radio, TV, print or even point of purchase "advertising" has been identified by Plaintiff. See <u>Keystone Mfg. Co. v. Jaccard Corp.</u>, 394 F. Supp. 2d 543, 566 (W.D.N.Y. 2005) (citing <u>Symbol Techs., Inc. v. Proxim Inc.</u>, 2002 WL 1459476 (D. Del. 2002) (find that the term "uses in advertising" cannot refer to any and all documents in which the word "patent" is brought to the attention of the public; to give the statutory meaning it must apply only to advertisements designed to promote a product). Additionally, Defendant relies upon the authority and arguments made in its briefs for summary judgment on this point.

    Lastly, Plaintiff revisits the double hearsay issue. At the outset, the hearsay character of the "evidence" offered by plaintiff is clear: the deposition testimony of Kathy Shaw-Riley which was attached to counsel's July 24, 2006 letter as an exemplar. Despite Chamilia's argument, the nature of the testimony is inadmissible double hearsay on one point, and inadmissible hearsay on the second. The first point involves the statement attributed to a Pandora representative who spoke to a Chamilia customer, who, in turn spoke to Ms. Shaw-Riley who offers the testimony. Chamilia is clearly asserting the statement for the proof of the matters asserted, that Pandora misrepresented its patent rights to Chamilia's customers. Fed. R. Evid. 801(d)(2) does not rescue this from hearsay because the testifying declarant (Ms. Shaw-Riley) did not hear the statement made by Pandora. The repeated statement is not an "admission" but hearsay related by the Chamilia retailer. The second proof offered is that the Chamilia retailer stopped buying Chamilia merchandise because of the inadmissible Pandora statement. This again is hearsay since it is being offered for the proof of the matter asserted. To avoid the disability of its proof, Chamilia urges the Court to consider the retailer's hearsay statement as one made under the "then existing mental, emotional, or physical condition" exception to the hearsay rule. Fed. R. Evid. 803(3). This attempt fails.

    Chamilia cites to three cases to support its claim. All are inapposite. In <u>Fun-Damental Too v. Gemmy Indus. Corp.</u>, 111 F.3d 993 (2d Cir. 1997), the Second Circuit reviewed a much different evidentiary issue than the one before this Court. There, likelihood of confusion was at issue in a trade dress case. The evidence related to the testimony of the plaintiff's sales manager that customers complained to him that plaintiff was selling its product to others at a lower price. The Court of Appeals saw this as <u>not</u> offered for the proof of the matter asserted, i.e., lower prices, but proof of a mental condition probative on the issue of actual confusion as the source of the goods. In contrast here, Chamilia is offering the testimony for the proof of the matter asserted: Pandora misrepresented its patent rights that caused the Chamilia customers to stop

Honorable Kenneth M. Karas
July 28, 2006
Page 3

purchasing or cancel orders. Fun-Damental offers no help to Chamilia on the basic premise of what is or is not hearsay.

Chamilia also relies on Fun-Damental to bolster its Rule 803(3) argument. First, a Rule 803(3) exception to hearsay requires contemporaneous since it is "… the guarantee of trustworthiness, statements indicative of reflection rather than spontaneity are excluded." Weinstein § 803.03[1] (2001 Ed.). The customer comments in Fun-Damental about price are the kind of 'top of the mind' statements which fall under the exception. An explanation identifying a complex causal relationship, which is offered by Chamilia, cannot claim this level of spontaneity. If so, every out-of-court declaration would cease to be hearsay.

Two additional cases are provided to the Court by Chamilia: Herman Schwabe, Inc. v. United Shoe Machinery Corp., 297 F.2d 906 (2d Cir. 1962) and J.F. Feeser, Inc. v. Serva-A-Portion, Inc., 909 F.2d 1524 (3d Cir. 1990). Neither support the position on hearsay submitted by Chamilia. Looking at Schwabe, the Second Circuit, in dicta, referred to a rule of evidence allowing for a limited means of exception for "motive or reason." 297 F.2d at 914. While decided before the adoption of the Federal Rules of Evidence and not specifically included in Rule 803, Pandora notes that the Second Circuit stated that such an exception would not extend to proof for the "evidence of the facts recited as furnishing the motives." Id. Here, Chamilia offers the hearsay to prove precisely those facts causing the decision to stop purchasing Chamilia Jewelry, removing it from the "motive" exception of Schwabe. Chamilia's Third Circuit case, Feeser, looks to Schwabe to draw the same distinction in hearsay analysis between "motive" and "facts recited as furnishing the motives." Thus, the Feeser court's treatment of Rule 803(3) provides no basis for accepting into evidence the hearsay statement Chamilia offers. As Chamilia's July 24, 2006 letter plainly states the reason for the offer is the proof that "… the statements about Chamilia customers not purchasing or canceling purchases [were made] because of statements made by Pandora about its patent rights…" (July 24 letter, p. 1). This offer puts the statements outside the interpretation of 803(3) made by the Third Circuit in Feeser.

In conclusion, Chamilia's hearsay declarations are inadmissible and should not be considered by the Court in determining Pandora's Motion for Summary Judgment, Rule 56(e).

                                       Respectfully submitted,

                                       LATHROP & GAGE L.C.

                                       By:    /William R. Hansen/
                                                   William R. Hansen